IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | |
|---|---|
| v. | No. 3:13CR19 (JCH) |
| JESSE C. LITVAK | August 16, 2013 |

**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANT JESSE C. LITVAK'S MOTION
SEEKING DISCOVERY AND A HEARING CONCERNING
GOVERNMENTAL INTERFERENCE WITH HIS SIXTH AMENDMENT
RIGHT TO COUNSEL AND HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS**

Defendant Jesse C. Litvak, by and through his counsel, requests permission (Doc. Nos. 50, 50-1) to serve subpoenas for limited discovery and further requests that this Court thereafter hold an evidentiary hearing to determine whether the government violated Mr. Litvak's rights under the Fifth and Sixth Amendments to the U.S. Constitution by causing his former employer, Jefferies and Co., Inc. ("Jefferies"), to limit severely his ability to pay his legal fees. The circumstances of Jefferies's cooperation with the government provide sufficient indication that the government induced Jefferies's unjustified refusal to honor its legal obligations with respect to Mr. Litvak to permit the requested discovery. The government's arguments to the contrary are unavailing. To ensure that Mr. Litvak's fundamental constitutional rights are not violated, the Court must allow inquiry into the motivations of Jefferies in withholding the advancement of legal fees, to which Mr. Litvak legally is entitled.

**ARGUMENT**

Mr. Litvak requests specific and targeted communications between the government and Jefferies (including its lawyers) to safeguard his constitutional rights under the Fifth and Sixth Amendments, not to "commence a fishing expedition for constitutional violations based on a

hunch." Opp. Mem. at 16. Mr. Litvak is not required to prove (nor would it be possible to prove) that one has occurred *before* receiving any of the requested discovery.[1] Just as Judges Kaplan and Pauley refused to credit the government's blanket denial of any improper pressure in *Stein* and *Daugerdas*, respectively, *see United States v. Stein*, 541 F.3d 130, 147-48 (2d. Cir. 2008) ("*Stein App.*") and Transcript of Oral Argument at 87, 125, *U.S. v. Daugerdas*, (S.D.N.Y. Sept. 28, 2010) (Doc. No. 178) ("*Daugerdas* Tr."), this Court should deem the government's unsworn denials of explicit interference insufficient and grant Mr. Litvak the opportunity to discover whether the government unconstitutionally interfered (implicitly or explicitly) with Mr. Litvak's right to advancement of fees.

## I. Circumstances Strongly Suggest That Jefferies's Decision to Deny Advancement of Fees Was the Product of Government Interference.

The strong and reasonable inference under all of the circumstances known in this matter is that Jefferies's decision to deny Mr. Litvak his advancement rights was the product of government interference. The limited discovery sought by this motion is necessary to determine whether this coercion occurred.

As an initial matter, the government's opposition fails entirely to address the fact that Jefferies appears to have applied its policy on indemnification differently with respect to Mr. Litvak than any other current or former Jefferies employee. Although the government endorses

---

[1] The government devotes its opposition to arguing that Mr. Litvak has not yet proved a constitutional violation, like that ultimately proved—after discovery—in *Stein*. Opp. Mem. at 9-16. That argument is a red herring. The potential government interference that Mr. Litvak seeks discovery on to safeguard his constitutional rights would establish state action and, correspondingly, a constitutional violation. The Second Circuit has made it clear that coercive power or significant encouragement, either overt or covert, may be deemed sufficient to make the government "responsible" for the conduct complained of. *Stein App.*, 541 F.3d at 146-47 (emphasis added). The threat of ruinous indictment provides a sufficient nexus between Jefferies's refusal to advance Mr. Litvak's legal fees at the government's coercion and the government itself. Lisa Kern Griffin, *Compelled Cooperation and the New Corporate Criminal Procedure*, 82 N.Y.U. L. Rev. 311, 367 (2007) (cited in *Stein App.*, 541 F.3d at 150). Thus, the government's encouragement of Jefferies to withhold attorneys' fees would constitute state action under a "close nexus" theory. *Stein App.*, 541 F.3d at 146.

2

Jefferies's arguments for denying Mr. Litvak's advancement rights—further supporting the strong inference that it is attempting to frustrate such rights—these arguments simply are without merit and not grounded in either Jefferies's bylaws or Delaware law. *See* Opp. Mem. at 4-5. The government's articulated rationale for Jefferies's refusal to indemnify Mr. Litvak is not supported by either Jefferies's past practice or the law.

