## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:13CR19 (JCH) |
| v. | |
| JESSE C. LITVAK | September 23, 2013 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## JESSE C. LITVAK'S MOTION TO DISMISS THE INDICTMENT

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................ 1

    A.     Mr. Litvak's Motion Properly Attacks the Indictment's Legal Theories .............. 1

    B.     Counts Thirteen Through Sixteen Fail to Allege Adequately Treasury's
           Jurisdiction ........................................................................................................ 3

    C.     Count Twelve of the Indictment is Deficient for Failing to Allege a
           Violation of Title 18, United States Code, Section 1031 ...................................... 6

    D.     The Government's Attempt to Excuse Its Impermissible Broadening of the
           Scope of Section 1031 is Unpersuasive ................................................................ 8

    E.     The Alleged Misstatements Were Not Material and the Facts Alleged in
           the Indictment are Insufficient to Demonstrate Otherwise ................................... 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

C<span>ASES</span>

*Bouie v. City of Columbia*,
378 U.S. 347 (1964)...............................................................................................8

*Neder v. United States*,
527 U.S. 1 (1999)................................................................................................10

*Russell v. United States*,
369 U.S. 749 (1962)..............................................................................................1

*United States v. Aleynikov*,
737 F. Supp. 2d 173 (S.D.N.Y. 2010)..............................................................2, 7

*United States v. Ballistrea*,
101 F.3d 827 (2d Cir. 1996).................................................................................10

*United States v. Brown*,
79 F.3d 1550 (11th Cir. 1996) ..............................................................................8

*United States v. Candella*,
487 F.2d 1223 (2d Cir. 1974).............................................................................4, 5

*United States v. Facchini*,
874 F.2d 638 (9th Cir. 1989) ................................................................................5

*United States v. Ford*,
639 F.3d 718 (6th Cir. 2011) ................................................................................5

*United States v. Holmes*,
111 F.3d 463 (6th Cir. 1997) ................................................................................5

*United States v. Holstrom*,
2005 WL 3440472 (E.D. Wash. 2005) .................................................................5

*United States v. Lanier*,
520 U.S. 259 (1997)...............................................................................................8

*United States v. Lowe*,
141 F.2d 1005 (5th Cir. 1944) ..............................................................................6

*United States v. McGeehan*,
584 F.3d 560 (3d. Cir. 2009)................................................................................2

*United States v. Mennuti,*
    639 F.2d 107 (2d Cir. 1981)................................................................................2

*United States v. Pacione,*
    738 F.2d 567 (2d Cir. 1984)................................................................................2

*United States v. Pirro,*
    212 F.3d 86 (2d Cir. 2000)...........................................................................1, 2, 3

*United States v. Regent Office Supply Co.,*
    421 F.2d 1174 (2d Cir. 1970)..............................................................................9

*United States v. Russell,*
    639 F. Supp. 2d 226 (D. Conn. 2007).............................................................2, 7

Mr. Litvak respectfully submits this Reply Memorandum of Law in Further Support of his Motion to Dismiss the Indictment.

## ARGUMENT

**A. Mr. Litvak's Motion Properly Attacks the Indictment's Legal Theories**

The government's attempt to deride Mr. Litvak's motion as an argument about what the government might be able to prove at trial is an exercise in misdirection. The argument is not that the allegations in the Indictment cannot be supported by evidence—we assume for purposes of this motion that they could. The argument is that the allegations, even if proven, do not state an offense. The government's reaction to the common sense observation that in the absence of an allegation that anyone paid more than fair market value for a bond there can be no fraud is telling. Rather than explaining why its legal theory is plausible, the government argues instead—no less than 16 times—that the trades at issue took place at "inflated" prices. But the Indictment does not allege that transactions took place at inflated values; it alleges that Jefferies's profits on the trades were higher than represented. So the government has not replied to the argument; instead it has undertaken to modify the Indictment's allegations while at the same time maintaining that its ability to prove the unalleged "inflation" is not subject to scrutiny pretrial.

