```
 1                   UNITED STATES DISTRICT COURT

 2                    DISTRICT OF CONNECTICUT

 3   _____
     United States of America   )September 27, 2013
 4                 Government   )10:00 a.m.
     v.                         )
 5   Jesse Litvak               )3:13cr19(JCH)
                   Defendant.   )
 6   _____)

 7

 8                                141 Church Street
                                  New Haven, Connecticut

 9                    HEARING

10   B E F O R E:
                        THE HONORABLE JANET C. HALL, U.S.D.J.
11
     A P P E A R A N C E S:
12

13   For The Government  :    Jonathan N Francis
                              Eric Glover
14                            U.S. Attorney's Office-NH
                              157 Church St., 23rd floor
15                            New Haven, CT 06510

16
     For the Defendant         Ross H. Garber
17                            Shipman & Goodwin
                              One Constitution Plaza
18                            Hartford, CT 06103-1919

19                            Patrick Joseph Smith
                              Sarah P. Zimmer
20                            DLA Piper US LLP-NY
                              1251 Avenue of the Americas,
21                            27th Floor
                              New York, NY 10020-1104
22

23

24

25
```

1          THE COURT:  We're here this morning in the matter of

2     the United States of America versus Jesse C. Litvak, 313CR19.

3     If I can have appearances please.

4          MR. FRANCIS:  For the government, Jonathan Francis

5     and Eric Glover.

6          MR. SMITH:  For Mr. Litvak, Patrick Smith and Sarah

7     Zimmer and Ross Garber.

8          THE COURT:  Good morning to all of you.

9          We're here today.  I know there's another motion

10    pending.  I'm only going to address the motion to dismiss the

11    indictment that's fully joined.  In that regard, I will start

12    with Attorney Smith.

13         MR. SMITH:  Yes, your Honor.

14         THE COURT:  It is your motion.  Give me a second to

15    get organized, if you would.  I feel like a traveling

16    salesman or something.  It is Document Number 52.  I don't

17    know.  I'm sure Attorney Garber told you that I tend to ask

18    questions.

19         MR. SMITH:  I recall that from our last appearance,

20    your Honor.

21         THE COURT:  Okay.  I read the briefs, reviewed the

22    indictment and the cases obviously and the statutes, so I

23    guess I will start with questions.  I'm sure you will do a

24    fine job of working all the arguments you want to work in.

25    If you don't, I will give you a few minutes I guess at the

1    end.

2            MR. SMITH:  Thank you.

3            THE COURT:  I guess I will start first with your

4    argument concerning the materiality element.  I just don't

5    understand how you can make this argument in the Second

6    Circuit and the Supreme Court I think made it pretty clear

7    that's an issue for the jury.

8            MR. SMITH:  Well, Judge, I think the first principle

9    here is I think it is appropriate to make an argument that

10   attacks the legal sufficiency of the theory of the

11   prosecution.  I don't want to spend a whole lot of time on

12   that theory.  The theory of the prosecution is that investors

13   whether top funded or private were cheated out of something,

14   something of value, but the indictment doesn't allege certain

15   essential facts to support the idea that the statements were

16   material so that investors actually acted on them.  The word

17   material is in there, but the theory of the indictment is not

18   that any particular investor overpaid in the sense of paid

19   more than fair market value for the bond.

20           THE COURT:  What's fair market value?  It is the

21   price a willing buyer will pay a willing seller, right?  In

22   any given moment that market people may pay a different price

23   for the exact same thing.  It depends on what the willing

24   buyer and willing seller know about the item being sold, what

25   their desires and interests are with respect to the item,

1   right?

2        MR. SMITH:  Yes, your Honor, but the fair market

3   value what's alleged in the indictment to be the liquid

4   securities in dislocated market.  It is quite a broad range.

5   It is kind of like a house.

6        THE COURT:  That may be.  If you are selling me your

7   house, and you tell me your basement is dry as a bone, and

8   there were four inches of water in it last week, I'm going to

9   pay a different price than if I had known there were four

10  inches of water.  Maybe at the end of the day, a person who

11  bought a house, who actually inspected it on a day it had

12  eight inches of the water in its basement, I am going to buy

13  that house and may pay the same price because the seller will

14  only sell it at a certain price.  It is certainly material to

15  me in deciding whether I'm going to offer a different price

16  and what price that's going to be.

17       MR. SMITH:  I would like to take up your example.  I

18  think it is an excellent one.  In this case, everybody got

19  the house exactly as advertised.  All of the attributes.

20  There was a crack in the basement wall that let the water in.

21  That was disclosed.  Everything about the attributes of the

22  building is under the allegation of the indictment, there's

23  an allegation what was sold is not what was represented.

24       THE COURT:  What was misrepresented, as alleged by

25  the government, was at least in some of the instances, the

1    one thing I can remember is what was the price paid by the

2    seller for the item.

3         MR. SMITH:   That's exactly right, but when you put

4    that in the context of the other allegations in the

5    indictment about who the investor base is, the alleged

6    victims, sophisticated institutional investors, those are the

7    allegations, sophisticated institutional investors who are

8    equipped to negotiate for themselves, determine what the

9    price should be.

10        In that context, the alleged misrepresentations

11   about the variance in price is too trivial to have mattered

12   to them.

13        THE COURT:   That's wonderful for you to say.  At the

14   end of the trial, you may persuade a jury of that.  I'm going

15   to have to charge them on what's materiality, and you are

16   going to frame that argument in the context of the charge of

17   the materiality, and you will argue it isn't, but I don't

18   know how I can ever make a judgment as a matter of law this

19   indictment should be dismissed on the materiality deficiency

20   in its allegation.  I mean you just made an argument.  I have

21   to decide whether to dismiss this indictment on its face

22   essentially, right?

23        MR. SMITH:   Um-hum.

24        THE COURT:   Everything you said for the last 30

25   seconds before I started speaking is not found in the

1    indictment.

2         MR. SMITH:  Well, we tried very hard.  I'm not going

3    to spend more time than your Honor wishes to spend on this

4    issue, but I think if you can look at page 26 of our brief,

5    we really did try to tie the materiality argument.  In other

6    words, the absence of certain allegations to support a

7    federal fraud theory on each of the various fraud theories

8    present vis-a-vis the government, vis-a-vis the alleged

9    victims.  So, for example, the allegations in paragraphs 11

10   to 12 about sophisticated money managers who have that level

11   of sophistication, there's ample support in the case law that

12   sophisticated institutional investors there's a heightened

13   materiality standard.

14        THE COURT:  They may be sophisticated, but I don't

15   know what that means until I hear somebody get on the stand,

16   I presume an expert that's going to tell me they know a

17   sophisticated investor, the level of how they operate.  This

18   information either would or wouldn't be material to them.

19        MR. SMITH:  Maybe I will leave it with this: In this

20   transaction, the house transaction or the bond transaction,

21   cash is transferred to Jefferies.  In return the bond comes

22   back.  At the end of that transaction in return for the cash,

23   you have precisely the bond that was negotiated for at a fair

24   market value price.

25        THE COURT:  You don't precisely the bond.  You have

1   the bond in the sense it is a piece of paper.  It says

2   somebody owes somebody at a certain date under certain

3   conditions.  Yes, it is the same bond, but that bond had a

4   characteristic when the transaction occurred.  The

5   characteristic, in my opinion, is what was paid for.  For

6   example, there's other examples in the indictment.  That's

7   the easiest one I can latch on to.  If I know you paid $5 for

8   it, I may be willing to pay 5 plus X.  If I know you paid $4,

9   I may not pay you five plus X.  That's the nature of a

10  market, isn't it?

11          MR. SMITH:  That's not the allegation in the

12  indictment that the price levels because of the

13  misrepresentation about the levels where it was being bought.

14  All the allegation is is that as result of the

15  misrepresentation, what was represented to be on top was not

16  the full extent of the commission.  In other words, it is

17  like the tip of the iceberg is the alleged on top commission

18  and that imbedded in the balance of the sale price, some

19  portion of it goes to Jefferies which is greater than the

20  borrower is led to believe.  The overall price level doesn't

21  change.

22          THE COURT:  In 37B, for example, in the indictment,

23  the PPIF manager asked for detail about certain bonds that

24  were being offered by the defendant.  Litvak responded by

25  misrepresenting -- I don't know if it is true.  I have to

1    take the indictment as alleged.  "Misrepresenting the

2    seller's offering price as 59 on the Harborview Bond instead

3    of the actually offering price of 58.

