UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:13CR19(JCH) |
| | : | |
| v. | : | |
| | : | |
| JESSE C. LITVAK | : | October 15, 2013 |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Defendant Jesse C. Litvak has filed a motion [Doc. #65, 9/23/13] and corresponding

supporting memorandum (hereinafter "Litvak Mem.") [Doc. #65-1, 9/23/13] to compel the

Government to review and disclose any materials relevant to this case from the files of the

Department of the Treasury ("Treasury") and the Office of the Special Inspector General for the

Troubled Asset Relief Program ("SIGTARP"), including all inculpatory documents.

The Government's relevant discovery obligations are established by *Brady v. Maryland*,

373 U.S. 83 (1963), Federal Rule of Criminal Procedure 16, Local Rule of Criminal Procedure

16, and the Court's Standing Order on Discovery (the "Standing Order"), which require

disclosure of information or evidence only if it is both (i) within the prosecution team's

possession, custody, or control and (ii) exculpatory, impeaching, tends to counter the

government's case, or tends to bolster a defense.  The materials demanded by Litvak do not meet

these requirements.

Litvak's motion is logically flawed.  The implicit focus of this motion—as with his

motion to dismiss—is the counts of the Indictment that charge false statements in a matter within

the jurisdiction of the United States Department of the Treasury in violation of 18 U.S.C. § 1001.

Consequently, Litvak seeks to compel the Government to review every document in Treasury's

or SIGTARP's files regarding the Public-Private Investment Program ("PPIP") for information

that bears on Treasury's role in that program.  According to Litvak, at a minimum the Government would have to disclose every document generated or collected by these agencies regarding Treasury's creation of PPIP, evaluation and selection of Public-Private Investment Fund ("PPIF") Managers, negotiation and execution of legal agreements regarding the PPIFs, supervision of PPIP, receipt of regular reports from PPIFs and monitoring of PPIFs' trading, as well as any SIGTARP audits or evaluations of Treasury's conduct with respect to PPIP.  As a practical matter, the Government would be hard-pressed to satisfy such expansive discovery obligations in its criminal prosecutions.

Litvak's motion lacks foundation in the case law and would effectively paralyze the Government's pre-trial preparation in any case involving programs within a federal agency's jurisdiction.  His motion should be denied.

I.      **Background**

A.      **Treasury, SIGTARP and the Prosecution Team**

Congress gave Treasury, and specifically its Office of Financial Stability ("OFS"), responsibility for setting up PPIP, disbursing TARP funds to PPIFs, selecting PPIF Managers and supervising the PPIFs purchase and sale of troubled assets.  12 U.S.C. § 5211(a)(3)(A) ("The Secretary shall implement any program [concerning the purchase of troubled assets under TARP] through an Office of Financial Stability.")[1]  The Government investigation into Litvak began when OFS, in compliance with the applicable Treasury regulation, referred a PPIF Manager's report of possible fraud to SIGTARP.  *See* 31 C.F.R. § 31.213(c) ("Upon receipt of information indicating that any individual or entity has violated any provision of title 18 of the U.S. Code or

---

[1] Litvak has repeatedly drawn the Court's attention to publicly-available documents, such as PPIF limited partnership agreements, from OFS's website (http://www.treasury.gov/initiatives/financial-stability).  *See* Litvak Mem. at 9, 12; Litvak Mem. in Support of Motion to Dismiss at 5, 8, 9, 11.

other provision of criminal law, Treasury shall refer such information to the Department of Justice and [SIGTARP].").

SIGTARP is an independent inspector general's office within Treasury with authority "to conduct, supervise, and coordinate audits and investigations" of Treasury's conduct with respect to TARP, including its purchase of certain residential mortgage-backed securities through "vehicles that are authorized, subject to supervision by the [Treasury] Secretary, to purchase, hold, and sell troubled assets" (*i.e.*, PPIFs).  12 U.S.C. § 5231; 12 U.S.C. § 5211(c)(4). SIGTARP's structure is similar to that of the Internal Revenue Service, with its law enforcement functions (carried out by its Investigations Division) separate from its regulatory and administrative functions (carried out by other divisions, such as Audit and Evaluations, Legal and External Affairs, and Reporting).  Office of the Special Inspector General for the Troubled Asset Relief Program Quarterly Report to Congress dated July 24, 2013, Appendix L (SIGTARP Organizational Chart) at 400, *available at* http://www.sigtarp.gov/Quarterly%20Reports/July_24 _2013_Report_to_Congress.pdf (last visited October 15, 2013).  OFS's referral led to an investigation by agents in SIGTARP's Investigations Division.

