IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:13CR19 (JCH) |
| JESSE C. LITVAK | October 11, 2013 |

# DEFENDANT JESSE C. LITVAK'S SECOND AMENDED EX PARTE MOTION FOR ISSUANCE OF PRE-TRIAL SUBPOENAS DUCES TECUM

## INTRODUCTION

The defendant, Jesse C. Litvak, respectfully renews his application pursuant to Federal Rule of Criminal Procedure 17(c) for an Order directing that subpoenas *duces tecum* be issued for service on entities that the government has identified as alleged victims to produce certain records before trial. This application addresses the issues raised by the Court's July 24, 2013 Order as well as those discussed at the September 27, 2013 hearing. Following the September 27, 2013 hearing, the defense conferred with the government concerning the timing and scope of the proposed subpoenas. While the government did not have an objection to timing, we were unable to agree on the scope of the materials requested. In the absence of an agreement with the government, Mr. Litvak respectfully renews his *ex parte* application for the issuance of pre-trial subpoenas *duces tecum*.

## ARGUMENT

### A. Mr. Litvak's Requests are Directed at Pretrial Inspection of Evidentiary Materials

Attached as Exhibits A–C are three proposed subpoena attachments: one for the six PPIFs identified in the Indictment, and a second for the associated managers of each PPIF. The materials requested in the two PPIP-related proposed attachments are identical. The third proposed attachment is for the alleged victim entities that had no relation to the PPIP; it does not

contain any PPIP-related requests and contains only requests concerning trading in the relevant bonds. Exhibit D sets forth a list of the entities to be subpoenaed.

Mindful of the Court's July 24, 2013 order, the scope of the materials requested has been cut back significantly. For example, the requests are limited to materials relating to RMBS bonds specifically referenced in the Indictment as well as bonds that the government has identified in a notice to the defense pursuant to Fed. R. Evidence 404(b), from March 1, 2009 to December 31, 2012. The scope of the requests is further limited to materials directly relevant to (i) the nature of the PPIP and the scope of Treasury's jurisdiction over Mr. Litvak's alleged false statements; (ii) the materiality of Mr. Litvak's alleged misrepresentations; and (iii) the truth or falsity of Mr. Litvak's alleged misrepresentations.

As such, the records requested in each rider are "evidentiary and relevant," *see United States v. Ashley*, 162 F.R.D. 265, 266 (E.D.N.Y 1995) (quoting *United States v. Nixon*, 418 U.S. 683, 699 (1974)), and bear directly on the government's principal claims and the expected testimony of its key witnesses—namely that Mr. Litvak's alleged "scheme" to enrich Jefferies & Co., Inc. ("Jefferies") and himself was carried out through the use of materially false misrepresentations to take secret and unearned compensation from various entities, including so-called "TARP-funded victims." (Ind. ¶ 30). The government alleges that Mr. Litvak caused Jefferies to earn "extra and unearned" profits by misrepresenting the prices at which Jefferies was able to buy bonds from a seller to the buyers of bonds who agreed to pay Jefferies "specific amounts of compensation" in addition to Jefferies's acquisition cost. (Ind. ¶¶ 33(a), 36). The government also aims to prove that the prices of the bonds at issue were "inflated." *See* Opp. Mem. [Doc. #61] at 1, 4, 10, 26-31.

With respect to Count Twelve, alleging TARP Fraud, in violation of Title 18, United States Code, Section 1031, and Counts Thirteen through Sixteen, alleging false statements within the jurisdiction of a government agency, in violation of Title 18, United States Code, Section 1001, the defense intends to demonstrate that, given the purpose and structure of the PPIP, any alleged false statement by Mr. Litvak was not within the scope of Treasury's jurisdiction. The defense will assert that Mr. Litvak's alleged false statements to the PPIF managers were not "offense[s] against the United States" because as a limited partner, it was not contemplated that Treasury would receive, rely, or in any way act on statements made by a trader to the private money managers who managed the PPIFs under a non-governmental contract. (*See* Reply Mem. Motion to Dismiss [Doc #66] at 4). Further, the defense will seek to demonstrate that Mr. Litvak's act of making alleged misrepresentations when trading bonds with PPIFs managed by private money managers falls outside of Section 1031's list of proscribed conduct. Thus, the documents called for in requests 1 and 2 of the proposed attachments to the PPIP-related entities are relevant and evidentiary as they pertain to the structure of the relationship between Treasury, the PPIFs, and in turn, Jefferies. Accordingly, these documents bear on the question of whether the false statements charged in Counts Thirteen through Sixteen were made within the jurisdiction of an agency of the United States, and whether Mr. Litvak's conduct was "in" a TARP-funded federal assistance program as alleged in Count Twelve.

