UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:13CR19(JCH) |
| | : | |
| v. | : | |
| | : | |
| JESSE C. LITVAK | : | October 30, 2013 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
SECOND AMENDED MOTION FOR RULE 17(c) SUBPOENAS DUCES TECUM**

The Government respectfully submits this opposition to Defendant Jesse C. Litvak's Second Amended Motion for Issuance of Pre-Trial Subpoenas Duces Tecum [Doc. #79, 10/22/13]. Litvak asks the Court's to authorize service of subpoenas directed to 23 of his alleged victims, none of which meet the requirements of relevancy, admissibility and specificity. Litvak should not be permitted to issue general and overly burdensome subpoenas to victims and potential witnesses. Allowing him to do will simply force those victims to expend resources defending themselves against overbroad subpoenas and create up to 23 disputes that could impact the February 2014 trial schedule. Judicial economy would be best served by halting service of Litvak's defective proposed subpoenas now, rather than litigating the issue after the recipients move to quash.

**ARGUMENT**

Rule 17(c) subpoenas must meet the requirements of relevancy, admissibility and specificity. *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *United States v. Ferguson*, 3:06CR137 (CFD), 2008 WL 113663, at *1 (D. Conn. Jan. 2, 2008). The Court is responsible for ensuring that a subpoena issued under Rule 17(c) serves a proper purpose. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951). A Rule 17(c) subpoena "[is] not intended to provide a means of discovery for criminal cases . . . but to expedite the trial by providing a time

and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698; *Ferguson*, 2008 WL 113663, at *1. Thus, before trial, defendants may not use a Rule 17(c) subpoena to obtain impeachment materials. *Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *Ferguson*, 2008 WL 113663, at *1 ("Generally speaking, prior to trial, impeachment materials may not be obtained through a Rule 17(c) subpoena because such materials fail *Nixon's* admissibility requirement.").

Litvak's draft subpoenas fail to meet the rigorous standard for a Rule 17(c) subpoena in several respects.

### A. Use of the phrase "any and all documents"[1]

Each request in Litvak's subpoenas demands production of "any and all documents" concerning a topic (with one exception in each subpoena).[2] A subpoena for "any and all documents" on a particular topic would require the recipient to search and collect documents from every conceivable responsive location or system, including emails, other electronic files, backup tapes and hardcopy files including archived records. This would be an arduous

---

[1] Req. Nos. 1-3, 5, 6 to Ex. A & B to Def.'s Mot.; Req. Nos. 1, 3 to Ex. C to Def.'s Mot.

[2] *See* Req. No. 4 to Exs. A & B; Req. No. 2 to Ex. C. These three identical requests call for "any and all brokerage or customer agreements between the recipient and Jefferies regarding the purchase or sale of a Relevant RMBS." It is not clear to the Government whether Litvak seeks individually negotiated agreements to purchase or sell each security, or some overarching contract governing the commercial relationship between Jefferies and its customers. If Litvak seeks the former, then the Government has already produced documents reflecting the terms of each relevant transaction in this case (including any communications in which Litvak made misrepresentations to his victims to negotiate an inflated sale price or a depressed sale price in order to secure a secret, unearned extra amount of compensation for Jefferies). If, on the other hand, Litvak seeks the latter, then the Government believes this request calls for irrelevant documents, insofar as the amount of compensation Jefferies received on each trade was individually negotiated by Litvak and his victims, and would not be reflected in a general commercial agreement governing all securities transactions between the Jefferies financial firm and a victim firm.

undertaking for any corporation, but particularly for financial services firms that generate extensive electronic communications on a daily basis through Bloomberg messages (emails through the Bloomberg communication system used by financial services firms), Instant Bloombergs (text messaging between two individuals through the Bloomberg system) and Bloomberg chats (group text messaging between groups of individuals at certain firms through the Bloomberg system). On this basis alone, Litvak subpoenas lack the required specificity required by Rule 17(c). If, as Litvak contends, the specificity requirement is met by simply cabining the subpoena to a particular subject matter or topic, it would clearly swallow the specificity requirement whole. Litvak's demand for any and all documents relating to particular topic is truly nothing short of a classic fishing expedition, and something that he should not be allowed to do, particularly given that he is seeking to fish in his own victims' records.

