UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:13CR19(JCH) |
| | : | |
| v. | : | |
| | : | |
| JESSE C. LITVAK | : | December 13, 2013 |

**GOVERNMENT'S OMNIBUS MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE**

DEIRDRE M. DALY
UNITED STATES ATTORNEY


JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov

ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT23923
eric.glover@usdoj.gov

157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 1

    A.      Litvak's Motion to Exclude Compensation Evidence Should Be Denied .............. 1

        1.      Evidence of Litvak's Compensation is Relevant and Probative of his
                Financial Motive ..................................................................................... 2

        2.      The Danger of Unfair Prejudice Does Not Substantially Outweigh the
                Probative Value of Financial Motive Evidence ......................................... 6

    B.      Litvak's Motion to Preclude References to "Taxpayers" Should Be Denied ......... 9

        1.      Use of the Term "Taxpayer" at Trial Is Not Prejudicial ............................. 9

        2.      There Is No Basis to Strike a Sentence Containing the Term "Taxpayer"
                from the Indictment ................................................................................ 13

    C.      Litvak's Motion to Limit the Government's Use of Evidence of His Fraudulent
            Scheme Should Be Denied .................................................................................... 15

    D.      Litvak's Motion Regarding Objections to Possible Government Exhibits Should
            Be Denied as Premature ....................................................................................... 18

        1.      Office of the Special Inspector for the Troubled Asset Relief Program
                ("SIGTARP") Quarterly Report ............................................................... 19

        2.      TARP Statutes and Regulations ............................................................... 19

        3.      Images Attached to a Bloomberg Chat ..................................................... 20

        4.      Interview Notes In Litvak's Employment File .......................................... 21

III.    CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

**Federal Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 2009 WL 3111766 (S.D.N.Y.

    Sept. 28, 2009) ...................................................................................................8

*Huddleston v. United States*, 485 U.S. 681 (1998)................................................... 7

*L–3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006)................... 8

*United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010)........................................... 8

*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) .......................................... 2

*United States v. Birney*, 686 F.2d 102 (2d Cir.1982)................................................ 7

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) .............................................. 15

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ....................................... 7, 8, 9, 16

*United States v. Ferguson*, 246 F.R.D. 107 (D. Conn. 2007) ....................................... 16

*United States v. Ferguson*, 3:06CR137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007). 5, 8

*United States v. Hsu*, 669 F.3d 112 (2d Cir. 2012)................................................. 7

*United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983) .............................................. 7

*United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010).............................................. 16

*United States v. Logan*, 250 F.3d 350 (6th Cir. 2001)............................................. 3

*United States v. Lotsch*, 102 F.2d 35 (2d Cir. 1939).............................................. 13

*United States v. McQueen*, 54 F. App'x 28 (2d Cir. 2003).......................................... 16

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001).............................................. 14

*United States v. Palma*, 473 F.3d 899 (8th Cir. 2007)............................................. 13

*United States v. Peters*, 11-610-CR, 2013 WL 5540075 (2d Cir. Oct. 9, 2013) .................... 3

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006).................................... passim

*United States v. Quinones,* 511 F.3d 289 (2d Cir.2007)............................................ 2

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990) ................................................................ 2

*United States v. Reed*, 639 F.2d 896 (2d Cir. 1981) ................................................................... 3

*United States v. Reyes*, 660 F.3d 454 (9th Cir. 2011) ............................................................. 6, 8

*United States v. Reyes*, 922 F. Supp. 818 (S.D.N.Y. 1996) ........................................................ 14

*United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012) ............................................................ 16

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ............................................................. 14

*United States v. Smyth*, 556 F.2d 1179 (5th Cir. 1977) ............................................................ 13

*United States v. Stahl*, 616 F.2d 30 (2d Cir. 1989) ................................................................. 8

## Federal Statutes

12 U.S.C. § 5211 ...................................................................................................................... 11

12 U.S.C. § 5223 ...................................................................................................................... 11

18 U.S.C. § 1031 ...................................................................................................................... 12

## Federal Rules

Fed. R. Evid. 401 ...................................................................................................................... 2

Fed. R. Evid. 402 ...................................................................................................................... 6

Fed. R. Evid. 403 ................................................................................................................ 2, 7, 9

Fed. R. Evid. 803 ...................................................................................................................... 19

The Government submits this omnibus memorandum in opposition to the defendant Jesse C. Litvak's four Motions in Limine.

## I.     INTRODUCTION

On December 3, 2013, Litvak filed motions in limine [Dkt. #104] and an omnibus supporting memorandum [Dkt. #104-1] seeking the following:

1. To exclude evidence regarding Litvak's compensation while employed as a RMBS bond trader at Jefferies & Co., Inc. ("Jefferies"), in which position he allegedly committed his securities fraud scheme;

2. To preclude the Government from referring to the fact that the fraud proceeds from transactions in which Litvak's victims were Legacy Securities Public-Private Investment Funds ("PPIFs")—75% capitalized by the United States Treasury through the Troubled Asset Relief Program ("TARP")—included taxpayer funds;

3. To preclude the Government from introducing evidence regarding every instance in which Litvak executed or took action in furtherance of his multi-year, multi-victim, multi-million dollar fraud scheme; and

4. To alert the Court of Litvak's objections to certain potential Government exhibits.

The Court should deny Litvak's first three motions as unfounded, and either deny the fourth motion as premature or take it under advisement until the Government seeks to admit the pertinent exhibits into evidence.

