IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:13CR19 (JCH) |
| v. | |
| JESSE C. LITVAK | January 9, 2014 |

### JESSE C. LITVAK'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MR. LITVAK'S MOTION TO COMPEL AND FOR SANCTIONS

**I.**  **The Government Does Not Dispute That It Was Required to Produce All Information Favorable To the Defense and Information Material to the Preparation of the Defense Within 14 Days of Arraignment**

The government does not contest that it was and is required to produce the following information in its possession, custody or control:

Under Federal Rule of Criminal Procedure 16(a)(1)(E):

- Information "material to preparing the defense"

Under *Brady v. Maryland* and its progeny:

- Information "favorable to the accused, either because it is exculpatory, or because it is impeaching" *Strickler v. Greene*, 527 U.S. 263, 282 (1999).

Under The Court's Standing Order on Discovery, (A)(5),(11):

- Information "material to the preparation of the defense or ... intended for use by the government as evidence in chief at the trial" *within fourteen days of arraignment*;

- All information known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963) *within fourteen days of arraignment*[1]

---

[1] The government does not contest the validity or enforceability of the Standing Order's disclosure requirements, which were imposed pursuant to the Court's "inherent power to manage its docket and provide for the orderly and timely disposition of cases." *United States v. Jacobs*,

Because the government has failed to satisfy these obligations, and it has articulated no basis upon which it should be excused from that requirement, Mr. Litvak's Motion should be granted.

## II. The Government's Opposition Misstates Its Discovery Obligations

While the government does not challenge that it was required within 14 days of arraignment to disclose information material to the preparation of the defense and information within the scope of *Brady v. Maryland*, it urges a nonsensical application of these requirements. With respect to information "material to the preparation of the defense," it is plain that this encompasses more than simply exculpatory information. In the context of Rule 16, the Fourth Circuit has explained that the government must disclose information "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Caro*, 597 F.3d 608, 620-22 (4th Cir. 2010) (citing *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). The "materiality standard normally is not a heavy burden…" *Lloyd*, 992 F.2d at 350-51. In fact, "[t]he language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." *United States v. Poindexter,* 727 F. Supp. 1470, 1473 (D.D.C. 1989).

The government does not advance an alternative standard for its disclosure obligations, but contends that the information identified by the defense is beyond the scope of its production

---

650 F. Supp. 2d 160, 164-65 (D. Conn. 2009) (citing *United States v. Perez*, 222 F. Supp. 2d 164, 171 (D. Conn. 2002)).

2

obligations because it has no bearing whatsoever on this case.[2] As pointed out previously, however, information withheld by the government bears directly on elements of charged offenses. For example, to obtain convictions on the fraud counts in the Indictment the government must establish beyond a reasonable doubt that the alleged misstatements were material. In the securities fraud context, a fact "is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]." *Basic v. Levinson*, 485 U.S. 224, 231 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Within the particular context of the purchase and sale of securities, "material" information is information which a reasonable investor would have considered significant in deciding whether to buy, sell, or hold securities. *Kronfeld v. Trans World Airlines*, 832 F.2d 726, 732 (2d Cir. 1987) (material facts include those facts "which may affect the desire of investors to buy, sell, or hold the company's securities") (quoting *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968) (en banc)).

Materiality exists only when there is a "substantial likelihood" that disclosure of the omitted fact would have significantly altered the "total mix" of information made available to the reasonable investor. *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 535 (S.D.N.Y. 2012). This Court has previously ruled that these are questions for the jury. Ruling

---

[2] The government also seems to argue that because some of the exculpatory information identified by the defense is intermingled with information that is, in its view, inculpatory, this information was taken "out-of-context" and, as a whole, does not constitute *Brady* information or information material to the preparation of a defense. Opp. at 3, 7. The government's position lacks merit. The Second Circuit has made it "unmistakably clear that evidence having both an inculpatory and exculpatory effect must be turned over to the defense counsel as *Brady* material." *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) (citing *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)). It is the prerogative of the defense, not of the prosecution, to exercise judgment in determining whether to make use of such information. *See id.*

on Motion to Dismiss, (Doc. No. 78) (citing *TSC Indus., Inc.*, 426 U.S. at 450). Accordingly, the defense must have the opportunity to counter the government's proof on these questions and to mount its own defense.

Thus, the government was required to make timely disclosure of information that revealed that the PPIFs conducted extensive independent analysis of bonds, including detailed valuation and market analysis. It was certainly required to disclose that it had information that those responsible for purchasing the bonds ███████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████. *See* Mot. Compel and for Sanctions at 7, 12-14.