II.   **The Government's Citation to Current Policy Relating to Coercion Does Not Defeat the Need for Limited Discovery.**

The government's opposition relies heavily on the policies articulated in the Filip Memorandum, which set forth the revised Principles of Federal Prosecution of Business Organizations to be included in the United States Attorneys' Manual ("USAM"). As the government points out, USAM section 9-28.730 states that "'prosecutors should not take into account whether a corporation is advancing or reimbursing attorneys' fees'" and "'prosecutors may not request that a corporation refrain from taking such action'"; according to the government, those statements are "unequivocal."[2] Opp. Mem. at 4. Those same principles, however, direct that prosecutors generally not request waivers of the attorney-client privilege and work product protection or take such waivers into account in measuring a company's cooperation. Opp. Mem. Ex. 2 at 8-9. It is notable to see how these admonitions were applied in this case.

In fact, Jefferies's cooperation in this case has included waiving both the attorney-client privilege and the attorney work product protection. Both of these waivers were provided to the government, according to Jefferies, "in the interest of full cooperation." Opening Mem. Ex. 8.

---

[2] The USAM is not an absolute prohibition, a point the government must concede based on the reasoning in its opposition brief distinguishing "should" from "must." *See* Opp. Mem. at 3 n.1 (the government unconvincingly argues that the Thompson Memorandum was merely a guide and "listed nine 'factors' prosecutors 'should' [use] (rather than must [use])"). The government is proficient in crafting language intended to categorically prohibit conduct and it chose not to do so here.

3

In its unguarded statement about its waivers of the attorney-client privilege and attorney work product protection, Jefferies revealed its true view of how cooperation is measured by the government in this case. Notwithstanding DOJ's articulated policy, Jefferies provided these waivers "in the interest of full cooperation." Nothing in the government's opposition or in Jefferies's affidavit reflects that the government did anything to dissuade Jefferies of this view, or for that matter that the government was not itself the source of this view. Indeed, the more logical conclusion is that the government and Jefferies were operating under the DOJ's previous view that cooperation would be measured by both a willingness to waive the attorney-client privilege and refusal to indemnify employees the government viewed as culpable for their legal expenses.

Moreover, the guidelines are internal DOJ policy, unenforceable at law, and there is no remedy *per se* if a prosecutor fails to follow them.[3] And, in this matter, the government has a track record of failing to follow its own policies. Specifically, in response to defense counsel's discovery of SIGTARP material inconsistent with the element of jurisdiction underlying the charge of False Statements in this matter (in violation of 18 U.S.C. § 1001), the government indicated by way of letter dated August 7, 2013, that it had not yet reviewed the files of SIGTARP—a member of the prosecution team[4]—for *Brady* and other discoverable materials. Ex. 1 ("[W]e expect that the files of the Office of the Special Inspector General for TARP contain a large number of records that refer to PPIP in some way, most of which are not relevant

---

[3] *See* Jed S. Rakoff, *The Exercise of Prosecutorial Discretion in Federal Business Fraud Prosecutions*, Corrigible Corporations & Unruly Law 173, 179 (Brent Fisse & Peter A. French eds., 1985) (also noting that prosecutorial discretion is governed by policies whose enforcement "is sometimes lax and sometimes idiosyncratic").

[4] The Ogden Memorandum provides, in relevant part, "[i]n most cases, 'the prosecution team' will include the agents and law enforcement officers within the relevant district working on the case." Ex. 2 at 1; *see also Pizzuti v. United States*, 809 F. Supp. 2d 164, 192 (S.D.N.Y. 2011) (quoting the Ogden Memorandum) ("Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.").

to the question of Treasury's jurisdiction.").[5]  Among other problems with the government's failure (including that it contravenes this Court's Standing Order on Discovery), it is contrary to the USAM section 9-5.001 and the Ogden Memorandum.  Exs. 2 and 3.  USAM section 9-5.001 requires, among other things, that prosecutors "seek all exculpatory and impeachment information from all the members of the prosecution team" and that prosecutors must disclose "information that is inconsistent with any element of any crime charged against" a defendant regardless of the prosecutors' subjective belief as to whether "such information will make the difference between conviction and acquittal."  Ex. 2 at 2.  Moreover, the Ogden Memorandum, among other things, reiterates the prosecutors' duty to seek exculpatory and impeachment information from the prosecution team and instructs that prosecutors are responsible for ensuring the review of their investigative agency's case files for discoverable information.  Ex. 3 at 1-2.  The government's failure to adhere to these policies completely undermines the government's claim that the existence of a DOJ policy could be dispositive of the issue at bar.  Mr. Litvak requires this Court's assistance to determine whether the current policies relating to advancement of fees were violated just like the policies relating to *Brady* and discovery, especially against the backdrop of earlier coercion-inducing policies and Jefferies's waiver of its own fundamental protections in the interest of what it understood to be (and what the government apparently allowed Jefferies to believe to be) "full cooperation."