The "gist" of Mr. Litvak's motion is not that the government will be unable to prove up what is actually alleged in the Indictment. It is that the particular ways that the Indictment contends that the crimes alleged were committed—the government's theories of prosecution— are legally insufficient. *See Russell v. United States*, 369 U.S. 749, 764-65 (1962); *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (dismissing count of indictment for insufficiently alleging an element of the offense). While the government could have simply tracked the language of the statutes underlying each offense, it chose instead to spell out a particular theory

of how Mr. Litvak allegedly committed fraud. When the government elects to seek a speaking indictment, "[d]ismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2010) (citing *Pirro*, 212 F.3d at 91, 93); *United States v. Pacione*, 738 F.2d 567, 572-73 (2d Cir. 1984) (dismissing indictment because defendant's activities as alleged in the indictment were beyond the limits of the statute); *United States v. Mennuti*, 639 F.2d 107, 113 (2d Cir. 1981) (same); *United States v. Russell*, 639 F. Supp. 2d 226, 231 (D. Conn. 2007) (finding it proper to dismiss an indictment that fails to state an offense under the charged language of the statute). Thus, "[t]he sufficiency of an indictment may be challenged not only on the basis that it fails to charge the essential elements of the statutory offense, but also on the ground that the 'specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *United States v. McGeehan*, 584 F.3d 560, 565 (3d Cir. 2009) (dismissing indictment alleging breach of non-fiduciary contractual duties as insufficient to charge honest services fraud) (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)). The government's argument that the Indictment meets minimum pleading standards by tracking the language of the statutes charged is beside the point. (Opp. Mem. at 5-8). The issue is whether the theory the government has chosen to set forth is adequate.

The Court of Appeals has clearly authorized courts in this circuit to examine the speaking allegations in an Indictment for legal sufficiency. In *United States v. Pirro*, the Second Circuit approved the district court's examination of the legal theory in a count charging a tax violation. The indictment alleged that defendant Pirro had fraudulently failed to disclose an "ownership interest" on a tax return. *Pirro*, 212 F.3d at 94-95. The court found that Pirro was not under a

legal duty to disclose an "ownership interest" other than an actual shareholding, and the failure to

allege a duty to disclose the omitted fact rendered the count defective. *Pirro*, 212 F.3d at 94-95.

*Pirro*—a leading case that the government ignores—shows that the recitation of the statutory

charging language can and should be scrutinized for sufficiency in the context of an indictment's

speaking allegations. Under *Pirro*, Mr. Litvak's challenges to the Indictment's legal theories are

proper, even though the Indictment may meet minimum pleading standards under

Fed. R. Crim. P. 7(c).

**B. Counts Thirteen Through Sixteen Fail to Allege Adequately Treasury's Jurisdiction**

Treasury, a limited partner in the PPIFs, lacked jurisdiction over Mr. Litvak's statements

about mark-ups to PPIF managers. As the government notes, the phrase "within the jurisdiction"

serves "merely [to] differentiate[] the official, or authorized functions of an agency or

department from matters *peripheral* to the business of that body." (Opp. Mem. at 13 (quoting

*United States v. Rodgers*, 466 U.S. 475, 479 (1984) (emphasis added)). Treasury's limited

involvement in the PPIP—serving as a co-investor in the investment funds managed by private

parties—was peripheral to Treasury's official function. This point is further supported by (i)

Treasury's explicit agreement that the funds would not be managed by Treasury and that the

fund managers would "make all decisions concerning . . . the [i]nvestments"[1]; and (ii) the lack of

any reporting requirement under the Limited Partnership Agreements ("LPA") concerning mark-

ups, commissions, or fees.[2] Further demonstrating Treasury's role as a co-investor is express

language in the LPAs defining Treasury as a *limited* partner that will share profits and losses on a

---

[1] Amended and Restated Limited Partnership Agreement of AllianceBernstein Legacy Securities Master Fund, L.P ("LPA of AllianceBernstein"), at 26, *available at* http://www.treasury.gov/initiatives/financial-stability/TARP-Programs/credit-market-programs/ppip/Documents/AB%20Complete%20LPA%20(redacted).pdf. (last visited July 26, 2013).

[2] *See generally*, LPA of AllianceBernstein.

pro rata basis according to their *limited* partnership interests.[3]  Treasury wanted the role of *limited* partner, and not that of a "rogue state-owned enterprise."[4]

Consistent with its role as a limited partner, it was not contemplated (and the Indictment does not allege) that Treasury would receive, rely, or in any way act on statements by a trader to the private money managers who managed the PPIFs under a non-governmental contract.  While Treasury did receive periodic investment performance reports (as any investor would), information concerning mark-ups, which is not relevant to overall performance, was not deemed worthy of Treasury's attention.