4          MR. SMITH:  Assuming the allegation about the price

5    purchase is true, I would return back to your Honor's

6    observation about the attributes of the bond.  I think the

7    price information, if the alleged misrepresentation is

8    external to the attributes of the bond.  In other words, the

9    cash flows that are generated by these bonds, the Harborview

10   bonds and the Lehman bond are set under the terms of the

11   transaction all the mortgages and where they are.  All the

12   attributes of those cash flow don't change.  The only thing

13   that changes, under the theory of the indictment, is the

14   price at which Jefferies was able to secure the bond.

15         THE COURT:  Why do you think people who buy cars

16   want to find out the cost it was to the car dealer?

17   Everybody wants to know that.  People pay Consumer Reports

18   money to try to find that out.  Why?  Because it matters.  If

19   I know it cost you $100, I'm going to have a sense I think, I

20   may be stupid, I may be wrong, but I'll have a sense of

21   what's a fair profit for a car dealer.  What's a fair profit

22   for a bond seller.  What it is offered at actually by the

23   actual owner of the bond is certainly relevant to me, if I'm

24   dealing with an agent.  Maybe the jury will conclude it isn't

25   material in the context of this business.  Maybe I

1   miscomprehend the business.  That's the point of evidence is

2   for me, like the jury, is going to get educated, but I think

3   if you tell a buyer that the offering price is 59 when, in

4   fact, the person who owns the car is offering it for 58, I

5   think that's material.

6           MR. SMITH:  I will leave you with this observation.

7   I think it's something we referenced in terms of the FINRA

8   guidance on these types of transactions.  There's a class of

9   buyers that's different from other buyers.  It is called a

10  qualified institutional buyer.  It is defined under SEC Rule

11  144 A.  It's incorporated into the FINRA information memo

12  244-1.  We cited in our brief.  Qualified institutional

13  buyers are a certain size and sophistication.  Under FINRA's

14  approach of things, they get less protection than everyone

15  else.  For everyone else out there, FINRA has a guideline

16  that says you can't mark up bonds more than 5 percent but for

17  situations where you have a qualified institutional buyer on

18  the buy side of the trade, we're talking about noninvestment

19  grade securities, which all but one of the bonds at issue in

20  this indictment were, there's no guideline at all.  In other

21  words, FINRA made a determination that there's big boys on

22  the buy side.  They can figure it out for themselves.  They

23  deal with price and yield.  You are shaking your head.

24          THE COURT:  Because that's why the Second Circuit

25  and the Supreme Court said materiality is an issue for the

1    jury.  The jury needs to be told this.  You need to be able

2    to make your argument this isn't material.  These are the big

3    boys and look at how there's regulations and they treat them

4    different.  This wasn't important to them.  You will probably

5    call three people who do this business.  They will say are

6    you kidding me?  That wouldn't have mattered to me.  I was

7    paying X for that bond no matter what, right?  You will make

8    a better argument than I did but something like that.  The

9    government is going to call their witnesses.  They are going

10   to say this made a difference.  This was a lie.  That's

11   really what the government is going to say.  They are going

12   to keep pounding he lied, he lied, he lied.  You will demand

13   that's not material but that's not for me to decide.  It

14   would take the circuit three nanoseconds to tell me I'm

15   reversed on that.

16          Anyway let me turn to another question.  You argue

17   that these alleged misrepresentations to the funds, I will

18   call them funds, which I mean PPIF.  I hate saying PPIF.  I

19   can't get it out of my mouth.  That they are not really a

20   government entity.  They don't qualify under the statutes

21   that would justify the federal jurisdiction element I guess

22   is probably the best way to put the sum of the argument, sort

23   of your jurisdictional argument, but let's start with some

24   basics to make sure I understand sort of the basic facts.

25   These funds were created by the government, correct?

1            MR. SMITH:  No.  That is not correct.

2            THE COURT:  That's not correct.  Good. Tell me who

3    created them.

4            MR. SMITH:  Under paragraph 8 of the indictment, if

5    I can refer your Honor there, it is alleged each PPIF, there

6    I had to say PPIF, was established and managed by a legacy

7    security PPIF fund manager.  There was a selection.  There

8    was a role of the Treasury in selecting the managers, but the

9    funds themselves were established and managed by the

10   managers, the private entity.

11           THE COURT:  The Treasury selects them.  They select

12   them and say all right you create this fund and its purpose

13   will be to deal with these troubled assets, and we're going

14   to contribute, well, comes up to 75 percent of the value in

15   the fund, right, comes from government money and then they

16   the funds are supervised by the government.  Am I right about

17   that?

18           MR. SMITH:  I think supervised is not the right

19   term.  I think the relationship as alleged in the indictment,

20   there's no allegation of supervision.  It is alleged that

21   they are established and managed by the manager who was

22   selected and that they owe a fiduciary duty, much like every

23   private manager to private investors owes a fiduciary duty.

24   There's not an allegation of supervision in the indictment

25   that I can see.

1            THE COURT:  Didn't the Treasury create a separate

2    office, SIGTARP, to supervise the expenditures through the

3    funds and that the primary investor -- I'm sorry.  They were

4    the primary investors, the Treasury and that further the

5    funds were obligated to provide periodic reports to this

6    Treasury entity, lists of the securities purchased, the list

7    of the securities sellers, profit and loss, things of that

8    sort.  That's not supervision?

9            MR. SMITH:  Not exactly, Judge.  Not as a matter of

10   the Treasury acting in its role as a federal agency asserting

11   its jurisdiction.  Here is why not.  Congress passes the

12   Emergency Economic Stabilization Act of 2008 in the Fall of

13   2008.  Remember the headlines $700 billion available to buy

14   troubled assets, and they don't actually go do that at that

15   time.  Instead the Treasury saw fit to inject money directly

16   to the bank.  They didn't buy.  There was authority to do

17   direct purchases of troubled assets.  It wasn't exercised.

18   It was only later in 2009, and I refer your Honor for this to

19   the SIGTARP report on selecting managers which gives

20   background on this.  I think we cited to it.  I have a copy

21   if your Honor hasn't printed one out.  So sometime in

22   February, then into March of 2009, Treasury decides after

23   SIGTARP has been formed as an overall special inspector

24   general for the actual program, they decide to do it a little

25   bit different way and form the public private legacy

1    securities program so that happens later in March of 2009.

2    Actually they have to go back to Congress to get

3    authorization which is passed in May of 2009 to say that

4    Treasury could actually establish the framework for this.

5            Your specific questions are wasn't there

6    supervision. I would say Treasury could have done it with

7    direct supervision.  They could have bought the assets, gone

8    out and directly contracted with managers to manage those

9    assets to buy and sell on behalf of the Treasury but they

10   didn't.  Instead they selected managers who would establish

11   and manage the fund and then enter into agreements with these

12   managers through which the investment that's alleged in

13   paragraph 7 of the indictment was made, so they got limited

14   partnership interests and for about half the equity, and then

15   they also loaned money to bring the total cash in through

16   equity and debt to about 75 percent.

17          THE COURT:  When this fund went and bought something

18   through Mr. Litvak or through anybody but in this case, Mr.

19   Litvak, any of these bonds, they were using every dollar they

20   spend was $75 of government money?

21          MR. SMITH:  Unquestionably.  Unquestionably the

22   circumstances here the federal money could be traced through

23   the funds and ultimately wound up over in Jefferies.

24          THE COURT:  Is it your position that as to that

25   expenditure and as to operation of the funds, the funds were

```
 1    not supervised in any way by the government?
 2            MR. SMITH:  They were not supervised through the
 3    direct regulatory authority of Treasury, no, and the funding
 4    itself is not a sufficient circumstance to create 1001
 5    jurisdiction.
 6            You know, if I may, your Honor, the government cites
 7    to a series of regulations to support the idea that there's a
 8    regulatory framework that's applicable here, and Treasury was
 9    flexing its regulatory muscles in showing its jurisdiction.
10    I think the arguments on page 21 of their brief are just
11    wrong.  I don't want to use another word.  I think they are
12    just wrong.  I would like to explain to you in some detail
13    why they are wrong.  It is very important I think to
14    understand that there are no applicable regulations from
15    Treasury that govern the conduct of the PPIF managers.  All
16    of the obligations your Honor ticked off about reports, all
17    flow from the Limited Partnership Agreement where Treasury
18    explicitly agreed to act solely as a limited partner, signed
19    on the investment in that way, not as an agency.
20            THE COURT:  What does it matter whether it is what
21    their limited partner had, that's how these are in these
22    funds in large measure.  They are still imposing limits on
23    the fund managers which means the operation of the funds as
24    to the conflicts of interest, other market activity,
25    enforcement of the rules they have, confidentiality.  It
```

1    sounds like supervision to me.