Thus, there are clear lines of demarcation between the various agencies and divisions that relate to PPIP.  Treasury, through its OFS, implements PPIP and supervises the PPIFs. SIGTARP's Audit and Evaluations Division has oversight over Treasury's conduct regarding TARP, including PPIP, the results of which are communicated to Congress by SIGTARP's Reporting Division.  SIGTARP's Investigations Division investigates alleged federal crimes related to TARP, including Litvak's alleged conduct.  The investigating agents from SIGTARP's Investigations Division worked on the Government's investigation in this case, but personnel from SIGTARP's other divisions (including Audit and Evaluations), Treasury's OFS or any

other Treasury component did not.  Access to SIGTARP's audit files are restricted and the

investigating special agents cannot access them in the ordinary course of their investigations.

Even under the Department of Justice's policy of giving "the prosecution team" a broad

interpretation, the *Litvak* prosecution team consists of the prosecutors, the investigating agents

and the support staff that they supervised.  Mem. from David Ogden, Deputy Att'y Gen., U.S.

Dep't of Justice, *Guidance for Prosecutors Regarding Criminal Discovery Principles of Federal

Prosecution of Business Organizations* (Jan.4, 2010) (Ex. 12 to Litvak Mem.) at 1 ("In most

cases, 'the prosecution team' will include the agents and law enforcement officers within the

relevant district working on the case.").

> **B.**     **The Government's Discovery**

Consistent with Justice Department policy, the Government has not only met its

discovery obligations in this case, it has surpassed them.  Mindful of those obligations even

before Litvak was indicted, counsel for the Government began reviewing the files of the

prosecution team for *Brady* material in January 2013, including the files of the investigating

SIGTARP agents.  The Government has also turned over to the defense documents collected

during the course of its investigation—including the investigating agents' reports of interviews,

evidence that the Government intends to use in its case-in-chief or that may be material to the

preparation of the defense and documents gathered in connection with the Government's wider

investigation into alleged securities fraud in the mortgage department at Jefferies LLC.  In fact,

the Government has provided the defense with a replica of its investigation database.

The Government also pursued the assertion in a footnote to Litvak's memorandum in

support of his motion to dismiss (filed six months after his indictment) that there are "materials

in SIGTARP's possession" which arguably bear on Treasury's jurisdiction over his alleged false

statements in violation of § 1001.  The Government went out of its way to respond to this

assertion by asking the defense for clarification:  "[T]he Government would like to try to accommodate your request, to the extent reasonably possible.  To that end, please formulate a specific request to which the Government may respond."  Ex. 4 to Litvak Mem.  Thus, although the Government is not responsible for information that is not in the possession, custody, or control of the prosecution team, it was and is willing to cooperate with Litvak's counsel to obtain what it thinks it may reasonably be able to produce for the defendant; indeed, the Government continues to seek certain of the documents requested by the defense from SIGTARP's Audit and Evaluations Division.

Litvak responded by alleging in a letter and an unrelated court filing that the Government had admitted to violating the Standing Order by failing to review the files of the prosecution team, specifically the investigating agents' case files, for *Brady* and Rule 16 material.  Ex. 5 to Litvak Mem. at 2; Litvak Reply Mem. in Support of Motion Seeking Discovery and Hearing [Doc. #55, 8/16/13] at 4-5.  Litvak further asserted that the entire Department of Treasury is a part of the prosecution team and all its files must be reviewed by the Government.  Ex. 5 to Litvak Mem. at 1, 2.  The Government promptly corrected Litvak's misunderstanding about its review of the investigating agents' case files (Ex. 6 to Litvak Mem.), and Litvak appears to have tacitly abandoned this claim (Litvak Mem. at 4, 8, 10, 17).  However, rather than acknowledging the misunderstanding and dropping the matter, Litvak recalibrated his argument and demanded that the Government review every SIGTARP file other than the investigating agents' case files. Ex. 7 to Litvak Mem. at 1.  This motion followed.

## II.     Argument

Reverting to his original argument, Litvak now seeks to force the Government to review all Treasury and SIGTARP files related to PPIP.  Litvak Mem. at 5, 8, 9, 11, 13-16.  According to his motion, that review must result in the disclosure of not just information that is exculpatory

or impeaching, but also anything inculpatory or otherwise relevant to the case.  *Id.* at 9-14.