With regard to all charges, the government's theory of the case assumes the materiality of Mr. Litvak's alleged misrepresentations concerning the actual mark-ups embedded in the sale prices of the bonds. Part of the defense theory is that the alleged misrepresentations relate to amounts that are too small to be material in the context of the market for these bonds.[1] The

---

[1] The Declaration of Patrick J. Smith submitted in support of Mr. Litvak's First Amended Ex Parte Motion for Issuance of Pre-Trial Subpoenas, (*See* Decl. of Patrick J. Smith, dated July 3, 2013, at 7-11) as well as the opening

3

defense anticipates that the investment analyses conducted by the various investment managers will show that the extent of the mark-up embedded in the price of a bond was not a factor in the decision to purchase. Further, the requested records will be instrumental in demonstrating that each transaction in the Indictment took place at a fair market value price and therefore, no alleged victim paid an inflated price.

As the Court observed in its July 24, 2013 Order, the materials requested, in addition to being evidentiary, must also be (i) relevant; (ii) admissible; and (iii) specific. *See* July 24 Order at 3-4 (citing *Nixon*). The narrowed requests in this renewed application meet the standard established by *Nixon*. Set forth in the table below are the requests and the bases upon which we believe the *Nixon* standard is satisfied as to each request because each calls for relevant, admissible and specific information.

| PPIP | NON-PPIP | Documents Requested | Basis for Request |
|---|---|---|---|
| No. 1 | | Any and all documents concerning [PPIF/MANAGER'S] application submitted to Treasury in connection with Treasury's process to select investment managers for the Legacy Securities Public-Private Investment Funds. | <ul><li>Relevant to agency jurisdiction under Section 1001 and nature of conduct within scope of Section 1031</li><li>Admissible as business records of subpoenaed entity</li><li>Specific to documents relating to PPIF manager application process</li></ul> |
| No. 2 | | Any and all documents concerning the formation, creation, and management of the [PPIF]. | <ul><li>Relevant to agency jurisdiction under Section 1001 and nature of conduct within scope of Section 1031</li><li>Admissible as business records of subpoenaed entity</li><li>Specific to documents</li></ul> |

---

and reply memoranda in support of Mr. Litvak's motion to dismiss (*See* Opening Mem. Motion to Dismiss [Doc # 53] at 27-34; Reply Mem. Motion to Dismiss [Doc. #66] at 9-10) address the materiality issues in detail and are respectfully incorporated by reference herein.

4

| PPIP | NON-PPIP | Documents Requested | Basis for Request |
|---|---|---|---|
| | | | relating to PPIF management |
| No. 3 | No. 1 | Any and all documents concerning the [PPIF/MANAGER/ENTITY'S] purchase or sale of a Relevant RMBS, including but not limited to documents concerning the following (a-f, below): | The materials requested in the subparts of this request are, as a general matter:<br>• Relevant to materiality<br>• Admissible as business records of a subpoenaed entity<br>• Specific because they are limited in scope to the RMBS identified by the government<br><br>**Additional and more specific bases for these materials requested in each subpart of this request are set forth below in this column:** |
| | | a. Investment analysis or thesis for the purchase or sale of a Relevant RMBS | • Relevant because the requested analysis will show whether the alleged victim funds considered mark-ups in making an investment decision |
| | | b. Any valuation of a position in a Relevant RMBS on the day of a purchase and thereafter | • ███████████ |
| | | c. Commissions, mark-ups, or fees associated with the purchase or sale of a Relevant RMBS | • Relevant because the requested analysis will show whether the alleged victim funds considered mark-ups in making an investment decision |
| | | d. Communications concerning the purchase or sale of a Relevant RMBS | • Relevant because actual communications will show the truth or falsity of Mr. Litvak's representations |
| | | e. Efforts to research the best price available from a counter-party prior to the purchase or sale of a Relevant RMBS | • Relevant to the allegation that prices charged by Jefferies were inflated on the day of the trade or whether any alleged victim overpaid for a bond |

5

| PPIP | NON-PPIP | Documents Requested | Basis for Request |
|---|---|---|---|
| | | f. The price and amount of proceeds from the sale of any Relevant RMBS that had originally been purchased from Jefferies | • ███ |
| No. 4 | *No. 2* | Any and all brokerage or customer agreements between the [PPIF/ENTITY] and Jefferies concerning the purchase or sale of a Relevant RMBS. | • Relevant to materiality because such agreements will show the commercial terms of ███<br>• Admissible as business records of a subpoenaed entity and as a non-hearsay contract<br>• Specific to the limited set of agreements between Jefferies and each alleged victim |
| No. 5 | | Any and all documents sent to Treasury reflecting the investment performance of the [PPIF]. | • Relevant to materiality<br>• Admissible as business records of a subpoenaed entity<br>• Specific because they are limited in scope to the RMBS identified by the government |
| No. 6 | *No. 3* | Any and all documents concerning any dispute with respect to commissions, mark-ups, or fees charged by Jefferies in connection with the purchase or sale of a Relevant RMBS. | • Relevant to materiality<br>• Admissible as business records of a subpoenaed entity<br>• Specific because they are limited in scope to the RMBS identified by the government |