### B. Definition of "Relevant RMBS"[3]

Litvak's subpoenas define the term "Relevant RMBS" by simply listing the name and CUSIP (or identification number) of certain bonds referenced in the Indictment or the Government's discovery letters.[4] But Litvak omits a crucial piece of information: the date of the relevant transaction involving each of those securities. The defense has this information because it appears in the Indictment, in the documents disclosed by the Government and/or in the Government's discovery letters.

The RMBS bonds that Litvak allegedly bought or sold using false and fraudulent misstatements are traded regularly, many of which transactions do not involve Litvak, Jefferies

---

[3] Instr. 6 to Exs. A, B & C.
[4] Although Litvak describes the relevant portions of the Government's discovery letters as "a notice to the defense pursuant to Fed. R. Evidence 404(b)," the defendant's acts, misrepresentations and omissions in connection with these and other trades or attempted trades are part of the charged scheme, and are not Rule 404(b) evidence. The Government identified these transactions for the defense in the event they believed otherwise.

or the facts of this case. Rather than limiting his subpoenas to documents concerning the transactions that are potentially relevant here, Litvak would demand that 23 financial firms produce every document they have concerning every trade involving a long list of securities. While Litvak's motion describes his requests as being limited to transactions "from March 1, 2009 to December 31, 2012," that temporal limitation appears nowhere in the proposed subpoenas. Moreover, even during that 31-month time span, the securities on Litvak's lists could have traded any number of times in irrelevant transactions.

Since Litvak's subpoenas demand documents concerning transactions that neither Litvak nor Jefferies were involved in and that are not related in any way to the trades that are a part of or relevant to the scheme alleged in the Indictment, they lack the required specificity and call for production of a huge number of inadmissible and irrelevant documents.

### C. Subpoenas to Both PPIFs and PPIF Managers

Litvak proposes to serve identical subpoenas on the six victim Public-Private Investment Funds ("PPIFs"), as well as the Manager of each PPIF. *See* Ex. A and B to Def.'s Mot. A PPIF is not an independent financial firm, but a limited partnership run by a PPIF Manager that is its general partner. As such, PPIF Managers maintain the records of their PPIF. Thus, Litvak is effectively seeking to serve each PPIF Manager with the same subpoena twice. With the exception of his request for documents concerning each PPIF Manager's application to the Department of the Treasury—responsive to Request No. 1 to Ex. A and B—there is no reason to believe that a PPIF Manager would have any documents that are relevant to this case other than those it maintains on behalf of its PPIF. Thus, Litvak's subpoena Request Nos. 2-6 to PPIF Managers either call for production of inadmissible and irrelevant documents, or are unnecessarily duplicative of Request Nos. 2-6 in the identical subpoenas to PPIFs.

D.  **"Any and all documents concerning the formation, creation, and management of the [PPIF]."[5]**

This request to PPIFs and PPIF Managers effectively calls for production of every document ever generated concerning the six victim PPIFs. A dragnet approach is not permissible even in civil discovery, much less under the much more restrictive Rule 17(c). This scattershot request lacks any specificity, and necessarily calls for irrelevant and inadmissible documents. This Court should not permit it.

E.  **"Communications concerning the purchase or sale of [purportedly] Relevant RMBS."[6]**

The Government has produced communications concerning every one of the transactions that is in the Indictment or is part of or relevant to Litvak's scheme to defraud. Thus, even if one were to limit the scope of this subpoena request to those RMBS transactions that are actually relevant—rather than Litvak's expansive definition, discussed above, which would encompass any trade involving any of those securities—the defense would in all likelihood merely get what they already have by virtue of the Government's production. Litvak attempts to justify the request by stating that the resulting document would be "relevant because actual communications will show the truth or falsity of Mr. Litvak's representations." That is the reason why the Government disclosed those communications to Litvak. Demanding that his victims re-produce documents that Litvak already has is not a proper use of Rule 17(c).