## II.    ARGUMENT

### A.     Litvak's Motion to Exclude Compensation Evidence Should Be Denied

Litvak argues that evidence of his compensation is irrelevant and unfairly prejudicial. Litvak is wrong.  Evidence of Litvak's compensation is highly probative of his motive to perpetrate his scheme to cause victims to purchase bonds from Jefferies at fraudulently inflated prices (and sell bonds to Jefferies at fraudulently deflated prices).  *See* Fed. R. Evid. 401.  In

addition, the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice to Litvak from its admission.  *See* Fed. R. Evid. 403.

        **1.**      **Evidence of Litvak's Compensation is Relevant and Probative of his Financial Motive**

Litvak argues that evidence of his compensation from Jefferies is not relevant.  Def. Mem. at 2.  His assertion ignores the evidence in this case, which links Litvak's compensation to his motive to commit the charged crimes.

The Federal Rules of Evidence impose "a very low standard for relevance."  *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008).  Evidence is relevant so long "it has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401; *United States v. Quattrone,* 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry."). "Under Rule 402, all evidence that is relevant—that is logically probative—is admissible." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990).  The Second Circuit has said that relevancy determinations lie within the "broad discretion" of the district court, and "we will not reverse its ruling absent abuse of discretion indicative of arbitrariness or irrationality."  *United States v. Quinones,* 511 F.3d 289, n. 311 (2d Cir.2007).

Financial compensation evidence that is probative of a defendant's motive to engage in a fraudulent scheme is relevant and admissible.  *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (holding that district court did not abuse its discretion in permitting the government to offer evidence of defendant's salary to establish "motive for him to obstruct the IPO allocation investigations," as indictment charged); *United States v. Peters*, 11-610-CR, 2013 WL 5540075, at *4 (2d Cir. Oct. 9, 2013) (summary order) ("some evidence of the defendant's

- 2 -

wealth was relevant to the question of motive" for entering into conspiracy to commit bank fraud); *United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981) (not error to admit evidence of defendant's mortgage arrears because his belief that he was in financial difficulty demonstrated a "reason for participating" in another's fraud scheme); *United States v. Logan*, 250 F.3d 350, 369 (6th Cir. 2001) (where appellant's income dependent on fraudulent scheme, evidence of income had "significant probative value because it demonstrated what Appellants stood to lose") (cited in *Quattrone*, 441 F.3d at 187).

Here, the evidence will show that Litvak's compensation was, in fact, linked to the profitability of his trades. Further, Litvak associated his ability to buy and sell RMBS bonds at a profit with his personal income. For instance, on May 5, 2010, Litvak engaged in the following conversation with a trader at another broker-dealer via Instant Bloomberg:

| | | |
|---|---|---|
| 05/05/2010 17:55:16 | **NON-JEFFERIES TRADER** | you ok? |
| 05/05/2010 17:57:00 JESSE LITVAK, JEFFERIES & CO., INC | just sux that i cant even win when i win....dont have to tell you how hard it is to buy bonds right | |
| 05/05/2010 17:57:19 | **NON-JEFFERIES TRADER** | i hear you, just a rough day |
| 05/05/2010 18:14:21 JESSE LITVAK, JEFFERIES & CO., INC: | fml | |
| 05/05/2010 18:14:59 | **NON-JEFFERIES TRADER** | sorry buddy |
| 05/05/2010 18:15:07 | **NON-JEFFERIES TRADER** | just think about how much $$$$$$$$$ u have in the bank |
| 05/05/2010 18:15:37 JESSE LITVAK, JEFFERIES & CO., INC: | but i want more $$$$ | |
| 05/05/2010 18:22:02 JESSE LITVAK, JEFFERIES & CO., INC: | this is torture | |

Proposed Gov't Ex. 4070. In this document, Litvak is complaining to a similarly-situated RMBS bond trader about the difficulty he has encountered buying and selling RMBS, which Litvak indicates interferes with his personal ability to make "more $$$$."

Of the more than $17.5 million that Jefferies paid to Litvak in compensation over approximately three and a half years, the vast majority of his compensation took the form of a discretionary bonus, which was in part a reward for making money for Jefferies. By perpetrating a fraud, Litvak was able to increase the profitability of certain of his trades, and thus his own compensation. The Indictment alleges that Litvak's fraud caused losses to his victims—and therefore gains to Jefferies—of more than $2 million. Indictment ¶ 29. In total, Litvak's

completed more than 2700 trades for Jefferies, and made the company approximately $58 million in profits.  Def. Mem. at 2.  Thus, approximately 3% of the Litvak's trading "profits" were, in fact, the proceeds of his fraud.  Three percent of Litvak's $17.5 million compensation during the relevant time period is $525,000, a significant amount of money and a clear motive for fraud and false statements.  Accordingly, evidence of the amount of Litvak's compensation factually demonstrates his financial motive to commit his crimes.