Nevertheless, the government's Opposition contends that the PPIFs' fundamental analysis of the attributes and value of a bond is wholly distinct from and entirely irrelevant to the negotiation of the purchase price or "execution." In other words, the government argues, whether a buyer would or could purchase a bond at a particular price has absolutely nothing to do with the attributes of the bond, the buyer's assessment of its value, or the buyer's evaluation of the marketplace. The government is entitled to make this case to the jury. But the defense has a constitutional right to counter that argument. And simply because the government believes strongly in its own case, that does not mean it can withhold information relevant to an alternative theory, particularly when the government has long been on notice that the defense intends to advance that alternative view.

In light of this, it is particularly troubling that highly relevant information, long in the possession of the government, is still trickling out. On December 23, 2013, the government produced to the defense memoranda it received in August from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In these memoranda, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Letter from Jonathan Francis to Patrick Smith and accompanying memoranda, dated Dec. 23, 2013, attached as Ex. 1). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*

This information is not only patently favorable to the defense, but it plainly has the potential to "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 620-22. Indeed, the ▇▇ official who authored the memoranda could serve as a valuable source of information for the defense but had, until very recently, been concealed by the government. Worse still, this information was in the government's possession when this Court, at the November 4, 2013 hearing on the defense's earlier motion to compel, inquired whether the government possessed any more material that it had not yet turned over that, if not *Brady*, would "skate close to the line." The government represented that it did not, perhaps with the exception of one memorandum of an interview it had recently conducted. *See* Transcript of Hearing on Mr. Litvak's Motion to Compel ("Mot. Comp. Tr.") at 52:7-52:12.

The government's Opposition and its conduct reflect that it fundamentally misperceives its discovery obligations, and has certainly not discharged them as required.

### III. The Government Has Not Discharged Its Duty to Learn of Favorable Evidence Known to the Prosecution Team

The government's Opposition acknowledges that it is obligated to obtain discovery from members of the "prosecution team." It is also obligated to search for such information through the exercise of "due diligence." Standing Order at (A). This means that prosecutors have an affirmative "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); citing *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995)).

Some courts in the Second Circuit have defined the membership of the "prosecution team" in terms of "alignment" with the prosecutors. *See United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006); *see also United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006) (citing *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) (explaining that "government" includes "governmental agencies jointly involved in the prosecution of the defendant.")). As the DOJ's own guidance makes clear:

> an investigative or prosecutive agency becomes aligned with the government prosecutor when it becomes **actively involved in the investigation or the prosecution of a particular case**. When that occurs, **the agency's files are subject to the same requirement of search and disclosure as the files of the prosecuting attorney or lead agency.**

USAM, Criminal Resource Manual 2052 (emphasis added).

Other courts have explained that, "if a government agency is charged with the administration of a statute and has consulted with the prosecution in the case, the agency will be considered part of the prosecution, and its knowledge of *Brady* material will be imputed to the

prosecution." *United States* v. *Bhutani*, 175 F.3d 572, 577 (7th Cir. 1999), *cert. denied*, 528 U.S. 1161 (2000); *see United States* v. *Wood*, 57 F.3d 733, 737 (9th Cir. 1995). Proceeding on that rationale, the courts in both *Bhutani* and *Wood* held that the Food and Drug Administration was obligated to disclose information bearing on the safety and effectiveness of drugs the defendants had been charged with unlawfully manufacturing or dispensing. *See Bhutani*, 175 F.3d at 577; *Wood*, 57 F.3d at 735. At least one court in this Circuit has indicated that this view is not inconsistent with the Second Circuit's "alignment" approach. *See United States v. Chalmers*, 410 F. Supp. 2d 290 (S.D.N.Y. 2006). And, it is recognized that a prosecutor has duty to search files in government offices "closely aligned with the prosecution," particularly when files can be searched "without any difficulty." *See United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) (citing *United States v. Brooks,* 966 F.2d at 1500, 1503 (D.C. Cir. 1992)). This is what due diligence requires.