**III.    The Government's Blanket Denial of Explicit Interference and Jefferies's Vague Denial of Government Influence Do Not Defeat the Need for Limited Discovery.**

Even assuming *arguendo* that the government's unsworn representation that it has followed the policy stated in USAM 9-28.730 is true, the government represents only that it has

---

[5] Mr. Litvak asked the government to inform him of how it intended to cure these deficiencies by August 16, 2013. At the time of this filing, the government had not responded to that request.

5

"'not request[ed] that'" Jefferies "'refrain from'" "'advancing or reimbursing attorneys' fees.'" Opp. Mem. at 4 (quoting the USAM and stating "[t]he Government has adhered scrupulously to the policy set forth in the" USAM in this case). That representation gives Mr. Litvak (and should give the Court) no comfort as to whether the government made statements that more implicitly or indirectly coerced Jefferies. *See, e.g.*, *Stein I*, 435 F. Supp. 2d at 344 ("While the USAO did not say in so many words that it did not want KPMG to pay legal fees, no one at the meeting could have failed to draw that conclusion.").

Courts in this circuit have recognized that it may be necessary to look behind such blanket denials of coercion. For example, in *Stein*, the government argued that KPMG's decision to change its policy with respect to attorneys' fees was made independent of any government involvement. After Judge Kaplan allowed discovery, the court unearthed that the government improperly pressured KPMG. *Stein I*, 435 F. Supp. 2d at 365-66. Likewise, taking into account the government's false denial of interference in *Stein*, Judge Pauley stated that he was "reluctant to take the government's *ipse dixit* that it ha[d] no involvement"[6] and ordered discovery in *Daugerdas*. *See also United States v. Daugerdas*, 09-cr-00581 (WHP) Government's Opposition Mem. (Doc. No. 149) at 93 (representing whether BDO paid the defendant's fees "was of no interest to" the government). In both *Stein* and *Daugerdas*, the government attorneys denied wrongdoing under oath, in affidavits submitted to the court.[7] And in both cases the court nonetheless ordered discovery and, in *Stein*, the court found wrongdoing.[8]

---

[6] *See* Daugerdas Tr. at 87.

[7] Declaration of Justin S. Weddle, *United States v. Stein*, No. 1:05-cr-00888-LAK (S.D.N.Y. Apr. 12, 2006) (Doc. No. 435); Declaration of Nanette L. Davis, *United States v. Daugerdas*, No. 1:09-cr-00581-WHP (S.D.N.Y. Aug. 2, 2010) (Doc. No. 148).

[8] The government's reliance on *S.E.C. v. Dunn*, 587 F. Supp. 2d 486 (S.D.N.Y. 2008), is completely misplaced. Opp. Mem. at 15-16. *Dunn*, unlike this matter, was a civil case that did not implicate the Sixth Amendment and did not involve any allegation of direct communication by the SEC with the defendant's former employer regarding attorney's fees, any display of knowledge by the SEC of a fee dispute, any historical coercion-inducing SEC policy

Here, the government attorneys have not submitted affidavits, even though the government admitted to communicating with Jefferies's counsel regarding the advancement dispute between Mr. Litvak and Jefferies. Opp. Mem. at 11. The government has not provided any details of the circumstances surrounding its communications with Jefferies on the topic, nor have they provided copies of any such written communications. The fact of these communications, against the backdrop of the historical coercion-inducing DOJ policies, Jefferies's apparent belief that it had to waive its attorney-client privilege and work product protection for "full cooperation," the government's apparent failure to correct that view, and the government's blithe disregard of its other policies in this very matter, could be fairly viewed to indicate the government's view of how cooperation by Jefferies would be measured. *Stein*, No. S1 05 CRIM. 0888 LAK, 2006 WL 1063298 (Apr. 12, 2006 S.D.N.Y.) (holding that against the backdrop of the Thompson Memorandum, the government's "inquiry" into KPMG's plans regarding payment of legal fees "itself arguably was a signal to KPMG as to actions that would promote its chances of avoiding prosecution").[9]

Like the government's blanket denial of wrongdoing, the affidavit submitted by Jefferies's outside counsel Boyd M. Johnson (the "Johnson Affidavit") is equally inconclusive and, if anything, should be indicative of the close relationship between the government and

---

relating to fees, any failure of the SEC to correct the company's belief that it had to waive its attorney-client privilege and work product protection for "full cooperation," or any defiance by the SEC of its other policies.