The Second Circuit has not decided a Section 1001 case in which the allegedly false statements were made to a private entity which was not a government contractor and the agency at issue otherwise took no steps to purport to assert jurisdiction over the maker of the statement.  Every case the government relies on in its opposition memorandum involved one or more factors showing significant federal involvement, a government contract, a false statement made for the purpose of receiving federal funds, or substantial government oversight or supervision of a type simply not present here.  For example, *United States v. Candella*, 487 F.2d 1223 (2d Cir. 1974), involved express assertions of agency jurisdiction over statements made for the purpose of receiving federal aid.  The *Candella* Court reasoned that "a violation of § 1001 does not require that the false statement must actually have been submitted to a department or agency of the United States, but rather that it was *contemplated that the statement was to be utilized in a matter that was within the jurisdiction of such department or agency*."  487 F.2d at 1227 (emphasis

---

[3] SIGTARP Quarterly Report to Congress, dated July 24, 2014, *available at* http://www.sigtarp.gov/ Quarterly%20Reports/July_24_2013_Report_to_Congress.pdf (last visited Sept. 16, 2013) (emphasis added); LPA of AllianceBernstein at Appendix B (emphasis added).

[4] *See* Fannie Chen, Note, *Structuring Public-Private Partnerships: Implications from the "Public-Private Investment Program for Legacy Securities"*, 46 Colum. Bus. L. Rev. 509, 526 (2013) at 526 (quoting a senior official from the Office of Financial Stability).

added). The *Candella* Court relied on defendants' knowledge that the City would make the affidavits available to HUD for reimbursement purposes, that HUD was responsible for paying 100 percent of the moving expenses incurred, and that any false statements contained within the affidavit would constitute violations of the United States Code, a warning that was explicitly recited in the affidavits. 487 F.2d at 1226. Here, Treasury made its investment in the PPIFs well before Mr. Litvak allegedly made any false statements, which in any event were not "contemplated . . . to be utilized" by Treasury because the LPAs are silent about reporting trading costs.

Other courts,[5] including the Ninth Circuit Court of Appeals, have starkly stated the fundamental point that is the foundation for this motion: "To establish jurisdiction, the information received must be directly related to an authorized function of the federal agency. . . . Otherwise the scope of section 1001 jurisdiction would be virtually limitless." *United States v. Facchini*, 874 F.2d 638, 642 (9th Cir. 1989). The government's sweeping view of Section 1001 would make it a federal crime to lie to any private concern that received some form of federal funds. Here, the Indictment alleges only that Treasury invested in the PPIFs and selected the PPIF managers. (Ind. ¶¶ 7-9.).[6] These allegations are not enough to turn Mr. Litvak's alleged

---

[5] *See, e.g.*, *United States v. Holmes*, 111 F.3d 463, 466 (6th Cir. 1997) (false statements did not fall within federal jurisdiction because "the federal government neither fund[ed] the fraudulently obtained state benefit payments, nor ha[d] any authority to act upon discovering that the state program ha[d] been defrauded."); *United States v. Holstrom*, 2005 WL 3440472 at *5 (E.D. Wash. 2005) (making false statements on timesheets to a private entity that operated on government property as a prime contractor for the United States Department of Energy was insufficient basis for conviction of making materially false statements in a matter within jurisdiction of a federal department or agency because there was "nothing before the Court that demonstrated that DOE, or any other federal department or agency, had power to act"); *United States v. Ford*, 639 F.3d 718, 721 (6th Cir. 2011) (state senator failing to disclose financial interests in state election registry report was insufficient basis for conviction of making materially false statements in a matter within jurisdiction of a federal department or agency because the federal government had no authority over the state senate or registry and the government presented no evidence that the senate or election registry operated on federal funds).

[6] The government's references to various statutes and regulations, (Opp. Mem. at 18-22), do not demonstrate that Treasury set up a program in which it, in fact, sought to assert jurisdiction over statements by broker-dealers to the PPIF managers. These statutes and regulations illustrate Treasury's authority to establish the PPIP, but how it was

false statements to the PPIF managers into "an offense against the United States." *United States v. Lowe*, 141 F.2d 1005, 1006 (5th Cir. 1944) (holding that "the mere allegation of the existence of the contract providing for reimbursement . . . was not sufficient to make [the defendant's] alleged fraudulent misrepresentations to his employer an offense against the United States").