2         MR. SMITH:  By contract.  Not by regulatory

3    authority.

4         THE COURT:  What does that matter?

5         MR. SMITH:  Because under the 1001 cases, you have

6    to have the statement be made and in a context in which the

7    agency would be receiving the statement as part of its core

8    business, not something peripheral to the business, that's

9    Rogers.  In the Second Circuit, Candella imposes the

10   requirement.  I was quite glad that the government relied on

11   Candella.  The statement has to be one that was contemplated

12   to be sent in and relied on by the government agency.  So we

13   have this.  You have to have a framework where the statements

14   are actually going to be at some point either acted on or

15   relied on or the government is going to undertake some

16   official act as a result of the statements.  Think about

17   these statements here, your Honor --

18        THE COURT:  I read Candella to say that 1001 doesn't

19   require that the statement be submitted to an agency or

20   department or the United States but rather that was

21   contemplated the statement was to be utilized in a manner

22   which is within the jurisdiction of such department or

23   agency.

24        MR. SMITH:  Contemplated to be utilized.  We focus

25   on that.  What was contemplated here?  You have Treasury

1    signing on as a limited partner in a fund, ceding management

2    and that's paragraph 8 of the indictment, established and

3    managed.  Managed by the PPIF managers that were selected by

4    Treasury.  As part of that management, the manager selects

5    the bond.  The manager negotiates the price of the bonds.

6    The manager has under the Limited Partnership Agreement, some

7    quarterly reporting requirement under 10 biggest positions

8    and the periodic performance reports.  Mr. Litvak's alleged

9    misstatements go to, as we discussed earlier, the prices that

10   the managers paid.  There's no reporting requirement on

11   commissions, fees, mark ups, expenses.  The statement is made

12   and dies at the manager level, who is not required or it is

13   not contemplated that it would be passed along to Treasury to

14   be utilized in anyway.  Let's remember --

15        THE COURT:  Doesn't part of the requirement of

16   reporting include profit and loss?  Isn't the profit and loss

17   affected if somebody tells me I'm paying -- I'm buying

18   something for $101 that was bought by that person at 100.

19   Doesn't that affect the profit and loss?

20        MR. SMITH:  It might or might not.

21        THE COURT:  If I had known it is 99 and I only paid

22   100, I might make another dollar.

23        MR. SMITH:  It may might or might not.  Depends on

24   the way the manager marks the securities on the day that they

25   buy the bonds but getting back to it.  The statements made

```
 1    the manager has no reporting requirement but what act would
 2    be undertaken.  How would it be utilized by Treasury.
 3    Treasury has funded.  Treasury has made a decision to invest
 4    in these PPIF funds.  A determination made by SIGTARP was
 5    that that was the actual purchase of the troubled asset, not
 6    the subsequent transactions, so when the government invests,
 7    they are done.  The subsequent transactions are not acts by
 8    the government.  I'm sort of bleeding over into the 1031
 9    argument.  You don't have any utilization.  It is not
10    contemplated that the statement be utilized by Treasury in
11    any way.  It is kind of like in Blankenship in the case out
12    of the Eleventh Circuit, there's nothing to be done with that
13    statement.  What would Treasury conceivably do under these
14    circumstances other than criminal investigation.
15         THE COURT:  It seems to me you rely heavily on Lowe
16    versus Blankenship.  Do you really want to do that?
17         MR. SMITH:  I do want to rely on Blankenship because
18    I think it is very close to Candella.
19         THE COURT:  The Ninth Circuit has yet to say that
20    they aren't going to follow it like they have said about
21    Lowe.
22         MR. SMITH:  I think this circuit has not faced the
23    circumstance where you have an allegedly false statement made
24    to a purely private entity that's in some relationship with
25    the government, that's not a government contract.  I think it
```

1    is important that we're clear that the Limited Partnership

2    Agreement, the way in which Treasury is not a government

3    contract.  There's no disbursements under a government

4    contract in any way dependent on Mr. Litvak's statement.

5    There's nothing to be done by the government.  They have

6    already funded and ceded management.

7              THE COURT:  Tell me what Second Circuit case tells

8    me there has to be expenditure-type program for this statute

9    to be triggered.

10             MR. SMITH:  I don't think there is one.  Under

11   Candella, we have a statement in that HUD scenario.  It has

12   to be one that's contemplated to be utilized.

13             THE COURT:  Candella is that how you say that?

14             MR. SMITH:  I'm not sure either.

15             THE COURT:  Isn't it that it has to be supervised.

16   That's why I was asking you about the supervision.

17             MR. SMITH:  Yes, I don't think there's supervision.

18   I would like to get back to the regs.  I digressed a little

19   bit.  The regs that they point to on page 21 of their brief

20   Title 31 of the CFR.  Those are the regulations that govern

21   conflicts of interest on the part of a certain class of

22   actors.  Mr. Litvak was outside of that class.  This is not a

23   conflict of interest scenario.  He has no conflict of

24   interest at all.  It is not one that's alleged with respect

25   to his dealing with the PPIFs.  He has no direct dealing with

1    the government so just on their face the regs don't apply

2    because this is not a conflict of interest scenario.

3          Second, the government because of the way they wrote

4    their brief, would have us believe that these regs were

5    specifically tailored to the PPIF program.  It is all

6    interspersed in their brief on page 21 that the regs require

7    PPIF managers to do this and require PPIF that.  When you go

8    and read the regs, there's absolutely no mention of PPIF and

9    for good reason because the PPIF as of January 29, 2009,

10   hadn't been conceived yet.  All of these regulations were

11   promulgated as interim rules effective January 21, 2009.

12   They're rules of general application.  Then when you dig a

13   little further, you look at the first reg in the set, there's

14   a scope limitation.  And I don't know -- can I hand up a copy

15   of this, your Honor?

16          THE COURT:  Sure.  Show it to counsel first.

17          MR. SMITH:  I'm handing up a copy of the regulation

18   that was in effect from January 2011.  It is actually the

19   regulation that was in effect when all the allegedly false

20   statements were made in the period through November 1, 2011.

21   If you look at the scope regulation, the scope in sub B,

22   regulation addresses actual and potential conflicts of

23   interest may arise from contracts and financial agency

24   agreements between private sector entities and the Treasury.

25   We don't have that here, Judge.  There are no contracts, and

1    there are no financial agency agreements existing between

2    Treasury and any PPIF entity and certainly not with Mr.

3    Litvak or Jefferies.  Why are there no contracts?  How do we

4    know this?  Because SIGTARP wrote a helpful report that I

5    cited to and I mentioned earlier the selecting fund manager's

6    report and SIGTARP did a very good job of analyzing the way

7    in which Treasury selected their managers and reviewed

8    whether or not this selection was subject to the federal

9    acquisition regulation.  They wrote in their report that

10   Treasury made a determination that they were not.  Now the

11   federal acquisition regulation applies to contractors and

12   financial agencies all throughout the government.  Treasury

13   made a determination that when they invested this way, as

14   mere limited partners and only selecting managers who would

15   work for the fund and not for Treasury.  This was not a

16   government procurement so no contractors, no financial

17   agents.  These regulations are totally irrelevant.  So the

18   government in an effort to show you that there's supervision

19   being exercised, I think we have to completely eliminate from

20   the equation that there's any applicable regulatory

21   framework.  All from your punch list earlier we have to fall

22   back on is that there are some circumstances where SIGTARP

23   requests, not in its role as a law enforcement agency, not in

24   its role as empowered by regulations, but rather a term in

25   the Limited Partnership Agreement, they can ask for things,

```
1   they get them.  I don't think we have supervision in the
2   regulatory government sense.  We have typical standard way
3   reporting provisions that you would see in any Limited
4   Partnership Agreement involving an investment fund.
5         That's why I think here, Judge, that the line -- I
6   think like the Candella line, we are well on the lack of
7   jurisdiction side of the Candella line because the statements
8   that Mr. Litvak made are too many steps removed from anything
9   the Treasury would have or could have done with respect to
10  the statements.
11        THE COURT:  All right.  Thank you, sir.  Who is
12  going to argue for the government?
13        MR. FRANCIS: Good morning, your Honor.  I will take
14  these issues as you raised them unless your Honor has
15  questions.
16        THE COURT:  I have questions.
17        MR. FRANCIS:  Well, then please.
18        THE COURT:  Well, I guess let's start with where he
19  ended.  How does Treasury supervise the PPIF says Candella
20  and other cases talk about supervision as evidence of within
21  the jurisdiction of the United States?
22        MR. FRANCIS:  This whole argument it is very
23  tempting for me to talk about what some of our evidence will
24  be at trial, and in some ways everything that Mr. Smith said
25  is sort of baiting me into talking about that.  This is a
```