Litvak erroneously claims that the Standing Order imposes these extraordinary discovery

obligations on the Government.

### A.      The Government Has Complied With *Brady*

The Standing Order calls for production of "[a]ll information known to the government

which may be favorable to the defendant on the issues of guilt or punishment within the scope of

*Brady v. Maryland*, 373 U.S. 83 (1963)."  Standing Order ¶ (A)(11).  Litvak claims that *Brady*

requires the Government to search for favorable information not just in the files of the

prosecution team, including the investigating agents' case files, but also in all of Treasury's and

SIGTARP's files regarding PPIP.  Litvak Mem. at 5, 8, 11, 15, 16.  Litvak is wrong.

It is well-established that a defendant can only demonstrate a *Brady* violation by showing

that "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence

at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in

prejudice."  *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001); *Strickler v. Greene*, 527

U.S. 263, 281-82 (1999) ("The evidence at issue must be favorable to the accused, either because

it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the

State, either willfully or inadvertently; and prejudice must have ensued.").  The Government

cannot be said to "suppress" information that is not in its possession, custody, or control, and so

its *Brady* obligation "extends only to material evidence . . . that is known to the prosecutor."

*United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *United States v. Jacobs*, 650 F.

Supp. 2d 160, 164 (D. Conn. 2009) (Kravitz, J.) (same); *United States v. Ferguson*, 478 F. Supp.

2d 220, 238 (D. Conn. 2007) (Droney, J.) (same).

A prosecutor is presumed to know all information gathered by his office in connection

with an investigation of the case.  *Strickler*, 527 U.S. at 280–81; *Avellino*, 136 F.3d at 255.  In

addition, a prosecutor has constructive knowledge of "evidence in the hands of investigators, who are part of the 'prosecution team.'"  *United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002); *Strickler*, 527 U.S. at 280–81(stating *Brady* "encompasses evidence 'known only to police investigators and not to the prosecutor'").  But as the Second Circuit has cautioned, "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [the court] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'"  *Avellino*, 136 F.3d at 255 (citation omitted); *Ferguson*, 478 F. Supp. 2d at 240 (citing *Avellino* to find *Brady* did not require disclosure of information from New York Attorney General's office, even where Government "coordinate[d] pieces of its investigation with the NYAG").

Litvak asks the Court to disregard this controlling law in favor of an interpretation of *Brady* that expands the Government's *Brady* obligation from "the prosecution team" to "any federal office that the defense believes has relevant documents."  Litvak cites no controlling cases—and the Government has not located any—for this novel reading of *Brady*.  Instead, Litvak relies on language in a Ninth Circuit decision, *United States v. Blanco*, stating that "*Brady* and *Giglio* impose obligations not only on the prosecutor, but on the government as a whole."  Litvak Mem. at 7-8; *Blanco*, 392 F.3d 382, 394 (9th Cir. 2004).  The most reasonable reading of that sentence in the context of the case law is that *Brady* applies not to individual prosecutors but to the entire prosecution team, which would be consistent with the Second Circuit's decisions on the subject.  But Litvak's argument that *Blanco* expands the scope of *Brady* in this case is wrong for several reasons.  *First*, the sweeping *Blanco* language quoted by Litvak is *dicta* even in the Ninth Circuit, since that case concerned information known to DEA agents who were members

- 7 -

of the prosecution team.  *Blanco*, 392 F.3d at 385-87, 390-92.  *Second*, counsel's research has

not located any cases relying on *Blanco* or any other authority for the proposition that *Brady*

requires the Government to search the files of agencies unrelated to the prosecution and which

are not within the possession, custody, or control of the prosecution team.  *Third*, *Blanco* has

never even been cited by any court sitting in the Second Circuit.  The Court should follow the

Second Circuit's settled interpretation of *Brady*, which requires the Government to disclose only

that favorable information that is in the possession, custody, or control of the prosecution team.

Applying that rule, to prevail, Litvak must demonstrate that the files of Treasury and

SIGTARP (other than the investigating agents' case files) are in the possession, custody, or

control of the "prosecution team in the instant case."  *United States v. Locascio,* 6 F.3d 924, 949

(2d Cir. 1993) (refusing to impute to prosecutors knowledge of reports prepared by FBI agents

who were "uninvolved in the investigation or trial"); *see also United States v. Quinn,* 445 F.2d

940, 944 (2d Cir. 1971) (refusing to impute knowledge of Florida United States Attorney's

Office to AUSA in New York, rejecting as "completely untenable [the] position that 'knowledge

of any part of the government is equivalent to knowledge on the part of this prosecutor.'").