### B. The Timing of Mr. Litvak's Request is Appropriate

This is a complex case involving dozens of bond transactions, some charged in the Indictment and others listed in the government's discovery disclosure as Rule 404(b) evidence. Extensive analysis is required in order to disprove, for example, the government's theories of "inflated" bond prices and the existence of "extra and unearned" profits allegedly earned by Mr. Litvak and Jefferies. The materials requested will be provided to potential expert witnesses for analysis, which must be conducted well before trial so that the substance of the expert opinion can be disclosed pursuant to Fed. R. Crim. P. 16. As the Court noted in its July 24, 2013 Order, "[Rule 17(c)'s] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *Nixon*, 418 U.S. 683, 698-99 (1974). Rule 17(c)'s "chief innovation" will undoubtedly be served by the early return of this voluminous material by permitting the defense to adequately review the documents before trial, culling them down to their most critical parts, and further ensuring that the trial is not unnecessarily delayed. *Nixon*, 418 U.S. at 699 (failure to obtain and inspect such documents before trial "may tend unreasonably to delay the trial").

In addition, some of the entities may move to quash or modify the subpoenas. These disputes, combined with year-end deadlines, will cause further delay in receiving the requested materials. At this time, we are approximately four months away from trial, the same amount of time that existed in *Nixon* when the U.S. District Court for the District of Columbia ordered the issuance of the subpoenas *duces tecum* under Rule 17(c). *See Nixon*, 418 U.S. at 687-88.

Mr. Litvak and his counsel understand fully that the Court will not grant a continuance of the trial absent extraordinary circumstances. We think this process serves to eliminate potential sources of delay that might arise from receiving, analyzing, and preparing to utilize for trial important evidentiary material that is received by both parties only after trial begins.

For all of these reasons, the defense respectfully requests that the Court approve return dates on the requested materials two weeks after they are issued and served.

### C. The Ex Parte Nature of This Application is Warranted

Courts have found that Rule 17(c) permits pretrial subpoenas *duces tecum* on *ex parte* applications in limited circumstances, such as where notice would compromise trial strategy. *See United States v. Daniels*, 95 F. Supp. 2d 1160, 1162-63 (D. Kan. 2000) (*ex parte* applications permissible where source or integrity of evidence would be "imperiled" or trial strategy disclosed); *United States v. Tomison*, 969 F. Supp. 587, 589-95 (E.D. Cal. 1997) (same); *United States v. Beckford*, 964 F. Supp. 1010, 1025-31 (E.D. Va. 1997) (same); *United States v. Diamont*, (D. Mass. 2005) (Ex. E) (same)[2]; 2 Charles Alan Wright, *Federal Practice and Procedure*, § 274, at 245-46 (3d ed. 2000) (same).

In *United States v. Reyes*, the court permitted the government to apply *ex parte* for subpoenas *duces tecum* made returnable before trial, recognizing the strong policy reasons in favor of an *ex parte* procedure. 162 F.R.D. 468, 470-71 (S.D.N.Y. 1995). Namely, the source or the integrity of the evidence might be impaired if it were to be identified before the issuance of a subpoena. *Reyes*, 162 F.R.D. at 470. In addition, a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standard of specificity, relevance, and admissibility. *Reyes*, 162 F.R.D. at 470. The *Reyes* court was mindful that defendants who seek a subpoena *duces tecum* on an *ex parte* basis do so in order to avoid disclosing their trial strategy to the government. *Reyes*, 162 F.R.D. at 470. Those same concerns are present here. In an effort to explain to the Court why these documents are crucial to Mr. Litvak's defense, the defense has disclosed certain aspects of its strategy that it wishes to keep confidential. ████████████████████████

---

[2] Unreported authority attached hereto as Exhibit E.

8



WHEREFORE, the Court is requested to order the issuance of subpoenas *duces tecum* to the entities listed in Exhibit D, directing production of the materials requested in the proposed subpoena attachments to counsel for Mr. Litvak two weeks after the issuance of the subpoenas by the Clerk of the Clerk.

Respectfully submitted,

**THE DEFENDANT,
JESSE C. LITVAK**

By: *Ross H Garber*/MBC
Ross H. Garber (ct17689)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Telephone: (860) 251-5901
Fax: (860) 251-5219
E-mail: rgarber@goodwin.com

Patrick J. Smith (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 884-8509
E-mail: patrick.smith@dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that this motion was filed *ex parte* and under seal and therefore copies have not been provided to counsel for the government.

_____
Ross H. Garber (ct17689)

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 22, 2013 a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      /s/  Ross H. Garber
      Ross H. Garber (ct17689)