F.  **"Efforts to research the best price available from a counter-party prior to the purchase or sale of a [purportedly] Relevant RMBS."[7]**

In this request, Litvak seeks discovery concerning what steps his victims took to prevent themselves from being defrauded. But the resulting documents, or evidence concerning the lack

---

[5] Req. No. 2 to Exs. A & B.
[6] Req. No. 3(d) to Ex. A & B; Req. No. 1(d) to Ex. C.
[7] Req. No. 3(e) to Ex. A & B; Req. No. 1(e) to Ex. C.

thereof, are irrelevant and would be inadmissible.  It is not a defense to fraud to "blame the victim" of negligence or gullibility, just as it is no defense to burglary charges that the victim left his door unlocked.  *United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004) (explaining that purpose of federal fraud statutes is "not to grant permission to take advantage of the stupid or careless"); *United States v. Amico*, 486 F.3d 764, 781 (2d Cir. 2007) (affirming that victim's gullibility is not relevant to whether a defendant committed mail fraud).[8]  As the Second Circuit has said, "[w]e refuse to accept the notion that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim."  *Thomas*, 377 F.3d at 243 (quotation marks and citation omitted).

### G. "The price and amount of proceeds from the sale of any [purportedly] Relevant RMBS that had originally been purchased from Jefferies."[9]

Loss is not an element of any of the crimes charged in the Indictment.  To the extent that Litvak justifies this request as relevant to the calculation of loss for sentencing, he is incorrect.  Under the Sentencing Guidelines, "loss is the greater of actual or intended loss or intended loss."  U.S.S.G. App. Note 3(A).  Even if every one of his victims eventually reaped a net profit on the bonds that they had purchased from Jefferies through Litvak's fraud, their Guidelines loss would

---

[8] *See also United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991) (approving jury instruction that "it is not a defense that the bank might have prevented its losses had it better internal controls or procedures"); *United States v. Callipari*, 368 F.3d 22, 37 (1st Cir. 2004), *vacated on other grounds*, 543 U.S. 1098 (2005) (approving exclusion of what it termed "blame the victim" line of cross-examination and noting that "[t]he court was well within its discretion to exclude evidence suggesting that [the victim], rather than [the defendant] and his co-conspirators, was to blame for the loss"); *United States v. Catalfo*, 64 F.3d 1070, 1078 (7th Cir. 1995) ("Fraud remains fraud even if the victim should have acted more prudently."); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) (rejecting defense based on the victim's failure to have taken steps to uncover the fraud and concluding that "[t]he victim's negligence in not a defense to criminal conduct").

[9] Req. No. 3(f) to Ex. A & B; Req. No. 1(f) to Ex. C.

be the difference between the fraudulently inflated price that they paid and the lower price that they would have paid if Litvak had not made misrepresentations concerning Jefferies acquisition price in order to secure extra, unearned compensation. Thus, victims' ultimate disposition of securities purchased in fraudulent transactions is irrelevant.

> **H.** **"Any and all documents concerning any dispute with respect to commissions, mark-ups, or fees charged by Jefferies in connection with the purchase or sale of a [purportedly] Relevant RMBS."[10]**

The Government has already produced documents reflecting the settlements between Jefferies and certain of Litvak's victims. As above with respect to the requests discussed in section E, Litvak should not be permitted to use Rule 17(c) to demand documents from his victims that he already has.

---

[10] Req. No. 6 to Ex. A & B; Req. No. 3 to Ex. C.

## **CONCLUSION**

Although the 23 alleged victims who are the intended recipients of Litvak's subpoenas are likely to have arguments of their own—and the Government reserves the right to make new arguments and/or to join in any subpoena recipient's Rule 17(c)(2) motion to quash—the above defects are sufficient to demonstrate that Litvak's Rule 17(c) subpoenas fail to meet the requirements of relevancy, admissibility and specificity. Accordingly, the Government respectfully requests that the Court deny Litvak's motion.

Respectfully submitted,

DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov

ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT23923
eric.glover@usdoj.gov

157 Church Street, 25th Floor
New Haven, CT 06510
Tel.: (203) 821-3700

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                                                      /s/
                                            JONATHAN N. FRANCIS
                                            ASSISTANT UNITED STATES ATTORNEY