Although Litvak argues that the number of his allegedly unlawful transactions was "exceedingly small" compared to the number of his purportedly legitimate transactions, the figures above significantly understate Litvak's financial motive.  If Litvak earned Jefferies approximately $58 million in the course of approximately 2700 trades, then Jefferies' average profit on Litvak's trades was approximately $21,000.  But the evidence will show that Jefferies' profit on Litvak's fraudulent trades was often far more than $21,000.

One particularly clear example of this is Litvak's sale of the "Lehman Bond" to a PPIF on March 31, 2010, detailed and charged in the Indictment as securities fraud in Count 2, an execution of Litvak's TARP fraud scheme in Count 12 and a false statement in a matter within the jurisdiction of the Department of the Treasury in Count 14.  Indictment ¶¶ 37, 38, 40-42, 44, 46, 55, 58, 60.  In that trade, Litvak made approximately $656,000 for Jefferies, meaning it was 31 times more profitable than Litvak's average trade.  But 93%, or more than $613,000 of that $656,000, was attributable to Litvak's fraud.  Put another way, Litvak scheme made this single trade worth 29 of one of his average trades.  To place this instance of Litvak's fraud in context, the $613,000 of fraudulent "profits" that Litvak made for Jefferies on this single trade was more than 20% of all of Litvak's profits in the month of March 2010.  While it is impossible to determine what specific percentage of Litvak's 2010 compensation was due to any particular

- 4 -

transaction, the jury is entitled to draw the fair and logical inference that some portion of Litvak's substantial discretionary bonus was due to his continued ability to complete transactions in a manner that was extraordinarily profitable to Jefferies.

In addition, the evidence will permit the jury to infer that Litvak was also motivated be a desire to secure or improve his position at Jefferies and in the market by increasing the number of trades he was able to do and improving his customers' perception of him.  By purporting to tell a purchaser the price that Jefferies had paid for a bond, Litvak created the false impression in his victim that he was unique in his willingness to divulge his acquisition cost.  By lying about that acquisition cost, Litvak created the false impression that he was willing to accept reduced compensation; Litvak repeatedly claimed to be agreeing to work for less compensation than usual.  *See, e.g.*, Indictment ¶ 37(g) ("I would be fine working skinnier on these 2"); Proposed Govt. Ex. 1031 ("i would work skinnier than usual on this if it helps"); *id.* ("like i said though .. .i would be willing to work super skinny just to try and get er done"); Proposed Govt. Ex. 4006 ("come on...lets close this gap....and i will work skinny like nicole richie....its been too long since we have done a trade").  The evidence will show that these kinds of misrepresentations by Litvak enhanced his victims' opinion of his abilities and loyalty, incentivizing them to do business with Litvak.  Thus, as in *Quattrone* and the other cases cited above, evidence of Litvak's compensation is relevant to show that what Litvak "stood to lose" was his well-compensated position as an RMBS trader at Jefferies, providing a motive for committing fraud.

The cases that Litvak relies on actually demonstrate the relevance of compensation evidence under these circumstances.  In *United States v. Ferguson*, 3:06CR137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007), then-District Judge Droney excluded certain evidence regarding a defendant's compensation, but admitted other compensation evidence, based on the

facts of that case.  The Court found that defendant's salary and bonuses were not relevant to the defendant's financial motive because they "were not affected by AIG's stock price; because of this, they are not probative of any financial incentive" to participate in a fraudulent transaction and SEC disclosures.  *Id.* at *1.  At the same time, Judge Droney found that "evidence concerning [defendant]'s deferred compensation plan, however, is relevant to proving motive, because [defendant's employer]'s performance affected [defendant]s benefits under the plan." *Id.* (citing *Quattrone*).  Likewise, in *United States v. Reyes*, 660 F.3d 454 (9th Cir. 2011)— Litvak's other authority—the Ninth Circuit approved of the lower court's decision to preclude compensation evidence "simply to show that Reyes was wealthy" while admitting compensation evidence "related to motive, knowledge, and intent, and because it demonstrated that Reyes made money in the backdating scheme."  *Id.* at 463.  Thus, the cases that Litvak cites actually persuasively demonstrate the relevance of evidence of Litvak's financial motive to commit fraud and the amount of money he made doing so.

Since evidence of Litvak's compensation is relevant to his motive, it is admissible under Federal Rule of Evidence 402 because, as set forth below, the danger of unfair prejudice does not substantially outweigh its probative value.

### 2.    The Danger of Unfair Prejudice Does Not Substantially Outweigh the Probative Value of Financial Motive Evidence

Litvak is wrong to implicitly invoke Federal Rule of Evidence Rule 403 by arguing that the compensation evidence—shown above to be relevant—"will serve only to create confusion and unfair prejudice."  Def. Mem. at 2-3.

Under Rule 403, once evidence is found to be relevant to a material issue in dispute, the Court must determine whether the risk of unfair prejudice substantially outweighs the probative value of the evidence.  *See* Fed. R. Evid. 403, 404; *Huddleston v. United States*, 485 U.S. 681,

686 (1998).  The Advisory Committee defines "unfair prejudice" as an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Birney*, 686 F.2d 102, 106 (2d Cir.1982) (quoting 1972 Advisory Committee Notes to Rule 403).  Along the same lines, the Second Circuit has repeatedly stated that evidence is prejudicial within the meaning of Rule 403 only when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (citation omitted).