While in some cases it may be challenging to determine which agencies and personnel are aligned with the prosecutors, it is not here. When Mr. Litvak was indicted, both SIGTARP and the United States Attorney for the District of Connecticut issued press releases. (*See* DOJ Press Release dated Jan. 28, 2013, attached hereto as Ex. 2; SIGTARP Press Release dated Jan. 28, 2013, attached hereto as Ex. 3). Both press releases credited Mr. Litvak's prosecution to the work of the "RMBS Working Group," which was described as "a federal and state law enforcement effort focused on investigating fraud and abuse in the RMBS market that helped lead to the 2008 financial crisis."[3] Materials available on SIGTARP's website described the

---

[3] According to the Department of Justice: "The RMBS Working Group, ... brings together more than 200 attorneys, investigators, analysts and staff from dozens of state and federal agencies including the Department of Justice, ten U.S. Attorneys' Offices, the FBI, the Securities and Exchange Commission, the Department of Housing and Urban Development (HUD), HUD's

prosecution of Mr. Litvak as "the first criminal case **brought by** President Barack Obama's Residential Mortgage-Backed Securities Working Group."[4] According to SIGTARP and the Department of Justice, the RMBS Working Group is comprised of SIGTARP, several U.S. Attorneys' Offices, the SEC, several state attorneys general, and a number of other federal agencies. (*See* Ex. 2; Ex. 3).

The government's Opposition reflects that it has plainly not discharged its obligations to canvas the member agencies of the RMBS Working Group for the discovery required by the Standing Order, Rule 16 or the Constitution.

To the contrary, the government contends that even the "SIGTARP Audit Division" is so separate and distinct from the SIGTARP case agents most actively involved in this case that it was not required to produce discoverable information in its possession, even when that information was specifically identified and requested by the defense. However, courts have roundly rejected such purely bureaucratic distinctions. *See Brooks*, 966 F.2d at 1503 (D.C. Cir. 1992) ("The cases finding a duty to search have involved files maintained by branches of government 'closely aligned with the prosecution' … and in each case the court has found the bureaucratic boundary too weak to limit the duty.") (collecting cases).

---

Office of Inspector General, the Federal Housing Finance Agency's Office of Inspector General, the Office of the Special Inspector General for the Troubled Asset Relief Program, the Federal Reserve Board's Office of Inspector General, the Recovery Accountability and Transparency Board, the Financial Crimes Enforcement Network, and more than ten state Attorneys General offices around the country." (Ex. 2).

[4] *See* http://www.sigtarp.gov/pages/investigations.aspx (follow "Jesse C. Litvak") (last visited Jan. 9, 2014).

SIGTARP identifies itself as "a sophisticated, white-collar law enforcement agency"[5]; its agents actively investigated this case; it issued a press release announcing Mr. Litvak's arrest; and it is part of the RMBS Working Group. It cannot be said to be distinct from the prosecution team. Moreover, obtaining discovery from SIGTARP would hardly be burdensome when SIGTARP has only 169 employees. (*See* SIGTARP Quarterly Report dated Oct. 29, 2013, excerpt attached hereto as Ex. 4). The government's refusal to obtain discovery from SIGTARP and provide it to the defense is plainly improper.[6]

The government was and is required to obtain and produce discovery from SIGTARP, the SEC and the other members of the RMBS Working Group. That it did not do so on a timely basis is egregious and merits sanctions.

---

[5] *See* http://www.sigtarp.gov (last visited Jan. 9, 2014).

[6] The government's unduly narrow view of the prosecution team has also hindered the defense's right to information bearing on Treasury's jurisdiction over the PPIP and its relationships with the private fund managers – yet another essential element of a charged offense. Such information necessarily bears on whether any of the alleged misrepresentations were "made in a matter that is within the jurisdiction of Treasury" for purposes of 18 U.S.C. § 1001. Treasury's description of its relationship with the funds directly undermines the element of federal jurisdiction that the government is required to prove under Section 1001. Accordingly, materials in SIGTARP's possession that show Treasury's conclusion that its jurisdiction is limited constitute *Brady* material and should have been produced to the defense.

Respectfully submitted,

**THE DEFENDANT,
JESSE C. LITVAK**

By: /s/ Ross H. Garber
    Ross H. Garber
    Fed. Bar No. ct17689
    SHIPMAN & GOODWIN LLP
    1 Constitution Plaza
    Hartford, Connecticut 06103
    Tel: (860) 251-5000
    Fax: (860) 251-5099
    E-mail: rgarber@goodwin.com

    Patrick J. Smith (admitted *pro hac vice*)
    Sarah B. Zimmer (admitted *pro hac vice*)
    DLA Piper LLP (US)
    1251 Avenue of the Americas, 27th Floor
    New York, New York 10020
    Tel.: (212) 335-4500
    Fax: (212) 884-8509
    E-mail: patrick.smith@dlapiper.com
           sarah.zimmer@dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2014 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Because the foregoing is filed under seal, the undersigned will serve a copy of this filing on all parties by e-mail.

                /s/ Ross H. Garber
                Ross H. Garber