[9] The government's claims of defense misrepresentations relating to its statements at the hearing before this Court are red herrings. Opp. Mem. at 7-9. Mr. Litvak accurately characterized the government's statements and attached the entire transcript for this Court's consideration. Opening Mem. Ex. 10. The statements made by the government speak for themselves and show that the government had a significant grasp and knowledge of the on-going fee dispute and Mr. Litvak's compensation by Jefferies. And the government offers no reasonable explanation for its forward-looking statement concerning Mr. Litvak's resources and his ability to fund his defense—that "it will not be unlimited resources by fees advanced by Jefferies." The government's suggestion that it was merely suggesting that work could begin on the case without Mr. Litvak's access to unlimited resources, but that he might later have access to unlimited resources, is unpersuasive. Opp. Mem. at 8-9. This reasoning is especially suspect in light of the government's admission that it communicated with Jefferies's counsel regarding the advancement dispute between Mr. Litvak and Jefferies, Opp. Mem. at 11, and the government's failure to provide any details relating to those communications.

Jefferies.[10] Opp. Mem. Ex. 1. The Johnson Affidavit fails to address whether Mr. Johnson or anyone at Jefferies had any communications with the government about the issue of indemnification, reimbursement, or advancement of legal fees. (Of course, the government's opposition reveals that such communications have occurred. Opp. Mem. at 11). The Johnson Affidavit claims that Jefferies's decision to decline Mr. Litvak's advancement request "was made completely free from any influence by the Government." Johnson Affidavit at 1. This assertion is not exactly a denial that improper communications took place. And Mr. Johnson's subjective perception should not be dispositive to the Court's decision here as to whether a constitutional violation has occurred. *See Stein I,* 435 F. Supp. 2d at 342-43.

The vague Johnson Affidavit leaves many questions unanswered. In response to Mr. Johnson's offer to entertain questions relating to the affidavit (Opp. Mem. Ex. 1), Mr. Litvak inquired about the nature and extent of Jefferies's communications with the government and whether Jefferies's sought to curry favor with the government through its refusal to advance fees to Mr. Litvak (among other things). Ex. 5 (Letter from Ross Garber to Boyd Johnson, dated Aug. 13, 2013). Mr. Johnson refused to answer those inquiries in light of the pending motion. Ex. 6 (Letter from Boyd Johnson, dated Aug. 16, 2013). Mr. Johnson's refusal proves Mr. Litvak's point that discovery is required here to safeguard his constitutional rights. It is only with this Court's assistance that Mr. Litvak can uncover—like the defendants in *Stein* and *Daugerdas*—whether the unlawful denial of his right to advancement came in response to implicit coercion and a desire to curry favor with the government.

---

[10] Also illustrative of the close relationship between the government and Jefferies is an April 5, 2013, communication defense counsel received from AUSA Francis in which the government stated, "[a]lthough that ends the Government's interest in the issue [of Mr. Litvak's stock liquidation], you should know that Boyd Johnson asked me to convey that Jefferies does not want any of its employees talking to Mr. Litvak . . . ." Ex. 4 (Email from Jonathan Francis to Sarah Zimmer, copying Patrick Smith, dated Apr. 5, 2013).

In *Daugerdas*, discovery was ordered even though the company's outside lawyer submitted an affidavit similar to the Johnson Affidavit. The government attempts to distinguish the facts of *Daugerdas* by asserting that BDO's counsel was not retained until years after the relevant events and thus lacked personal knowledge. However, that distinction is misplaced because the first and only grand jury subpoena to BDO was served on BDO on or about February 16, 2006, and the affiant was the lead counsel during the entire grand jury investigation. Thus, BDO's counsel had personal knowledge regarding the central inquiry—whether the government pressured BDO with respect to payment of the defendant's legal fees. *U.S. v. Daugerdas*, (S.D.N.Y. Sept. 28, 2010) Davis Decl. (Doc. No. 148); Reemer Aff. (Doc. No. 148-11).

Mr. Litvak seeks the opportunity to confirm whether the government, in its unsworn denial of explicit interference, and Jefferies, in its affidavit that does not address whether the government ever raised the issue of fees with Mr. Johnson or anyone at Jefferies, is an accurate and complete portrayal of the facts. But for the discovery ordered in *Stein*, the defendants in that case would not have uncovered the constitutional violations committed by the government. Mr. Litvak respectfully requests that he be granted the same opportunity.

## **CONCLUSION**

For these reasons and the reasons in the Opening Memorandum, the limited discovery requested herein is necessary to ensure the safeguard of Mr. Litvak's Fifth and Sixth Amendment rights.

**DEFENDANT,
JESSE C. LITVAK**

By: /s/ Ross Garber
    Ross H. Garber (ct17689)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT  06103
    Tel.:  860-251-5901
    Fax:  860-251-5219
    E-mail: rgarber@goodwin.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2013 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Ross Garber
Ross Garber (ct17689)