**C. Count Twelve of the Indictment is Deficient for Failing to Allege a Violation of Title 18, United States Code, Section 1031**

The government argues that Treasury was authorized to use TARP funds to purchase troubled assets. (Opp. Mem. at 25). It further argues that Congress authorized Treasury to establish vehicles to purchase troubled assets and that PPIFs fall within the definition of a vehicle that Treasury was authorized to establish. (Opp. Mem. at 25). On this basis, the government claims that the PPIF bond purchases were in fact government purchases of troubled assets. (Opp. Mem. at 26).

But the Indictment does not allege a direct government purchase of any RMBS bonds. Indeed, the statutory authority that Congress conferred on Treasury in the Emergency Economic Stabilization Act of 2008 to make direct purchases of troubled assets was not utilized for the PPIP. Instead, Treasury initially used TARP funds to make direct capital injections into banks.[7] So the government is left to argue that the PPIF bond purchases are the functional equivalent of direct purchases of "troubled assets" (thus the "on behalf of" formulation (Opp. Mem at 26)). This position, however, is completely undermined by Treasury and SIGTARP's own view about the operative "troubled asset" purchases for PPIP purposes. SIGTARP, in reviewing Treasury's

---

implemented is a matter of fact. Perhaps Treasury could have elected to assert jurisdiction over Mr. Litvak's statements. The allegations here make plain that it did not.

[7] *See* Selecting Fund Managers for the Legacy Securities Public-Private Investment Program, Special Inspector General for the Troubled Asset Relief Program ("SIGTARP's Selecting Fund Managers Report"), Oct. 7, 2010, at 3, *available at* http://www.sigtarp.gov/Audit%20Reports/Selecting%20Fund%20Managers%20for%20the%20 Legacy%20Securities%20Public-Private%20Investment%20Program%2009_07_10.pdf (last visited July 26, 2013).

determination that PPIF managers were neither government contractors nor financial advisors

subject to the Federal Acquisition Regulation, found that:

> [A]ccording to Treasury, the FAR does not apply to Treasury's selection of the asset managers with whom Treasury co-invests through the PPIFs, *because the interests in the PPIFs itself—the limited partnership—is a "troubled asset"* of which Treasury is authorized to purchase an equity interest under EESA.[8]

Here, TARP extended federal assistance in the form of the investment in the PPIFs. The

PPIFs in turn are alleged to have purchased RMBS from Jefferies. But with Treasury's purchase

of the "troubled assets" complete upon its investment in the PPIFs, and the funds in the hands of

the PPIFs under private management, the subsequent bond purchases fall outside the scope of

something that can be fairly characterized as a government purchase of a "troubled asset,"

particularly where the PPIFs and not Treasury bought the bonds. Subsequent bond purchases by

private-sector managers are also not grants, subsidies, loans, or other financial bailouts within the

ambit of the statute. Nor do the Indictment's allegations support the notion that bonds were

purchased "on behalf of the government." (Opp. Mem. at 26). Further, Mr. Litvak is not alleged

to have interacted with the government in any other way, much less in a way that fits within

Section 1031's specified acts.

Taking all factual allegations to be true, the legal theory of how Section 1031 was

violated in this case fails to state adequately that the alleged fraud took place in one of the

statutorily proscribed circumstances, and thus omits an essential element. *United States v.

Aleynikov*, 737 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2010); *United States v. Russell*, 639 F. Supp.

2d 226, 231 (D. Conn. 2007).

---

[8] SIGTARP's Selecting Fund Managers Report at 30 (emphasis added).