1    Rule 12 motion.  If I begin to make a proffer of what our

2    evidence is going to be, I'm at risk under Second Circuit law

3    of having that deemed to be a full proffer.  I don't want to

4    bind the government.  We're not prepared to try the case

5    today.  However, I think I can say without running afoul of

6    this risk, the government has evidence it will put on about

7    Treasury's jurisdiction over the PPIF program.

8              THE COURT:  Let's look at the indictment.  If you

9    indicted Mr. Litvak and said that he lied in connection with

10   a sale of a boat, okay.  I owned the boat, I don't have a

11   government loan.  He doesn't have a government loan.  Nobody

12   has anything to do with the government.  All right?  I

13   suspect that they would make a motion to dismiss, and I would

14   probably say where's the jurisdictional hook here for federal

15   court, right?

16             MR. FRANCIS:  Right.

17             THE COURT:  Let's look at the indictment.  Where is

18   the jurisdictional hook in your indictment?

19             MR. FRANCIS:  So I would refer your Honor to

20   paragraphs 5, 6, 7, 9, 10, and then I have a longer list, but

21   I don't want to -- it is essentially paragraphs 30, 37.

22             THE COURT:  Is merely receiving money from the

23   government then trigger federal criminal jurisdiction over

24   the ultimate use of that money by the person who received it?

25             MR. FRANCIS:  I don't think so.  However where the

1  government retains authority to supervise expenditure of

2  federal funds, then jurisdiction follows.

3         THE COURT:  I agree with you 100 percent but I'm

4  skimming 5, 6, 7, 9, 10.  I haven't seen that yet.

5         MR. FRANCIS:  I would say we allege that there's

6  jurisdiction.  We make the allegation tracking the statute in

7  paragraph I believe it is 54.

8         THE COURT:  Is that enough?

9         MR. FRANCIS:  Yes.

10         THE COURT:  Tell me the latest Second Circuit case

11  that would tell me that's enough.

12         MR. FRANCIS:  The latest.

13         THE COURT:  Or whatever, something that's maybe got

14  a 2 in front of the year.

15         MR. FRANCIS:  Well, I apologize to the extent your

16  Honor is making fun of the fact that my cases are old.  It is

17  because this is a long standing body of case law.

18         THE COURT:  Give me something that starts with a

19  1-9.  I will take that.

20         Which paragraph did you say has the sort of

21  boilerplate statutory language?

22         MR. FRANCIS:  That's 60, your Honor.

23         The language is in a matter of the jurisdiction of

24  the United States Department of Treasury.  We track the

25  statute.  To the extent that --

1          THE COURT:  What case tells me that's enough?

2          MR. FRANCIS:  I will come back just so you

3    understand, the other paragraphs that's the fact that

4    Mr. Smith is looking for.  To be clear, I want to concede

5    we're at the fact stage.  We're at the allegation stage.

6    Those are allegations of fact.  I'm looking for my most

7    recent case, Judge.

8          THE COURT:  That's fine.

9          MR. FRANCIS:  I would say that I think Davis which

10   starts with a 1-9, 1993.  It's 20 years old.  I'm sure your

11   Honor if to the extent it would be useful, I would be happy

12   to go find the more recent, the most recent case that

13   basically stands for the basic proposition that I don't think

14   anyone would argue there's no requirement that a false

15   statement be made to a federal agency and must only be made

16   within the matter of a jurisdiction which department or

17   agency of the United States.  We allege there's false

18   statements made within a matter within the jurisdiction of

19   the Department of Treasury.  That's enough.

20         THE COURT:  Right.  Maybe if you had a two paragraph

21   indictment, we wouldn't be here.

22         MR. FRANCIS:  I think we would be here on a

23   different motion.

24         THE COURT:  Probably.  Maybe.  You have alleged a

25   lot of allegations, right?  You have told me about Tarp.  You

1    have told me about SIGTARP.  You have told me about the PPIF

2    or whatever they are that I don't like saying, and the fund

3    managers, you told me about people like Mr. Litvak who are

4    bond traders basically.  You have given me specifics about

5    some trades so why is it that the defendant's -- you

6    criticize the defendant or you argue that he's arguing

7    evidence he's outside the framework of the indictment, and I

8    didn't challenge him on that but he certainly has introduced

9    more evidence, but just taking the indictment, can't he argue

10   from the indictment that your boilerplate allegation in

11   paragraph 60 is belied by the rest of your allegations?  In

12   other words, you have alleged enough to put your foot in

13   it.

14           MR. FRANCIS:  He could, but I don't think that's

15   actually what he's alleging or what he's arguing.

16           THE COURT:  Let's say that's what he's alleging.

17   I'm claiming that.  Tell me why that's not a problem for

18   you.

19           MR. FRANCIS:  It could be a case that some of the

20   facts we allege would show that we don't meet the standard.

21   For instance, if we allege facts about the boat sale, and we

22   detail everything about it, we even say no one here worked

23   for the government, obviously that would be a

24   problem regardless of whether or not we alleged the

25   boilerplate.  All the facts that we allege in the opening

1   paragraph, the earlier single digit paragraphs say those are

2   consistent with the boiler plate language.

3           THE COURT:  I don't know if the government goes out

4   and invests in something, okay, I'm not quite sure whether

5   people who deal with the people running what they invested in

6   are necessarily being supervised by the government.

7           MR. FRANCIS:  Right.

8           THE COURT:  I go and buy, you know, a Vanguard

9   Market Index Fund.  I'm an investor.  I'm not supervising

10  them.

11          MR. FRANCIS:  To be clear, the government is not

12  arguing that Mr. Litvak is being supervised by the

13  government.

14          THE COURT:  I understand.  You are arguing that the

15  funds and the fund managers are, right?

16          MR. FRANCIS:  I think we would go a step beyond that

17  or maybe a step back from that.  What's required is the false

18  statements be made within a matter within the jurisdiction.

19  The PPIF's purchase of troubled assets is clearly a matter

20  within the jurisdiction of Treasury and, you know, we cite to

21  a bunch of statutes.  This is why it is so frustrating.  The

22  government's evidence -- intends to put on evidence

23  specifying this but just from the indictment, it alleges this

24  is a matter within the jurisdiction of the United States

25  Treasury.

1          THE COURT:  What is a matter within the

2     jurisdiction?  What does that mean?

3          MR. FRANCIS:  It means that the government has the

4     authority to act or actually does act.  Here Treasury has the

5     authority to act.

6          THE COURT:  To do what?

7          MR. FRANCIS:  Supervises the PPIFs.

8          THE COURT:  How does it supervise them?

9          MR. FRANCIS:  There's a variety of ways.  PPIFs are

10    required to make quarterly and monthly reports regarding

11    profit and loss on every transaction --

12          THE COURT:  Under what law do they have to do that?

13    The regulations you cite?

14          MR. FRANCIS:  Actually there's a couple things.

15    EESA, Emergency Economic Stabilization Act, EESA.  EESA

16    requires Treasury to maximize profits and minimize losses in

17    PPIF, in these funds.  I will stop using the term, in these

18    funds.

19          THE COURT:  It is all right.  You can say it. I

20    don't mind.

21          MR. FRANCIS:  Actually authorizes Treasury to go out

22    and do it indirectly to delegate its trading authority,

23    delegate its purchasing authority to financial vehicles, and

24    it describes them without using the term PPIF.  A PPIF is

25    clearly the financial vehicle that's contemplated by the

1    statute.  That's what gave authority to do this.  Then

2    Treasury established regulations.  Mr. Smith is correct.

3    Some of them -- they are all under the broad rubric of

4    conflict of interest.  It also enters into contracts I

5    suppose.  Frankly, the fact we're talking about contracts I

6    think is a huge red flag that this Rule 12 motion is not a

7    Rule 12 motion at all.  We have now bled into Rule 29 with a

8    hint of the actual evidence that will actually be presented

9    at trial.