Litvak does not even attempt to make such a showing on the present facts, nor could he.  After

OFS referred a PPIF Manager's report of fraud to SIGTARP (as required by regulation),

Treasury had no involvement in the investigation and prosecution of Litvak, and its files are not,

and cannot be said to be, within the possession, custody, or control of the prosecution team.

With respect to SIGTARP, the files of its non-law enforcement divisions—such as the Audit and

Evaluations Division and the Reporting Division—cannot be said to be within the possession,

custody, or control of the investigating agents from its Investigations Division, just as IRS's civil

audit files are not within the possession, custody, or control of an agent in its Criminal

Investigations Section. *See United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006)

(rejecting argument that *Brady* required disclosure of IRS civil audit files regarding defendants

that were not in possession of prosecution team; "[T]he prosecution's disclosure

obligation . . .does not extend to the collective knowledge of the entire United States government

or even to the entire government agency concerned."). Likewise, every file in SIGTARP's

Investigations Division cannot be said to be within the possession, custody, or control of the

investigating agents on the prosecution team, just as all of the FBI's criminal files across the

country are not within the possession, custody, or control of a team prosecuting a Connecticut

bank robbery. *See Quinn*, 445 F.2d at 944 ("The Department of Justice has thousands of

employees in the fifty States of the Union. Add to these many more thousands of employees of

'any part of the government.' Appellants' argument [for broadly expansive *Brady* disclosure

obligations] can be disposed of on a 'reductio[] ad absurdum' basis.") (cited in *Avellino*, 136

F.3d at 256).

Expanding the scope of the "prosecution team" to include all of Treasury and SIGTARP,

as Litvak asks the Court to do, would be inconsistent with the controlling case law and

logistically impractical. The Court should deny Litvak's motion.

### B.     The Government Has Complied With Rule 16

The Standing Order, which closely tracks Rule 16, requires, *inter alia*, production of

documents that are "within the possession, custody or control of the government, and which are

material to the preparation of the defense." Standing Order ¶ (A)(5); Fed. R. Crim. P.

16(a)(1)(E)(i) (requiring disclosure of any item "within the government's possession, custody, or

control [if] the item is material to preparing the defense"). Litvak argues that Rule 16 requires

the Government to (i) search Treasury's or SIGTARP's files regarding PPIP and (ii) disclose

anything that may be useful to his defense, including additional inculpatory evidence. Litvak is

wrong on both counts.  *First*, "the government" under Rule 16(a)(1)(E), as for *Brady* purposes,

means "the prosecution team."  *Second*, under Rule 16(a)(1)(E)(i), items that are "material to the

preparation of the defense" do not include inculpatory evidence.

> 1.    **Rule 16 requires production only from the files of the prosecution team**

Although the Second Circuit has not defined the term,[2] courts in this circuit have

interpreted "the government" in Rule 16 to mean the "the prosecution team."  *See, e.g.,*

*Chalmers*, 410 F. Supp. 2d at 289 ("[T]he Court is not persuaded that the 'government' for

purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been

adopted in the *Brady* line of cases."); *United States v. Finnerty*, 411 F. Supp. 2d 428, 432

(S.D.N.Y. 2006) ("Courts have typically required the prosecution to disclose under Rule 16

documents material to the defense that (1) it has actually reviewed, or (2) are in the possession,

custody, or control of a government agency so closely aligned with the prosecution so as to be

considered part of the prosecution team."); *United States v. Giffen*, 379 F. Supp. 2d 337, 343

(S.D.N.Y. 2004) (holding, under Rule 16, "[t]he prosecutor need not, however, produce

documents from agencies that did not participate in the investigation of the defendant or

documents of which it is unaware."); *Holihan*, 236 F. Supp. 2d at 260-61 (finding courts "have

construed the term 'government' in [Rule 16] narrowly to mean the prosecutors in the particular

case or the governmental agencies jointly involved in the prosecution of the defendant, and not

the 'government' in general."); *Volpe*, 42 F. Supp. 2d at 221 (holding United States Attorney's

office not required by Rule 16 to disclose information from separate investigation in same office

---

[2] *United States v. Chalmers*, 410 F. Supp. 2d 278, 288 (S.D.N.Y. 2006) ("the Second Circuit has not defined 'government' for Rule 16 purposes"); *United States v. Holihan,* 236 F. Supp. 2d 255, 260 (W.D.N.Y. 2002) ("[T]he Second Circuit has not analyzed the phrase 'in possession, custody, or control of the government' in connection with [Rule 16]."); *United States v. Volpe,* 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) (noting Second Circuit has not addressed issue).

because two prosecution teams not involved in joint investigation, and so prosecution did not

have access to requested material); *United States v. Upton*, 856 F. Supp. 727, 749–50 (E.D.N.Y.