Appellate courts generally defer to a trial court's ruling after a conscientious balancing of probative value versus unfair prejudice.  *United States v. Hsu*, 669 F.3d 112, 119 (2d Cir. 2012) ("District courts have broad discretion to balance probative value against possible prejudice, and we will not disturb that balancing unless there is a clear showing of abuse of discretion.") (citation omitted).  Indeed, "the appellate court 'must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.' To find abuse, the appellate court must find that the trial court acted arbitrarily or irrationally." *United States v. Jamil*, 707 F.2d 638, 642 (2d Cir. 1983) (citations omitted).

The district court may limit the potential for unfair prejudice to the defendant by instructing the jury that the evidence is being offered for the limited purpose of proving motive to commit the crime and by limiting the Government's references to such evidence at trial, including at argument.  *See Quattrone*, 441 F.3d at 187 ("While evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations, that evidence may be admitted where other safeguards are employed such as limiting instructions or restrictions confining the government's references to that wealth.").  Here, the Government does not intend to use such evidence for any purpose in its case-in-chief other than to show Litvak's motive, and thus the

Court can avoid any possibility for unfair prejudice by so instructing the jury.

Jurors are presumed to follow instructions regarding the purpose for which evidence is admitted and not to convict a defendant because of his status.  *See United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("the law presumes that juries follow limiting instructions"); *United States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010) ("[A]ny danger of unfair prejudice was here again minimized by the district court's limiting instructions, which we presume the jury followed.") (internal citations omitted).

The unfair prejudice identified in the cases cited by Litvak, *see* Def. Mem. at 3, resulted from the proposed evidence's lack of relevance or the improper use of wealth evidence to inflame the jury.  *See Ferguson*, 2007 WL 4240782, at *1 (salary and bonus that were unaffected by employer's stock price irrelevant); *Reyes*, 660 F.3d at 464 (prosecutor not allowed "to introduce evidence simply to show [the defendant] was wealthy"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 2009 WL 3111766, at *6-7 (S.D.N.Y. Sept. 28, 2009) (defendant's method of compensating employees admissible for the purpose of proving defendants did not make decision to invest in corporate bond based on risk mitigation; dollar amount of compensation irrelevant because it would not "shed further light on this theory"); *L–3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (in breach of contract case, wealth of defendant's CEO excluded where plaintiff could offer no reason for evidence); *United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1989) (prosecutor's repeated references to defendant's wealth in bribery case was an improper "persistent appeal to class prejudice" requiring reversal of conviction).  Here, in contrast, evidence of Litvak's compensation is relevant, the Government is not offering such evidence to inflame the jury and the Court can provide the jury with a limiting instruction.  *See Quattrone*, 441 F.3d at 187.  The

cases Litvak has cited are thus factually distinguishable.

*      *      *

Evidence of Litvak's compensation is probative of Litvak's financial motive to commit the fraud alleged in the Indictment and should be admitted for that limited purpose consistent with Rule 403.  Accordingly, Litvak's first motion in limine should be denied.

### B.      Litvak's Motion to Preclude References to "Taxpayers" Should Be Denied

Litvak argues that the Government should be precluded under Rule 403 from referring to "taxpayers" on the grounds that the term will inflame juror prejudice.  Litvak is wrong.

### 1.      Use of the Term "Taxpayer" at Trial Is Not Prejudicial

Litvak first asks that the Government be prevented from referring to the portion of his fraudulent proceeds obtained from the United States Treasury through TARP as "taxpayer funds."  But there is no unfair prejudice inherent to references to "taxpayers" in this case, much less such unfair prejudice that use of the term substantially outweighs the probative value of accurately describing the source of funds at issue.  *See* Fed. R. Evid. 403; *Curley*, 639 F.3d at 57 (evidence is prejudicial only when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence") (citation omitted).

Litvak's motion does not raise a factual dispute about the source of the PPIFs' funds:  the United States Department of the Treasury used TARP to inject more than $20 billion into these specialized financial vehicles so that they could purchase troubled assets, including RMBS bonds, in some cases from Jefferies in fraudulent transactions with Litvak.  Indictment ¶¶ 5-7.  Treasury's money, including funds distributed to PPIFs through TARP, is commonly referred to as "taxpayer" money, since American taxpayers are the ultimate responsible party, regardless of whether particular funds are derived from borrowing or tax revenue.  *See, e.g.*, Application for