**D. The Government's Attempt to Excuse Its Impermissible Broadening of the Scope of Section 1031 is Unpersuasive**

The government did not (as it contends) merely misquote Section 1031 in some inconsequential fashion. (Opp. Mem. at 9-12). Instead, it undeniably altered and expanded the statute's reach by inserting the words "in connection with" in place of "in." Those words do not mean the same thing. This maneuver, whether intentional or not, undeniably changes a relevant portion of the statute under which Mr. Litvak is charged. The government flippantly states that whether Mr. Litvak's alleged fraud was perpetrated "in" or "in connection with" a form of Federal assistance is a distinction without meaning. (Opp. Mem. at 10). The Court should not accept this unsupported assertion. "In connection with" undoubtedly broadens the scope of Section 1031's reach by incorporating a greater range of conduct than the statute actually proscribes, leaving Mr. Litvak at risk for being convicted for conduct that is not clearly proscribed by statute, in violation of his right to due process. *See Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964) (due process requires that a criminal statute "give fair warning of the conduct that it makes a crime"); *United States v. Lanier*, 520 U.S. 259, 266 (1997) (rule of lenity, a manifestation of the fair warning requirement, ensures fair warning by resolving ambiguity in a criminal statute so as to apply it only to conduct clearly covered); *see also United States v. Brown*, 79 F.3d 1550, 1562 (11th Cir. 1996) ("The exercise of federal government power to criminalize conduct and thereby to coerce and to deprive persons, by government action, of their liberty, reputation and property must be watched carefully in a country that values the liberties of its private citizens. Never can we allow federal prosecutors to make up the law as they go along."), *overruled on other grounds by, United States v. Svete*, 556 F.3d 1157 (11th Cir. 2009).

The government further argues that even if the words "in connection with" constituted a substantive deviation from an essential element of a Section 1031 charge (which, plainly, they

do), the entirety of the Indictment remedies the "technical flaw" by placing Mr. Litvak's conduct "in" a form of Federal assistance. (Opp. Mem. at 11). This argument is wrong. The plain language of Section 1031 requires the government to assert that Mr. Litvak's alleged scheme was "in" a form of Federal assistance and the Indictment (read as a whole) simply does not do so. As discussed above, the purchase of a bond by a PPIF is <u>not</u> the same as a purchase by the government—and by assiduously ignoring this argument the government does not make it so.

**E. The Alleged Misstatements Were Not Material and the Facts Alleged in the Indictment are Insufficient to Demonstrate Otherwise**

The government argues that "all that is required" to establish materiality is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (Opp. Mem. at 28). However, the Indictment does not allege any facts to support this standard. The disclosure of the alleged misrepresentations would <u>not</u> have been viewed by a reasonable investor as having "significantly altered the total mix of information" because Jefferies's profits simply would not have mattered to sophisticated institutional investors who cared principally about price and yield. A marginally greater embedded mark-up does not alter any of the economics of the trades. The buyers got the *same* bonds with the *same* risk/reward profile, at the very *same* price they were willing to pay and the Indictment fails to allege that Mr. Litvak's conduct caused any alleged victim to pay more than fair market value. Fraud does not exist in a commercial transaction "when the customer gets exactly what he expected and at the price he expected to pay." *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970). Consequently, Counts One through Twelve should be dismissed.

Equally misguided are the government's allegations concerning how Treasury's actions—not the actions of the wholly private PPIF managers—were somehow affected or

influenced by the alleged misstatements. (Opp. Mem. at 29-30). Under the PPIP as implemented, Mr. Litvak's alleged misstatements did not have "a natural tendency to influence the decision of the decision-making body." *Neder v. United States*, 527 U.S. 1, 16 (1999) (section 1031 context); *United States v. Ballistrea*, 101 F.3d 827, 835 n.5 (2d Cir. 1996) (Section 1001 context). Treasury was completely removed from the private interactions between the PPIF managers and Mr. Litvak, and all investment decision-making rested with the PPIF managers. Thus, there is no possibility that Treasury's actions were affected or influenced and the government does not (and cannot) sufficiently allege anything to the contrary. For this additional reason, Counts Thirteen through Sixteen should be dismissed.

## CONCLUSION

Mr. Litvak respectfully submits that the government has failed to address adequately the flaws in the Indictment's legal theories that are the subject of this motion. Because these flaws have not been addressed or remedied, the Indictment should be dismissed.

Respectfully submitted,

**THE DEFENDANT,**
**JESSE C. LITVAK**


By:  \_\_\_/s/ Ross H. Garber_____
       Ross H. Garber (ct17689)
       Shipman & Goodwin LLP
       One Constitution Plaza
       Hartford, CT 06103
       Telephone: 860-251-5901
       Fax: 860-251-5219
       E-mail:  rgarber@goodwin.com

       Patrick J. Smith (admitted *pro hac vice*)
       Sarah B. Zimmer (admitted *pro hac vice*)
       DLA Piper LLP (US)
       1251 Avenue of the Americas, 27th Floor
       New York, New York 10020
       Tel.: (212) 335-4500
       Fax: (212) 884-8509
       E-mail:  patrick.smith@dlapiper.com
       E-mail:  sarah.zimmer@dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Ross H. Garber

Ross H. Garber