10            But pursuant to that, there are all kinds of

11   reporting requirements from the PPIF, that whole framework,

12   whether it is the contract, the regulation, the statute.

13   There are reporting requirements from the PPIF up to Treasury

14   and Treasury has rights to go into the PPIFs to talk to

15   people, to look at the books and the records, PPIF --

16            THE COURT:  Is that by contract or by statute or

17   regulation?

18            MR. FRANCIS:  The regulations and I believe the

19   contracts deal with some of these same things.  The fact that

20   the contracts repeat within the regulations.

21            THE COURT:  Where in the regulations?  The ones you

22   are citing at 21 of your brief, the same ones that start with

23   the page that counsel handed up 31.200.  Your citation is

24   different than that.

25            MR. FRANCIS:  I apologize.  I'm not sure.  I'm not

1    an expert in the regulations, but the fact that Treasury has

2    gone to the trouble of promulgating regulations pursuant to

3    its statutory authority to do so to regulate, to supervise

4    the PPIFs, I think goes to show this is a matter within just

5    a bare fact that it has regulations.

6         THE COURT:  Is it your view that 31.200B says these

7    following regs will regulate PPIFs?

8         MR. FRANCIS:  Having seen this as of five minutes

9    ago, I have not done any research.  I'm not sure why it

10   didn't come up in the reply brief.  The defense talks about

11   the contracts between Treasury and the PPIF fund manager.

12   They cite again and again to the Limited Partnership

13   Agreement, and so I believe that's a contract between the

14   private sector entity and Treasury for services under Tarp.

15        THE COURT:  Is that us here or something else?

16        MR. FRANCIS:  I think that's us here.  I would want

17   to research it more.  This is my first read of this.  But

18   yes, in which case, I think what that means Treasury has

19   promulgated regulations that govern the relationship between

20   the PPIF fund managers and Treasury which means that Treasury

21   is supervising the PPIF fund managers.  In some ways, your

22   Honor, I don't want to beat a dead horse here.  We have gone

23   so far down the Rule 29 hole, I want to back up make sure we

24   recognize we're very far away from Rule 12.  This isn't a

25   motion to dismiss.  This is like a motion for summary

1    judgment.

2        THE COURT:  I'm not asking about that.  Can you tell

3    me have there been other prosecutions around the country

4    involving this program of brokers who were involved in

5    selling to PPIFs?

6        MR. FRANCIS:  Not that I'm aware of, Judge.

7        THE COURT:  This is the first?

8        MR. FRANCIS:  That I'm aware of.  I don't know this

9    is the first, but it is the only one I'm aware of.

10       THE COURT:  I want to turn to the argument of

11   defense that you haven't pled the charge.  The argument about

12   the in which is in the statute versus in connection with

13   which is your indictment language.  Are you alleging that he

14   defrauded the government in a form of federal assistance or

15   in connection with the form of federal assistance?

16       MR. FRANCIS:  The indictment uses the word in

17   connection with, but the government's theory of its case, I

18   don't even understand there's a difference in this context

19   being in and in connection with.  The defense hasn't

20   identified any examples of anything --

21       THE COURT:  The words can't mean the same.

22       MR. FRANCIS:  I think in this context they do.  When

23   we're talking about a physical object, I understand you can

24   be in this building or something being in connection with

25   this building.  We're talking about this statute.  We're

1    talking about abstract ideas.  In Tarp.  Nothing is actually

2    inside of Tarp, Tarp is not a physical thing you can get

3    inside of.  The word in in that statute means regarding, in

4    relation to, in connection with.  I don't think there's any

5    difference in the meaning of those terms.  If there is,

6    Judge, connection with then becomes surplusage.

7              THE COURT:  Would you agree with me that I will

8    charge the jury on in a form of federal assistance opposed to

9    in connection with a form of federal assistance?

10             MR. FRANCIS:  Yes, of course.

11             THE COURT:  That you have to prove that?

12             MR. FRANCIS:  Absolutely.

13             THE COURT:  The reply brief cites to the SIGTARP

14   report.  Counsel mentioned it again this morning which it

15   describes these funds, the PPIFs, as the troubled assets

16   themselves.

17             MR. FRANCIS:  Yes.

18             THE COURT:  You noted in your brief that the statute

19   which created the PPIFs speaks about them buying troubled

20   assets.

21             MR. FRANCIS:  Yes.

22             THE COURT:  Are they both troubled assets?

23             MR. FRANCIS:  I think the audit report is wrong.  In

24   any event, it doesn't really matter because when you are

25   trying to understand what the definition of a term in a

1    statute is, I think you look to the definition provided by

2    the statute before you look to an audit report written by the

3    Inspector General for an agency that was seeking to

4    understand how it could use that statute under a different

5    regulation of its own.

6         THE COURT:  Remind me of the language of the

7    statute.

8         MR. FRANCIS:  This is on page 25 of the opposition

9    brief, Judge.  Troubled assets.  Two part definition.  The

10   first part is residential or commercial mortgages.

11        THE COURT:  25?

12        MR. FRANCIS:  Page 25 of my brief.

13        THE COURT:  I had 25 circled.  There was a reason I

14   wanted to go there.  Two stars next to it.  Go ahead.

15        MR. FRANCIS:  Part one, residential or commercial

16   mortgages or any entity, securities, obligations, or other

17   instruments that are based on or related to such mortgages,

18   then each case originator can issue on or before March 14,

19   2008, the purchase of which the prompts financial stability.

20   That's a troubled asset.  There's a second definition says

21   the secretary wants something else to mean troubled asset.

22   It can let Congress know and go ahead and do that.  That's in

23   the footnotes.

24        THE COURT:  The statute prohibits obtaining money or

25   property, which you would claim would be the fee earned by

1    Mr. Litvak?

2         MR. FRANCIS:  Yes, money.

3         THE COURT:  By means of false pretense, which you

4    have alleged various in the indictment.  In any form of

5    federal assistance, including the government's purchase of

6    any troubled asset, is that -- am I reading the statute right

7    as it relates to this case, the charge in this case?

8         MR. FRANCIS:  Yes, Judge.

9         THE COURT:  So that's why you say you don't think

10   the Inspector General's done a good edit of his report

11   because it is the troubled asset is the mortgage or the

12   bundle of mortgages that which are behind the bond.  It was

13   at the time of the sale of the bond in connection with your

14   alleged false statements by Mr. Litvak which creates a

15   violation of the statute.

16        MR. FRANCIS:  Correct.  The statute we charge says

17   troubled assets has as defined in the Emergency Economic

18   Stabilization Act of 2008.  When you want to know what does a

19   troubled asset mean, 1031 says go to read EESA.  EESA tells

20   you it is R&BS which is exactly what we say the PPIFs were

21   doing here.

22        THE COURT:  Should I be worried and I'm jumping

23   around now.  I'm sorry.  Candella, as I recall it, was a

24   reimbursement program.  You filled out a form or whatever,

25   then that agency went to the government, and the government

1    gave them money to pay for whatever, I think it was moving

2    expenses.  This isn't a reimbursement case.  This isn't where

3    here's my form.  I'm telling the truth.  I actually hired the

4    mover and it cost $750, when indeed like your brother moved

5    you, it didn't cost you anything.  It is not like the

6    government is relying on that statement.  In that case, the

7    government is relying on that statement.  This isn't a

8    reimbursement type of setting, is it?

9            MR. FRANCIS:  No, your Honor, it is not.  Your Honor

10   should not be worried.  The reason why is there's no logical

11   distinction why a program funded by the government should be

12   treated any differently than a program in which you go to the

13   government and seek reimbursement kind of whether the payment

14   happens first or the payment happens second, it really

15   doesn't make a difference.  In fact, we didn't research this

16   specific point but incidentally some of the cases we cite on

17   page 17 in Footnote 8, when your Honor was talking about it

18   with Mr. Smith, I looked at this and noticed the United

19   States versus Wolf, that's a Tenth Circuit case from 1981.

20   Even older.  It held that jurisdiction existed under 1001

21   where, quote, the federal government either partially funds

22   the program under which the undeserved benefits are requested

23   or reimburses the agency for its expenditures.  I don't think

24   jurisdiction is in any way dependant on whether the false

25   statement happens and then the payment by the government or

1    the payment happens by the government into a program is then

2    defrauded using a false statement.