1994) (holding government not required to produce material from agency outside United States

Attorney's office by Rule 16 where no "joint investigation"); *United States v. Guerrerio*, 670 F.

Supp. 1215, 1219–20 (S.D.N.Y. 1987) (denying defendants' Rule 16 request for grand jury

minutes from district attorney's investigation that played no role in federal prosecution, absent

joint investigation between United States Attorney and District Attorney).

     Both in the context of the Standing Order and more generally, the most logical

interpretation of "the government" in Rule 16 is the same as the one used with respect to *Brady*.

The term "the government" appears repeatedly in the Standing Order.[3]  In many of these

instances, "the government" is used as a synonym for "the prosecution" or "the prosecution

team."[4]  A term used repeatedly in a document is presumed to have a consistent definition.  *CSX*

*Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 291 (2d Cir. 2011) (citing "the

'normal rule of statutory construction' that 'identical words used in different parts of the same

act are intended to have the same meaning'") (citation omitted).  Thus, granting Litvak's motion

would require the Court to give "the government" a different meaning for different paragraphs of

the Standing Order, a jarring deviation from the most natural reading.

     More generally, *Brady* and Rule 16 are often examined together by courts considering the

---

    [3] *See, e.g.,* Standing Order ¶¶ (A)(2); (A)(5); (A)(6); (A)(9); (A)(10); (A)(11); (A)(13); (B)(1); (B)(2).

    [4] *See, e.g., id.* ¶¶ (A)(2) (concerning oral statements of defendant "which the government intends to offer in evidence at trial"); (A)(6) (concerning disclosure by "the government" of summaries of expert testimony it intends to offer at trial); (A)(9) (concerning disclosure of witnesses "the government" intends to call in its case); (A)(10) (concerning *Giglio* information for "prospective government witnesses"); (A)(13) (concerning F.R.E. 404(b) evidence to be used "by the government at trial"); (B)(2) (concerning defendant's disclosure obligations to "the government").

scope of the prosecution's discovery obligations.  It would be irrational for the term "the government" to have one meaning for *Brady* and a different, broader meaning for Rule 16, because such an interpretation would inflict unnecessarily confusion and give rise to the inappropriately "monolithic view of government" that the Second Circuit predicted would "condemn the prosecution of criminal cases to a state of paralysis."  *Avellino,* 136 F.3d at 255. *See also Chalmers*, 410 F. Supp. 2d at 289 (holding *Avellino*'s concern "applies with equal force in the Rule 16 context"); *Finnerty*, 411 F. Supp. 2d at 433 (same); *Volpe*, 42 F. Supp. 2d at 221 (giving "government" its broadest reading would "wreak havoc" and give defense access to information not readily available to prosecution).  There is no rational reason for courts to interpret *Brady* narrowly to avoid logistical disaster, but give Rule 16 a broad interpretation that creates the exact same problem.

Litvak does not even attempt to offer an argument for why "the government" should be given a more expansive definition for Rule 16 than for *Brady*.  As above, the Court should find that Treasury and SIGTARP (other than the Investigations Division agents and staff that worked on the investigation of Litvak) are not members of the prosecution team and, therefore, Rule 16(a)(1)(E) and the Standing Order do not require production of documents exclusively within their possession, custody, or control.

### 2.     Rule 16 does not require production of inculpatory documents

Litvak argues that "[e]vidence need not be exculpatory, favorable, or admissible to be 'material' for purposes of Rule 16," and therefore all inculpatory documents demonstrating Treasury's jurisdiction over PPIP must be disclosed by the Government.  Litvak Mem. at 11-12. Litvak is once again wrong.

The Supreme Court has expressly rejected a broad interpretation of Rule 16 materiality that would encompass anything that contributes to the success of the defendant's case.  *United*

*States v. Armstrong*, 517 U.S. 456, 462 (1996) (interpreting predecessor to Fed. R. Crim. P.