- 9 -

Treasury Investment in a Legacy Securities Public-Private Investment Fund at 1 ("This application is for private assets managers to apply to the U.S. Department of the Treasury to be pre-qualified to serve as a manager of **a Legacy Securities Public-Private Investment Fund that will invest in legacy securities on behalf of taxpayers** and private investors pursuant to terms set forth in Attachment I.") (internal definitions omitted, emphasis added), *available at* http://www.treasury.gov/initiatives/financial-stability/TARP-Programs/ credit-market-programs/ ppip/Documents/legacy_securities_ppif_app.pdf (last visited Dec. 10, 2013); *id.* at 10 ("Fund Managers will make proposals for the term of a Fund with the intention to **maximize returns for taxpayers** and private investors . . . .") (emphasis added); Legacy Securities Public-Private Investment Program (PPIP) Summary of Conflicts of Interest Rules and Ethical Guidelines at 1 (describing "a robust set of conflict of interest rules and ethical guidelines for the Legacy Securities Public-Private Investment Program" through which "**Treasury protects the taxpayer funds** that will be used to attract private capital and investment expertise to markets that are impeding an economic recovery.") (emphasis added), *available at* http://www.treasury. gov/initiatives/ financial-stability/TARP-Programs/credit-market-programs/ppip/Documents/ PPIP_Conflict-of-Interest-Rules.pdf (last visited Dec. 10, 2013).[1]  Thus, every dollar that

---

[1]  *See also* Guidelines for the Legacy Securities Public-Private Investment Program at 1 (eligibility criteria include "[d]emonstrated operational capacity to manage the investments in a manner consistent with Treasury's stated investment objectives **while also protecting taxpayers** . . . .") (emphasis added), *available at* http://www.treasury.gov/initiatives/ financial-stability/TARP-Programs/credit-market-programs/ppip/Documents/ ProgramGuidelinesS-PPIP.pdf (last visited Dec. 10, 2013); *id.* ("Treasury will require that any Public-Private Investment Fund formed pursuant to this program provide Treasury with warrants or alternative consideration, as necessary, to minimize the long-term costs and **maximize the benefits to the taxpayers** in accordance with EESA.") (emphasis added); *id.* ("Treasury will consider other measures, including limitations on the institution's fees and expenditures with respect to Treasury's investments, or other corporate governance requirements, **to protect the taxpayers' interests**.") (emphasis added); Office of the Special Inspector General for the Troubled Asset

Treasury spent purchasing RMBS bonds through the PPIFs was, in fact, "taxpayer funds."

Litvak is charged with, among other crimes, making false statements in a matter within the jurisdiction of Treasury under § 1001. Litvak has contested Treasury's jurisdiction over the PPIFs, and evidence proving such jurisdiction is expected to be a part of the Government's case. One fact that will demonstrate federal jurisdiction is Treasury's creation, funding and supervision of PPIFs. The Government may introduce provisions of the Emergency Economic Stabilization Act ("EESA") to evidence that power. *See, e.g.*, 12 U.S.C. § 5211(c)(4) ("In order to provide the Secretary with the flexibility to manage troubled assets in a manner designed to minimize cost to the taxpayers, [Treasury may] establish[] vehicles that are authorized, subject to supervision by the Secretary, to purchase, hold, and sell troubled assets and issue obligations."); 12 U.S.C. § 5223(a)(1) (instructing Treasury to "use the authority under this chapter in a manner that will minimize any potential long-term negative impact on the taxpayer"); *id.* § 5223(a)(2)(A) ("the Secretary shall . . . hold the assets to maturity or for resale for and until such time as the Secretary determines that the market is optimal for selling such assets, in order to maximize the value for taxpayers"); *id.* § 5223(b)(2) (instructing Treasury to "maximize the efficiency of the use of taxpayer resources by using market mechanisms"). When the Government cited EESA in response to Litvak's motion to dismiss, he responded:

> The government's references to various statutes and regulations do not demonstrate that Treasury set up a program in which it, in fact, sought to assert jurisdiction over statements by broker-dealers to the PPIF managers. These statutes and regulations illustrate Treasury's

---

Relief Program Quarterly Report to Congress dated October 28, 2013 at 2 ("The investment objective of PPIP has been **to generate attractive returns for taxpayers** and private investors through long-term opportunistic investments in Eligible Assets (as defined below) by following predominantly a buy and hold strategy.") (emphasis added), *available at* http://www.treasury.gov/initiatives/financial-stability/reports/Documents/External% 20Report %2013%20-9%20 Final.pdf (last visited Dec. 10, 2013).

- 11 -

> authority to establish the PPIP, but how it was implemented is a
> matter of fact. Perhaps Treasury could have elected to assert
> jurisdiction over Mr. Litvak's statements.

Def. Reply Mem. in Support of Mot. To Dismiss [Dkt. #66, 9/23/13] at 5 n.6.

At trial, the Government should be given the opportunity to prove that, as "a matter of fact," Treasury used its statutory authority and discharged its statutory obligation "to manage troubled assets in a manner designed to minimize cost to the taxpayers" by establishing the PPIFs. The jury is entitled to an explanation of how establishing the PPIFs achieved Treasury's statutory objectives of "manag[ing] troubled assets" while "minimiz[ing] cost to taxpayers" and "maximiz[ing] the value for taxpayers." To do so, the Government must be able to explain the factual link between taxpayers and the funds that Treasury contributed to the PPIFs.[2]

Litvak is also charged with TARP fraud, and an element of that offense is that the fraud occurred in "any . . . form of Federal assistance, including through the Troubled Asset Relief Program, an economic stimulus, recovery or rescue plan provided by the Government, or the Government's purchase of any troubled asset as defined in [EESA]." 18 U.S.C. § 1031. The Government expects to introduce evidence regarding the nature of PPIP and TARP as forms of "Federal assistance." Litvak has disputed that his fraud occurred "in" TARP or PPIP; thus, the Government plans to introduce evidence about the nature of those programs, including their purpose and function, in order to prove that Litvak's fraudulent transactions occurred in those programs.

---

[2] Notably, the Government's evidence will not only show that federal funds were used in certain fraudulent transactions, but also that Litvak knew that certain of his victims were PPIFs and that the transactions in which he was committing fraud and making false statements were funded with taxpayer money. For instance, Litvak repeatedly referred to large institutional fund managers who happened to have been selected by Treasury to managed PPIFs as "PPIP guys," signaling his awareness that certain of their transactions were being made on behalf of PPIFs, and therefore were funded through TARP.

It would make no sense to try to withhold from the jury that taxpayers are the source of Treasury's—and therefore the PPIFs'— money, where the evidence will show that Treasury was statutorily obligated to design and execute the PPIP in such a way as to minimize cost and maximize value for taxpayers.  Acknowledging that Treasury injected taxpayers funds into the PPIFs—a portion of which Litvak fraudulently diverted to Jefferies through his scheme—simply states what will be made obvious to the jury by the Government's evidence on an element of TARP fraud.

The cases that Litvak cites are inapposite.  Def. Mem. at 4-5.  Those stand for the proposition that it is improper for a prosecutor to appeal to the jury's passion or prejudice.  *See United States v. Palma*, 473 F.3d 899, 901-02 (8th Cir. 2007) (although prosecutor's appeal to "individual pecuniary interests of the jurors as taxpayers" by pointing at jurors and saying "he got money from you and you and you and you" was improper "because [it] suggested the jurors were themselves direct victims of [the defendant's] crimes," error was harmless); *United States v. Smyth*, 556 F.2d 1179, 1185 (5th Cir. 1977) (prosecutor should not have "appeal[ed] to the passion and prejudices of the juror" by arguing "[l]et Uncle Sam take the ride, but when you think about that, think of that, that's your tax money, that's your tax money being kicked in here," but error was harmless); *United States v. Lotsch*, 102 F.2d 35, 37 (2d Cir. 1939) (L. Hand, J.) (although prosecutor stated that the money lent to borrowers in this case "came out of the jurors' pockets," no reversal required).  Here, the Government will not argue or imply that the jurors, as taxpayers, are victims of Litvak's fraud.

### 2. There Is No Basis to Strike a Sentence Containing the Term "Taxpayer" from the Indictment

Litvak's motion to strike the last sentence of Indictment ¶ 7 is similarly unfounded.  The Second Circuit has held that "[m]otions to strike surplusage from an indictment will be granted

only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'"  *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990). The pertinent sentence from the Indictment reads, "Thus, 75% of each PPIF's money consists of taxpayer funds disbursed by the Government as part of its bailout plan through TARP." Indictment ¶ 7.  This sentence discusses relevant explanatory background evidence, and is neither inflammatory nor prejudicial.

The cases Litvak relies on are clearly inapposite.  *United States v. Mulder* and *United States v. Scarpa* are actually examples where the court refused to strike relevant and admissible material from an indictment.  *See United States v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001) ("Because the six challenged paragraphs, which generally described the tactics and purposes of labor coalitions, discussed background evidence that was properly admissible and relevant, the district court did not err by refusing to strike these paragraphs from the indictment."); *Scarpa*, 913 F.2d at 1011-12 (affirming trial court's refusal to strike reference to "Colombo Organized Crime Family" where government asserted term was "relevant to the identity and character of the RICO enterprise charged in the indictment").  The other case cited by Litvak, *United States v. Reyes*, is factually very different than this one, as there prosecutors used an invented and suggestive name for a RICO enterprise in an indictment, which the court found was properly struck.  *See United States v. Reyes*, 922 F. Supp. 818, 839-40 (S.D.N.Y. 1996) (striking indictment's references to "Reyes Crew," where Reyes was charged with being a member of RICO enterprise or RICO conspiracy, and prosecutors conceded that nickname was never used by alleged members of enterprise).

\*      \*      \*

For the reasons set forth above, Litvak's second motion in limine should be denied.

**C.      Litvak's Motion to Limit the Government's Use of Evidence of His Fraudulent Scheme Should Be Denied**

Litvak argues that the Government should be precluded from offering evidence regarding every instance in which he carried out or took steps in furtherance of his fraudulent scheme. Leaving aside his factual mischaracterizations, Litvak's motion is premised on supposition that the Government intends to introduce all of its inculpatory evidence at trial.  That is not accurate.

On November 1, 2013, pursuant to the Court's Modified Scheduling Order, the Government provided Litvak with its Rule 404(b) notice.  In that notice, the Government went beyond the bare minimum disclosure required under Rule 404(b), and instead listed every uncharged transaction or attempted transaction (by date, bond name and CUSIP) which conceivably could be relevant to Litvak's scheme to defraud, as well as a number of relevant admissions by Litvak (by date and either audience or subject matter) that were made outside the context of a charged transaction.[3]

None of the Government's disclosures were actually required, as the evidence at issue is not "other acts" evidence under Rule 404(b).  "Other acts" evidence simply does not include (a) Litvak's acts, misrepresentations and omissions in connection with transactions and attempted transactions not specifically identified in the Indictment, but which were part of the charged scheme to defraud, or (b) Litvak's admissions relevant to the charged scheme to defraud. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.") (citation omitted).  *See also United States v. Kaiser*, 609 F.3d 556, 571 (2d Cir.

_____

[3] Litvak has not sought to preclude evidence of these admissions.

2010) (holding uncharged acts occurring before start of conspiracy not "other acts" evidence because "[i]t would have been impossible to intelligibly present a case about much of what went on after [the conspiracy began] without starting at the beginning"); *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1481 (U.S. 2013) (where defendant argued that Jane Doe was his "girlfriend" and that he had no control over her prostitution activities, evidence of his uncharged prostitution business was "necessary to complete the story of the crime on trial"); *United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) (defendant's prior uncharged acts of abuse demonstrating "a pattern of activity that continued up to the time of the charged conduct" were probative of the defendant's intent); *United States v. McQueen*, 54 F. App'x 28, 30 (2d Cir. 2003) ("Federal Rule of Evidence 404(b) was not violated when testimony regarding defendant's uncharged criminal acts was admitted because defendant's statements regarding those acts arose out of the same occurrence as the charged offense."); *United States v. Ferguson*, 246 F.R.D. 107, 114 (D. Conn. 2007) ("Regardless of Rule 404(b), evidence that does not directly establish an element of the offense charged [is admissible] in order to provide background for the events involved in the case.") (addition in original, quotation and citation omitted).

The Government has never indicated that it will seek to introduce all of the evidence listed in its Rule 404(b) notice. To the contrary, the Government's November 1 notice included the following caveat:

> At this stage of pretrial proceedings, the Government cannot determine absolutely whether it will seek to offer other crimes or bad acts evidence, because the Government cannot be sure what the defendant's theories at trial will be. Whether the Government does introduce other crimes or bad act evidence depends in large part on how the actual trial proceeds and whether motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident is a disputed issue. *See United States v. Figueroa*, 618 F.2d

> 934 (2d Cir. 1980).  Nevertheless, we are providing you with the
> information contained in this letter so that you may consider it as
> evidence that the Government may seek to introduce, including
> potentially pursuant to Rule 404(b), along with any other such
> evidence of which the Government subsequently provides notice.

Thus, the premise of Litvak's motion—that the Government intends to swamp the jury with a disproportionate amount of evidence concerning uncharged transactions—is flawed.

In reality, the Government may use some evidence of Litvak's conduct in uncharged transactions to prove the elements of the charged scheme to defraud and to counter any arguments raised by the defense, including regarding Litvak's motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Oddly, Litvak argues that "there is no overarching conspiracy or scheme, the existence of which the government could possibly hope to prove by offering evidence."  Def. Mem. at 7.  It is impossible to understand the basis for such a statement, given that the Indictment charges Litvak with perpetrating a securities fraud scheme and a TARP fraud scheme.  *See* Indictment ¶¶ 27-58.

The Indictment details, and the Government intends to prove, that Litvak perpetrated a scheme to defraud his victims in the purchase or sale of RMBS bonds, including by offering evidence of his conduct in transactions other than the twelve charged in the Indictment.  Litvak mischaracterizes these uncharged transactions when he argues that "[n]one of the allegedly misleading statements in this mass of additional evidence were ever conveyed to the alleged victims on the charged offenses . . . ."  Def. Mem. at 6.  Litvak is incorrect:  many of the uncharged transactions or attempted transactions listed in the Government's notice were or involved communication with some of the same victims who engaged in the twelve charged fraudulent trades with Litvak, including certain PPIF victims.

Moreover, several of Litvak's communications in furtherance of these uncharged transactions were with individuals referred to in the Indictment, including Supervisor #1,

- 17 -

Indictment ¶¶13, 31, 37(d)-(f), and the person identified in ¶ 32 as "a trader at another broker-dealer." The Government is entitled to offer background evidence to prove the relationship Litvak had with these people and the context in which he made his admissions, included those alleged in the Indictment. *See, e.g.*, *id.* ¶¶ 32, 37(d).

Since there is no valid evidentiary basis for Litvak's motion, he is left with the argument that it would be unduly burdensome for his counsel to analyze the numerous instances in which he perpetrated or took action that evidences his fraud. *First*, Litvak cannot credibly blame the Government for the number of instances in which he allegedly made fraudulent misrepresentations. *Second*, this evidence was disclosed to Litvak long before the Government listed it in its November 1 notice. Indeed, the Government began producing the relevant documents and, out of an abundance of caution, began disclosing the relevant uncharged transactions to the defense in February 2013. Litvak and his counsel cannot credibly claim unfair surprise or lack of time to prepare to meet the evidence against him.

For these reasons, Litvak's third motion in limine should be denied.

### D.     Litvak's Motion Regarding Objections to Possible Government Exhibits Should Be Denied as Premature

Litvak asserts, but does not argue, blanket hearsay, relevance and/or Rule 403 objections to four categories of Government exhibits, totaling seven exhibits. It would be premature to resolve objections that have merely been voiced without explanation months before trial. For that reason, the Court should deny Litvak motion or take it under advisement until it becomes applicable.

Nonetheless, as an aid to the Court, below the Government briefly explains its anticipated use for each category of exhibit to which Litvak objects.

- 18 -

**1.      Office of the Special Inspector for the Troubled Asset Relief Program
("SIGTARP") Quarterly Report**

The Government may offer this document, which was found in Jefferies' files, for a

variety of purposes, including as evidence that (1) PPIP and TARP are matters that are within the

jurisdiction of Treasury (and SIGTARP), (2) Litvak knew that his fraud took place in a form of

federal assistance, TARP, PPIP and the purchase of troubled assets and (3) Litvak knew that his

false statements were made in a matter within the jurisdiction of Treasury.  The report falls

within the public record exception to the rule against hearsay, *see* Fed. R. Evid. 803(8)(A)(i),

because it is a statement of a public office that sets out the office's activities, and neither the

source of the information nor other circumstances indicate a lack of trustworthiness.

Alternatively, the report is not hearsay in this context because will not be offered for the truth of

the matter asserted.  It is relevant as probative of an element of the § 1031 and § 1001 counts, as

well as Litvak's state of mind and knowledge; furthermore, there is nothing unfairly prejudicial

about it, and the risk of unfair prejudice certainly does not substantially outweigh its probative

value.

**2.      TARP Statutes and Regulations**

The Government may offer certain statutes, such as EESA, and Treasury regulations as

evidence that Litvak's fraud occurred in a form of federal assistance and that false statements in

PPIP transactions is a matter within Treasury's jurisdiction, both of which Litvak has disputed.

These statutes and regulations are relevant to prove that Treasury created the PPIP, decided its

purpose, selected the PPIF Managers, contributed most of the funding to the PPIFs and set the

criteria for the types of securities that they could purchase, all of which are acts indicative of its

jurisdiction.  Indeed, the fact that Treasury promulgated regulations concerning PPIP is evidence

of its jurisdiction.  Moreover, these statutes and regulations provide background to explain how

and why PPIP was established and the context in which Litvak is alleged to have perpetrated his scheme and made his false statements.  An example of the value of this background evidence is the goals that Congress set for Treasury in EESA, as discussed above in relation to Litvak's second motion in limine.  Consequently, these statutes and regulations are not hearsay because they are not statements or assertions with any verifiable truth content, but rather are acts of Congress and Treasury.  As such, they could not be, and are not, offered for the truth of the matter asserted, but rather to show their existence and Treasury's jurisdiction over fraudulent trades with PPIFs.  They are therefore relevant as probative of elements of the § 1031 and § 1001 charges, as well as background to explain the PPIP; furthermore, there is nothing unfairly prejudicial about public statutes and agency regulations.

### 3.    Images Attached to a Bloomberg Chat

Litvak objects to pictures attached to a Bloomberg chat between employees of a PPIF Manager and himself.  The majority of the chat concerns matters other than the business of trading RMBS.  Although Litvak does not characterize them as such in his motion, from the context of the chat it is clear that the pictures are meant to be humorous.  The pictures may be admissible if Litvak raises any number of defenses at trial.  For example, if Litvak were to try to suggest that a RMBS trader's day is hectic in order to suggest that he is guilty only of inattention or innocent miscommunication in the fraudulent transactions, the Government may offer evidence such as this chat and the pictures attached to it to rebut that argument.  Under those circumstances, the "humorous" pictures would be relevant to disproving an issue raised by Litvak; the fact that those pictures are sophomoric and in poor taste is not so unfairly prejudicial as to substantially outweigh their probative value, as the fact that they concern such matters tends to disprove any argument that Litvak was too busy to have made false statements or perpetrated a fraud.  The Court should therefore wait until trial to resolve any such issue.  The pictures may or

may not be relevant, depending on how trial proceeds and what Litvak defenses are or what he may attempt to suggest at trial concerning the circumstances under which the transactions at issue were carried out.

### 4.    Interview Notes In Litvak's Employment File

The Government has included Litvak's employment file on its exhibit list, which file includes notes of interviews of Litvak conducted by members of Jefferies' Compliance and Legal departments.[4]  At this point, those notes have been marked for identification.  The Government does not presently anticipate that it will offer such notes into evidence, but may use them for another purpose, such as to refresh recollection.

## III.    CONCLUSION

For the reasons set forth above, Litvak's motions in limine should be denied.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

_____/s/_____
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov

ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT23923
eric.glover@usdoj.gov

157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

---

[4] Litvak also objects to materials relating to his compensation in his employment file.  The Government respectfully refers the Court to the arguments above in opposition to Litvak's first motion in limine, which concerns that same subject.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 13, 2013, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF

System.

_____/s/_____<br>JONATHAN N. FRANCIS<br>ASSISTANT UNITED STATES ATTORNEY