3            THE COURT:  What about the argument the defendant

4    makes -- he makes it at page 3 of his reply.  Probably makes

5    it elsewhere but that's what is in front of me which is

6    relying on the Limited Partnership Agreement which I know

7    you're going to tell me we're not at Rule 29, we're at Rule

8    12.  Pamper me.  In which it says that the government, kind

9    of to the point I'm talking about this reimbursement.  The

10   government is putting a pot of money out there and turning it

11   over to fund managers and saying yes, you should manage these

12   wisely and have a fiduciary duty to me but you are making all

13   the decisions, you go buy and sell.  I suppose you could

14   further that thought by saying and if you get defrauded, you

15   go sue the person who defrauded you.  Isn't that different

16   than a government program like Medicare or Food Stamps or I

17   could think of a lot of others or the reimbursement program

18   in Candella?

19           There the government is actually getting a piece of

20   paper, $750 for this moving.  Here you go, here's your $750

21   check.  In this instance, the government has no involvement

22   in the purchase of sales that involve Mr. Litvak or other

23   brokers.  It is saying, you know, Alliance Bernstein, you go

24   make these decisions.  We don't want to know about anything.

25           MR. FRANCIS:  The fact the Treasury has delegated

1      its decision making with respect to what particular bonds to

2      go buy and how much to pay for that bond, that doesn't mean

3      Treasury has given up its jurisdiction over the program.  We

4      cite lots of cases.  Candella is one of them, Davis is

5      another one where just because the BOP delegates to the state

6      the authority to kind of regulate the life of a prisoner, a

7      federal prisoner being held in a state facility, doesn't mean

8      that BOP gives up its jurisdiction over the matter entirely.

9      It means it is delegated.  Here specifically Congress told

10     Treasury the one way it could exercise its jurisdiction would

11     be to delegate to financial vehicles like the PPIFs decision

12     making about how to go buy.  I don't think we want the

13     government required to be micromanaging all these things just

14     so 1001 will continue to apply.  I think there's lots of

15     cases people make this argument I didn't know I was talking

16     to the government.  I never dealt with the government.  There

17     are lots of cases, some of them even very recent cases that

18     hold that that's not required.  There's no mental state

19     requirement.  You don't need to know that you are dealing

20     with the government.

21              THE COURT:  You cited the EESA Section.  Can you

22     tell me the statutory citation for it?  Where I will find it?

23              MR. FRANCIS:  Sure.  This was the section

24     concerning --

25              THE COURT:  Telling Treasury they can delegate their

1    authority in effect over the troubled assets to what

2    eventually became the PPIFs.  That's what I understood you to

3    argue.

4         MR. FRANCIS:  12 USC Section 52-11(a)(1).

5         THE COURT:  Thank you.  I don't have anything

6    further.  Anything further you want to add?

7         MR. FRANCIS:  No, thank you.

8         THE COURT:  Attorney Smith, can you give me an

9    example in this context what difference it makes.  I think

10   counsel is right I don't remember your brief telling me any

11   examples.  I'm sort of a concrete type of person, so give me

12   an example of what's in versus in connection with that would

13   make a difference in this case.

14        MR. FRANCIS:  In connection with is plainly broader.

15        THE COURT:  Why is it plainly broader here?  Tell

16   me.

17        MR. FRANCIS:  The way the statute is drafted in,

18   it's about requests for federal assistance.  In other words,

19   the words of the statute contemplate making an application

20   directly to the government and getting assistance back.

21   That's what the Tarp fraud statute that's charged here

22   Section 1031 is about.  So.

23        THE COURT:  That's nice to say.  I guess I would

24   like you to tell me the basis for that statement.

25        MR. FRANCIS:  It is really just the statutory

1    words.

2          THE COURT:  In any form of federal assistance?  It

3    doesn't say you have to apply.

4          MR. FRANCIS:  You have to receive.  It has to be in

5    the assistance.  In other words, in the act of the government

6    giving assistance, a fraudulent representation is made and

7    the government parts with money as a result of that false

8    statement.  That's what I think the statute fairly

9    prohibits.

10         THE COURT:  Can you give me the best case you can

11   that would support that.

12         MR. SMITH:  I think we both looked high and low.  We

13   haven't found any interpretive guides out there for Section

14   1031, and why are we outside of that circle of the ven

15   diagram.  Neither Jefferies nor Mr. Litvak was in any way

16   applying to the government directly or indirectly for federal

17   assistance.  They were not seeking to avail themselves of the

18   federal assistance program.  The federal assistance, the

19   disbursement of funds pursuant to the Tarp program was

20   complete upon the investment in the private investment

21   vehicle, the PPIF.  The down stream transactions are remote

22   to the core of the conduct that the statute prohibits.

23         THE COURT:  To the extent that you are making an

24   argument that the allegations is language not precisely in

25   the statute, has the United States versus Depietro Antonio

1    been reversed?  That's a Second Circuit from 1961 which

2    suggests to me that the government needs to freshen their

3    research or it is such a black letter law principle that

4    nobody has questioned it in which the Court said the

5    indictment need not have been worded in the precise language

6    of the statute so long as the appellate was apprised of the

7    offenses he's being charged.  I think your brief suggests

8    that Mr. Litvak knows what he's being charged for.

9         MR. SMITH:  Unquestionably.  The question here is a

10   risk to Mr. Litvak.  You, your Honor said I'm not charging

11   this jury with the words in connection with, so what are the

12   words doing in there?  We're having a debate about whether it

13   is broader or not we can all marshal arguments, certainly

14   they have and we could that it is potentially broader in a

15   criminal setting, that's just not fair to the defendant.  Why

16   should Mr. Litvak bear the risk that an indictment will go to

17   the jury with those words in it that can potentially be

18   construed as broader than what the statute prohibition is.

19        THE COURT:  That's what a charge is for.  I hear the

20   government is not going to object to my charging the jury

21   with the phrase in the form of federal assistance.

22        MR. SMITH:  However, if the indictment goes in in

23   its current form to the jury so the jury reads it, there's a

24   potential for mischief.

25        THE COURT:  I am sure you will ask me to give a more

1    specific instruction about that in the indictment.  I don't

2    see the harm to Mr. Litvak.  I don't understand how the case

3    law supports the argument that that type of an allegation

4    creates some sort of defect in the indictment.

5         MR. SMITH:  Standard practice out of the government,

6    the indictments I have seen, to closely track the words of

7    the statute.  They have used that as a defense of the way the

8    indictment is framed to rebut our arguments about legal

9    sufficiency.  They say all we have to do is parrot the words

10   of the statute.  Here they are not parroting the words of the

11   statute.  There's a fair question I think in the absence of

12   legal pretense that these words are potentially broader.

13        In the security fraud counts, the 10(b)(5), they do

14   contain the operative language in connection with.  The in

15   connection with case under the federal security laws tell you

16   in connection with is sweeping and anything that touches upon

17   the trade is in connection with the trade, so I think if

18   that's the standard and that's imported into here and that's

19   the risk that somebody touches upon the request for federal

20   relief; i.e., a downstream bond sale to the privately managed

21   fund could be in connection with the fund even though it is

22   not in the request for federal assistance.  I think if we had

23   the words of the statute in front of us that the downstream

24   bond purchase, leaving aside in connection with, is not in.

25   This is just not something that Congress contemplated that

1    once you get money in a private vehicle, managed by a private

2    manager, that all of the interactions with -- commercial

3    interaction.  There's other potential false statement.  Say

4    some employee of the PPIF manager pads the hours and the PPIF

5    manager money is disbursed there.  He's working on the

6    management of the PPIF.  Is that actionable under Tarp?

7    Where's the line?  I think what you have to have under 1031

8    is trying to get the money out of the government in an

9    assistance program committing fraud to do that.  Mr. Litvak

10   and Jefferies aren't asking for any federal money, just

11   trying to sell bonds, that's pretty clear.  Trying to sell

12   bonds.

13        THE COURT:  Would there have been this market if the

14   government hadn't put together funds with 75 percent of the

15   money coming from the government to buy these things?

16        MR. SMITH:  There would have been less of a market.

17   I would suggest there's not an allegation in the indictment -

18        THE COURT:  You can strike my question.  Page 2 of

19   your reply memo, you make an interesting statement

20   considering what you just said to me about two minutes ago,

21   the government's argument that the indictment meets minimum

22   pleading standards by tracking the language of the statute

23   charged is beside the point.  Why is it beside the point?

24        MR. SMITH:  Because the clear -- you asked

25   Mr. Francis for a recent case that shows that it is not a

1    safe harbor just to parrot the words of the statute.  There's

2    <u>Pirro</u> that they never deal with, that clearly says the court

3    can examine the legal theory of the indictment based upon the

4    speaking allegations.  There's a recent case out of the

5    Southern District United States versus *Aleynikov* that

6    actually went up and was affirmed by the Second Circuit.  In

7    *Aleynikov* , it is clearly a case, it is a data espionage,

8    theft of trade secrets case.  *Aleynikov* says you have to

9    examine the allegations in the Indictment.  Clearly the Court

10   is authorized to do that.  When they choose to file a

11   speaking indictment, it is fair game to probe the legal

12   sufficiency of the theories.

13         Before we break, Mr. Francis referred you to a

14   statutory cite under EESA.  I think it is 5211(a)(1).  You

15   asked about tell me about PPIFs, where is the authority to do

16   this or that.  5211(a)(1) was passed in the fall of 2008

17   under the original EESA act by Congress.  Doesn't mention

18   PPIF.  It is another one of the scenarios where the

19   government wants you to believe that PPIF is referenced and

20   covered by statutory language.

21         THE COURT:  I don't think counsel made that

22   representation.

23         MR. SMITH:  Tell me where the Treasury is authorized

24   to do this or that.

25         THE COURT:  He said they were given the power to

1    delegate authority to entities outside of Treasury and I put

2    P P I F in brackets because I can't remember his precise

3    words, he said something like which entities eventually

4    became what we now call PPIF.

5          MR. SMITH:  That's the point I want to take on.  The

6    entities, the vehicles that are referred to in that provision

7    are vehicles where there would be a contract directly with

8    Treasury.  There would be a vehicle to which Treasury would

9    purchase the troubled assets directly.

10         THE COURT:  Can you tell me the section of the

11   statute that says that?

12         MR. SMITH:  All you have to do is look at

13   5211(a)(1), read through and you will see they are talking

14   about financial vehicles and direct purchases.  If you can

15   take a look at 5231(a) which was remember I mentioned earlier

16   the May 2009 authorization for Treasury to actually do the

17   PPIF fund.  That's the provision that sets up and establishes

18   authority by the federal government to establish a public

19   private investment fund and of all the statutory citations

20   that the government has in their briefs, this is the only one

21   that deals expressly with PPIFs and just reading through

22   here, I think we can read it for ourselves.  I'm not seeing

23   the authority to delegate.  I'm seeing you have to have

24   certain requirements in the program.  It is not a delegation

25   in the sense of, you know, here's a state agency.  We're

delegating Medicaid and responsibility to do this or that and
collect money and collect reports.  I wanted to make that
distinction.  I think it is very important.  All the
statutory background from EESA was never intended and not in
the context of the PPIF.  That was only dreamed up later in
early 2009.

One last point, Judge.  He raised the point about
notice and knowledge.  We haven't argued knowledge in the
1001 context.  We haven't argued that as part of the state of
mind requirement you have to know that the false statement
will be submitted to the government.  There's a recent case
out of Massachusetts that we cited a footnote U.S. v. Bennett
that actually does make that finding.  I only say this in
terms of Candella and several of the other cases, Candella
was a situation you mentioned those affidavits that went to
HUD, it was all over those affidavits, a certification that
we won't make false statements, and we understand that we'll
be violating a section 1001 if we do. That's an important
distinguishing feature in some of these cases, your Honor.
The defendants are notified that if they make a statement
that's within the zone, contemplated to be submitted to a
federal agency and acted on, you are facing prosecution under
Section 1001.  We don't have that in this case.  There's
nothing alleged in the indictment that anyone was put on
notice on Section 1001.  They cite that in their brief on

1   page 21 and make a big deal out of it.  They show the 1001

2   portion of the regulation.  For all of the reasons I said

3   earlier, those regulations don't apply in the PPIF context.

4   There's no fact.  In terms of the circumstances --

5           THE COURT:  That page you handed up to me what is

6   there that says it doesn't apply to the PPIF situation?

7           MR. SMITH:  Scope.  So may arise from contracts and

8   financial agency agreements.  Those are specific terms out of

9   the federal acquisition regulation.

10          THE COURT:  The partnership agreements aren't

11  contracts?

12          MR. SMITH:  They are not government contracts.  They

13  are not procurements.  On that basis --

14          THE COURT:  Where is contracts defined?  What

15  section shall I go to find the definition?

16          MR. SMITH:  You have to go to the federal agency

17  regulation I think to get contracts in this context.

18          THE COURT:  How do I know that definition governs

19  this section?  I don't know that the word contract is used in

20  a uniform fashion throughout every federal regulation in the

21  United States of America.

22          MR. SMITH:  I would refer your Honor to what we have

23  cited.  I think really the background to this is the SIGTARP

24  selecting managers report and the discussion --

25          THE COURT:  Which is not in the Indictment, right?

1          MR. SMITH:  That's the point, your Honor.  They

2     haven't alleged a government contract.  They haven't alleged

3     a procurement so they haven't alleged sufficient

4     circumstances to satisfy what's in Candella and Davis.

5          THE COURT:  They allege it is within the

6     jurisdiction of the United States at 60?

7          MR. SMITH:  They do use the words of the statute,

8     that's correct, your Honor.

9          THE COURT:  I will take the matter --

10          MR. FRANCIS:  Pardon me, judge.  I want to correct

11     one thing.  I gave your Honor the wrong cite.  It is not

12     5211(a)(1) by itself.  It's 5211(a)(1) and 5211(c)(1) through

13     C5.  And the language of that which the C provision,

14     establishing vehicles authorized subject to supervision by

15     the secretary of the Treasury to purchase, hold and sell

16     troubled assets and issue obligations.

17          THE COURT:  All right.  There's another motion

18     that's pending for discovery.  I'm not sure.  Have you

19     responded to that?

20          MR. FRANCIS:  No, your Honor.

21          THE COURT:  It is not due I assume your response.

22          MR. FRANCIS:  No, we have a couple weeks.

23          THE COURT:  Attorney Smith, is that going to be your

24     last motion or are we just at the beginning?

25          MR. SMITH:  We do have whatever the discovery that

```
 1    your Honor ordered on the advancement issue.  If anything,

 2    comes of that.  I'm not really planning any other motions.

 3    On that issue, your Honor, from your Honor's September 17

 4    order, the words of your Honor's order only reference

 5    communications with Jefferies.  We have communicated by

 6    e-mail with Mr. Francis to ask him whether his understanding

 7    was he should read Jefferies to include Jefferies and its

 8    counsel and its lawyers and its law firms.  He advised yes,

 9    that's his understanding.

10         THE COURT:  I would think that's perfectly

11    reasonable.  I used the word Jefferies as it was used in all

12    the briefing.

13         MR. FRANCIS:  It went without saying.  Of course, to

14    the extent Mr. Smith wanted clarification, we provided

15    that.

16         MR. SMITH:  Judge, you asked about another motion.

17    We have on an ex-parte basis applied for rule 17(c) subpoenas

18    twice now.  We're going to renew that application.  I think

19    in open court I would just like to say that we think that the

20    materials need to be produced sufficiently in advance of

21    trial so that our experts can work with them.  As we argued

22    in our motions, materiality is an issue here.  Fair market

23    value is an issue here.  Some of what we requested goes to

24    materials that are in the hands of the PPIF managers, not in

25    the government's discovery production that will bear on the
```

1    issue of fair market value and other issues relating to

2    materiality including the investment thesis of the advisors.

3    We'll renew that application and address everything your

4    Honor asked us to address in the application.  I would note I

5    think that December, I will respectfully submit that December

6    is too late for that.  It is too late for that because we

7    have a series of large institutions we're going to serve

8    these one.  However narrowly drawn they are, I don't think

9    they are going to say okay.  I think there's going to be

10   litigation around the scope of the subpoenas, when they have

11   to produce things, when they have to produce.  That will put

12   us well into January.  I have a deadline to make an expert

13   disclosure on October 18.  I'm lacking data for the experts

14   to do their work.  I can make a disclosure on October 18

15   about what I think the experts are going to say.  I will have

16   to supplement it with more data.  I heard you loud and clear.

17   The last thing I want to have happen is us coming and asking

18   for a continuance.  I think we need to get the process going

19   of the subpoenas being issued sooner rather than later.  The

20   government have a view.  This has been ex parte.  I basically

21   said come back if they are trial subpoenas, they should be

22   done closer.  If they are trial evidence upon which they wish

23   their expert to base their opinion, it may be in the

24   government's interest to have it come out sooner rather than

25   later because you may an expert you might want to reply with.

```
 1              MR. FRANCIS:  May I have one moment, Judge?
 2              THE COURT:  Yes.
 3              MR. FRANCIS:  So obviously because this has been
 4    done ex-parte, I'm not 100 percent sure what's going on.
 5    Seems like Mr. Smith was saying that the subpoenas -- your
 6    Honor granted permission for the subpoenas to be issued.
 7              THE COURT:  No. I haven't granted any subpoenas.  I
 8    told them to come back later.
 9              MR. FRANCIS:  In that case, I don't think the
10    government has a position on subpoenas that we haven't
11    seen.
12              THE COURT:  The question is going to be -- let's
13    take a hypothetical.  Somehow the defendants get ahold of
14    data information, whatever you want to call it, they get that
15    in January.  They give it to their expert.  Their expert
16    comes in on February 2 with a 300-page report analyzing this
17    data, opining on various things contrary to the government's
18    case.  What's the government going to want to do?  Are you
19    going to say, Judge, this isn't fair.  I need to have my
20    expert have time to do a rebuttal report.  I need a
21    continuance.  Are you going to say fine, bring it on we can
22    take the hit and we have all of the evidence we need?  I know
23    you don't know what this is that they are going to come up.
24    Even I can probably imagine what their expert is going to
25    say.  It is not material.
```

1          MR. FRANCIS:  I'm not sure why it takes 300 pages to

2     say that.

3          THE COURT:  May take 300 pages of data for him to

4     analyze and show on 50,000 transactions.  I don't know.  I'm

5     not the expert.  I don't know how they are going to do it.  I

6     know what they are going to try to have them do.

7          MR. FRANCIS:  To the extent, we're talking about

8     timing, Judge, we don't have any objection to things

9     happening earlier as opposed to later.  As your Honor knows,

10     we're very interested in the trial going as scheduled.  I

11     think we think of this case very differently than the

12     defense.  We don't think of materiality as something that

13     requires a 300-page report from an expert.  I expect

14     disparity in our viewpoints will be made very clear as we

15     move closer to trial.  If this is what they are talking about

16     and they need it for their experts, fine.  I will tell your

17     Honor we may be getting more information from some of these

18     third parties in which case we would, of course, turn it over

19     when we get it.  I have no idea what they are asking for.

20          THE COURT:  How are you getting it from third

21     parties?

22          MR. FRANCIS:  We have issued trial subpoenas, your

23     Honor.  We asked people if they are willing to provide stuff

24     early.  If they want to, they are free to.

25          THE COURT:  Did I miss something?  You get to issue

1   trial subpoenas, but the defendant has to ask me to issue

2   them?

3          MR. FRANCIS:  Yes.  That's right.

4          THE COURT:  What rule tells you that?

5          I'm not saying it isn't right, don't panic.  I'm

6   trying to the understand it.  To be honest I viewed the

7   government evidence at trial coming from the subpoenas at

8   grand jury and the subpoenas you issued at grand jury time

9   and you marshalled your evidence there.  That's principally

10  your trial evidence.  Maybe you issued a trial subpoena.  It

11  wasn't like five months before the trial and bring it in

12  early if you would like to kind of thing.

13         MR. FRANCIS:  My understanding of their motion is

14  the reason they have to go to the court for this because they

15  are asking for pretrial disclosure of -- pretrial responses

16  to their subpoenas.

17         THE COURT:  That's true.

18         MR. FRANCIS:  We are not asking --

19         THE COURT:  They could issue a subpoena and say to

20  Alliance Bernstein, if you want to turn it over four months

21  earlier, you can but you know what they are going to say to

22  that.

23         MR. FRANCIS: Of course, of course.

24         THE COURT:  I know what they are going to say to

25  you.

1          MR. FRANCIS:  Which is why we don't have a position

2   on their subpoena.  We're not trying to stop them from

3   getting information.

4          THE COURT:  If you are going to be asking the same

5   people for information, why don't you discuss what you want

6   from them and go to them.

7          MR. FRANCIS:  It is a great idea.  They made a

8   series of ex-parte motions.

9          THE COURT:  Because they have to.

10          MR. FRANCIS:  They don't have to.  They can come to

11   us and ask do you have any objection.  How about we serve a

12   subpoena.

13          MR. SMITH:  We'll get that dialogue going.  The

14   sensitive part about the ex-parte we revealed defense

15   theories.  I'm happy to work out an agreement.

16          THE COURT:  That's true.  That's why you do it ex

17   parte.

18          MR. SMITH:  After the motion to dismiss, there

19   wasn't a whole lot left that wasn't said but there's some.

20          THE COURT:  I'm not telling you you have to do it

21   that way.

22          MR. SMITH:  If we can work it out, we will.

23          THE COURT:  It seems to me we'll have less motion

24   hearing.  I will have every large firm in New York up here

25   this is burdensome, this is terrible.  I can't produce this

1    until 2028.  I would rather not have to rule on those.  If

2    you want to do it ex-parte, I understand December is probably

3    a bit tight.  So you can move that up, but I think it would

4    be nice if they are asking the same people, you both might

5    get better cooperation if you are sort of doing it together

6    rather than saying I'm here then you are here.

7              MR. SMITH:  As soon as we get any production out of

8    any of these entities, we plan on turning it over under

9    defense disclosure obligations.

10             THE COURT:  Without revealing anything you don't

11   want to reveal, is the discovery you are seeking going to go

12   to anything other than materiality?

13             MR. SMITH:  Some industry practice and compliance

14   issues.  We noted in the motion to dismiss and our discovery

15   motion, this analysis by one of the PPIF alleged victims the

16   Invesco which is how they went about thinking about without

17   reference to markup.  We would like to see those analyses.

18   That's a really important piece.  Those analyses of all of

19   the PPIF managers and the private victims, that's important.

20   We'll try and keep it narrow.  We'll discuss it with the

21   government.  Hopefully we can have an agreement.

22             MR. FRANCIS: We're always happy to have a discussion

23   with the defense.  We don't want to commit to issuing their

24   subpoenas for them.

25             THE COURT:  I understand that.  My view is more akin

1   to the two of you sort of form a general picture of what's

2   needed from these entities and you go to them and say look,

3   we can issue subpoenas, let's skip that and the government

4   can use the $40 somewhere else.  Maybe you will agree to

5   produce this stuff.  We'll talk about giving you time to do

6   it et cetera.  It will be done cooperatively.  If they don't

7   want to do that or you can't agree what you want to ask for,

8   you will issue your subpoenas and we can say sooner rather

9   than later would be nice.  Otherwise I know somebody down the

10  street that might want to visit you in New York.  The defense

11  will say, Judge, we need this information.  I will do what

12  I'm going to do so whatever.  You can do it either way.  If

13  you don't want to talk to each other, that's fine with me.

14  But if the defense needs to file a motion for pretrial

15  subpoenas, you probably should do that given my schedule by

16  mid October.  All right.  Is there any development on the

17  arbitration proceeding I think was the stage you were at the

18  last time?

19          MR. SMITH:  It went to a FINRA panel last week.  It

20  was a one-day proceeding, fully submitted.  My understanding

21  is they will be able to issue an order promptly so that's

22  where we are.

23          THE COURT:  Anything else that I could take up

24  today?

25          MR. FRANCIS:  Nothing from the government.

1        MR. SMITH:  Nothing from Mr. Litvak.

2        THE COURT:  We'll stand in recess.

3        (Whereupon, the above hearing adjourned at 11:20

4  a.m.)

5

6

7  COURT REPORTER'S TRANSCRIPT CERTIFICATE

8  I hereby certify that the within and foregoing is a true and

9  correct transcript taken from the proceedings in the

10  above-entitled matter.

11

12  /s/  Terri Fidanza

13  Terri Fidanza, RPR

14  Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25