16(a)(1)(E)).  In *Armstrong*, the Court held that the word "defense" under Rule 16 means "the

defendant's response to the Government's case in chief," and only includes items "which refute

the Government's arguments that the defendant committed the crime charged."  *Id.*

Therefore, evidence is not material unless "it could be used to counter the government's

case or to bolster a defense; information not meeting either of those criteria is not to be deemed

material within the meaning of the Rule merely because the government may be able to use it to

rebut a defense position."  *United States v. Stevens*, 985 F.2d 1175, 1179-80 (2d Cir. 1993)

(citing *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) ("None of [Rule 16's]

requirements covers the government's proposed rebuttal evidence in this case.")); *United States

v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (applying Rule 16(a)(1) materiality standard—whether

information was "useful 'to counter the government's case or to bolster a defense'"—in

Classified Information Procedures Act analysis); *United States v. Ahmad*, 3:04CR301(JCH),

2013 WL 1899792, at *1 (D. Conn. May 1, 2013) (Hall, J.) (holding in same context that court

must "decide whether the information is helpful or material to the defense, *i.e.*, useful 'to counter

the government's case or to bolster a defense'").  Moreover, information is not material merely

because it would be strategically or tactically beneficial to the defendant.  *Stevens*, 985 F.2d at

1180 ("Nor is [evidence] to be deemed material merely because it would have dissuaded the

defendant from proffering easily impeached testimony.") (citing *United States v. Gleason*, 616

F.2d 2, 25 (2d Cir. 1979) ("The Government is not obligated by Rule 16(a) to anticipate every

possible defense, assume what the defendant's trial testimony (if he decides to testify) will be,

and then furnish him with otherwise irrelevant material that might conflict with his testimony.")).

Nor does "material" under Rule 16 simply mean "relevant."  As the Second Circuit has

held, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case.  There must be some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor."  *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (quoted in *Stevens*, 985 F.2d at 1180).

Although these controlling cases make clear that inculpatory evidence is not "material to the preparation of the defense" under Rule 16, Litvak ignores them.  Instead, he relies on a line of cases from the D.C. Circuit to argue that Rule 16 requires disclosure of inculpatory evidence.[5] In one of those cases, *United States v. Marshall*, the D.C. Circuit wrote that "[i]nculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence."  132 F.3d 63, 67 (D.C. Cir. 1998).  But *Marshall* has been cited by just one court in this circuit, in an unpublished Southern District of New York decision, where it was used as authority for the unexceptional proposition that "[a]bsent bad faith on the part of the Government, the preclusion of evidence [(a gun recovered from the Bronx River less than a month before it was produced)] is rarely an appropriate sanction for discovery delay."  *United States v. Guerrero*, 09 CR. 339, 2010 WL 1790400, at *1 (S.D.N.Y. Apr. 30, 2010).  The holdings of the D.C. Circuit cases that Litvak cites are at odds with controlling Second Circuit law, and the Court should not follow them.

## CONCLUSION

The Government affirmatively offered to try to obtain certain documents Litvak referred to obliquely in his motion to dismiss if he would sharpen and clarify his request to make the task more productive and less burdensome, notwithstanding the fact that the documents were not in

---

[5] *United States v. Lloyd*, 992 F.2d 348 (D.C. Circuit 1993), *United States v. Marshall*, 132 F.3d 63 (D.C. Cir. 1998) and *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005).

the possession of the prosecution team.  Rather than take the Government up on its offer, Litvak

chose to make the unsupported accusation that the Government had failed to review the

prosecution team's files.

For the foregoing reasons, Litvak's motion should be denied.  Litvak's erroneous reading

of the law would have this Court inflict the "state of paralysis" on this prosecution that the

Second Circuit warned would be created by expanding the Government's discovery obligations

beyond the prosecution team.  *Avellino*, 136 F.3d at 255.  Here, the Government has met and

exceeded its discovery obligations, and it should not be compelled to divert the massive and

unprecedented time and resources necessary to review all of Treasury and SIGTARP relating to

the $20 billion PPIP program for any document that "bears some abstract logical relationship to

the issues in the case."  *Maniktala*, 934 F.2d at 28.

Respectfully submitted,

DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY


          /s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov

ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT23923
eric.glover@usdoj.gov

157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2013, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF

System.


_____/s/_____
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY