UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | Crim. No. 3:13CR19(JCH) |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| JESSE C. LITVAK | : | January 17, 2014 |

## GOVERNMENT'S MOTION TO PRECLUDE DEFENDANT'S EXPERTS

Defendant's Expert Notice & Summary was due on November 8, 2013. Over a month and a half later, and only after issuance of another order by this Court, the defendant Jesse C. Litvak provided a deficient expert notice. Dec. 24, 2013 Expert Notice [hereinafter "Notice"] (attached as Exhibit A). Beyond being extraordinarily late, the proffered expert testimony fails to meet the requirements under Rule 702 and *Daubert* on numerous grounds. None of the testimony would be helpful to the jury, as most of the factual issues to be addressed by the experts are either irrelevant (*e.g.*, whether the victim made money *after* the sale at issue in this case, Notice at 7) or invade the jury's province by having a paid expert tell them what verdict to reach (*e.g.*, such "statements . . . are not material," Notice at 3). Accordingly, the Government respectfully requests that the Court preclude the defendant's proposed expert testimony.

## I.   THE EXPERT NOTICE IS EXTRAORDINARILY LATE

This Court entered a Scheduling Order on April 2, 2013, requiring that the defendants provide an expert notice and summary on October 18, 2013 [Doc. #36]. On October 17, 2013, the defendant moved for additional time [Doc/ #74], and the Court granted that request and set a deadline of November 8, 2013. [Doc. #81, 10/24/13] On November 8, the defendant provided the Government with what it purported to be a notice and summary, but which failed to comply with Rule 16. Recognizing as much, over a month later the defendant asked the Court for

permission to amend its expert notice until January 17, 2014. Def.'s Mot. for Extension [Doc. #105, 12/11/13]. This Court denied that motion, held that the existing expert notice did not satisfy Rule 16(b)(1)(C) and ordered the defendant to provide a proper expert notice on December 24, 2013. Order Denying Defendant's Motion for Extension of Time to Amend Defendant's Expert Notice [Doc. #118, 12/17/13]. The Court's order made clear that "[f]ailure to do so will result in experts not properly disclosed being precluded." *Id.*

Leaving aside the substantive defects in the defendant's amended expert notice, it is procedurally unfair for the Government to be forced to litigate the defendant's expert notice after jury selection, when it should be preparing its own case-in-chief. *Id.* ("Given the scope of the experts' opinions, . . . it will prejudice the government to receive disclosures on January 17, 2014, when jury selection is February 3, and evidence begins February 18."). This could have been avoided if the defendant's expert notice and summary was not over one-and-a-half months late. The defendant was indicted in January 2013 and had over eight months to prepare his expert notice. There is simply no excuse to have submitted it so late in the pre-trial process.

## II.  WILLNER'S EXPERT TESTIMONY SHOULD BE PRECLUDED

### A.  Willner's Proposed Testimony

Litvak's Notice provides that Ram Willner will testify about three major areas.

First, Willner would testify about "RMBS analysis and trading from the professional fund manager's experience." Notice at 2-3. This would include Willner describing "the process of selecting and valuing RMBS for inclusion in an investment portfolio" and opining that "statements from sell-side representatives or traders are . . . often misleading." *Id*. He also proposes to testify that such statements are "unworthy of consideration in trading decisions," and thus "are not material to a professional investment manager's decision-making." *Id.* at 3.

Second, Willner would provide his opinion regarding the "fair market value" of bonds, including that the prices paid for the "relevant RMBS transactions" were "in the context of the market and within the range of fair value" and did not take place at inflated prices. *Id.* at 3-7. Based on this, his proposed testimony would include his opinion that "no investment loss took place." *Id.* at 7.

Third, Willner would provide his opinion about the rate of return and net profits on the trades at issue, that is, how the bonds performed *after* the transactions alleged in the indictment took place. *Id.* at 7. Willner would testify that, based on his analysis, the "[a]lleged [o]vercharges did not have a significant impact on the attractiveness of the projected returns or actual net profits on the" bonds at issue," and thus "were not significant and did not have a meaningful impact on the funds' returns." *Id.* at 8.

### B.     Applicable Law

The admission of expert testimony is governed by Federal Rule of Evidence 702 and analyzed under the framework set out by the Supreme Court. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (holding that scientific expert testimony is admissible only if it "rests on a reliable foundation and is relevant to the task at hand"); *see also Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to non-scientific testimony and requiring "'technical' and 'other specialized' knowledge"). Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Decisions about what expert testimony is excluded on this basis are left to the sound discretion of the trial judge and are not set aside on appeal unless "manifestly erroneous." *United States v. Schwartz*, 924 F.2d 410, 425 (2d Cir. 1991). In other words, district courts are the "gatekeepers" when it comes to allowing expert testimony. *See, e.g.*, *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004). In determining whether proffered expert testimony is relevant, courts must decide whether the expert testimony "'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert*, 509 U.S. at 597). Under *Daubert*, 509 U.S. at 591, the appropriate inquiry is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."

Even expert testimony that is admissible under Rule 702 may still be properly excluded under Rule 403. *See Daubert*, 509 U.S. at 595 (holding that "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules," including Rule 403). Under Rule 403, relevant expert testimony may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003). "Expert testimony must be relevant . . . but even relevant expert testimony, like all relevant evidence, may be excluded under Fed. R. Evid. 403, if its probative value is outweighed by the danger that it would confuse the jury, be unfairly prejudicial, cause undue delay, waste judicial resources, or be cumulative." *United States v. Onumonu*, 967 F.2d 782, 786 (2d Cir. 1992).

Furthermore, the law in the Second Circuit is clear that an expert may provide an opinion to help the jury or the judge understand a particular fact, but may not offer testimony stating ultimate legal conclusions based on those facts. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.") (emphasis in original); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (stating in a securities fraud case that "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice"), *overruled on other grounds*, *United States v. Mandanici*, 205 F.3d 519 (2d Cir. 2000).

**C.     Discussion**

This Court should preclude Willner's testimony on all three subject matter areas set forth in the defendant's expert notice.

**1.     Materiality**

The defense clearly intends to call Willner to opine on a legal issue that is for the jury to decide, namely, the materiality of Litvak's misrepresentations. *See* Notice at 3 ("[S]tatements from sell-side sales representatives or traders are generally biased, often misleading, and unworthy of consideration in trading decisions. Accordingly, such statements from sell-side representatives or traders are not material to a professional investment manager's decision-making."). This proposed testimony is merely an attempt to use a retained witness to argue— under the guise of "expert testimony"—that Litvak is not guilty of engaging in a fraudulent scheme by knowingly making *material* misrepresentations. Litvak's counsel may cross-examine

the Government's fact witnesses in an effort to demonstrate to the jury what facts were or were not significant in their decision to negotiate and undertake trades with Litvak at certain prices; these are the *facts* are that are relevant to the jury's determination. But it would be improper for the defense to retain an "expert" to testify—based on his review of some, but not all, the facts—about legal and factual conclusions that only the jury is entitled to make. In short, Litvak is not entitled to use expert testimony to tell the "jury what result to reach." *See Bilzerian*, 926 F.2d at 1294 ("although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts").

Even shorn of its legal conclusions, Willner's testimony about the process a fund manager undertakes to select, analyze and value a particular bond that the fund wants to purchase or sell is not a disputed fact in this case, and therefore will not help the jury reach its decision. Professional RMBS investors—like the PPIF Managers who employed these witnesses—perform an evaluation of whether it their fiduciary duty to act in the best interests of their clients is served by pursuing a transaction in a bond at a particular time, based on its own analysis as to the range of prices where it would be willing to complete a trade. If asked, the Government's fact witnesses will so testify, and the defense has conceded that it will not dispute this fact. *See* Litvak's Omnibus Opposition to Government Motions in Limine [Doc. #109, 12/13/13] at 10 ("The defense has no knowledge of any evidence that these individuals [*i.e.*, Litvak's victims] failed to comply with professional standards or fiduciary obligations, and at this time, has no plans to advance any such arguments at trial."). *See Daubert*, 509 U.S. at 591 (holding that the appropriate inquiry is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute") (quoting *Daubert*, 509

U.S. at 591). Any testimony on a factual issue that is not disputed by the parties will not help the jury and should therefore be excluded under Rule 702.

Indeed, far from being helpful, such "expert" testimony will likely cause jury confusion, be cumulative and amount to a waste of time, and thus should be excluded under Rule 403. *See, e.g.*, *Onumonu*, 967 F.2d at 786. Repeatedly hearing the same testimony from the Government's fact witnesses, then from the defendant's expert witness about an irrelevant fact could lead the jury to believe that fact to be contested or of importance to their decision.

### 2. "Fair value"

Litvak also proposes to have Willner opine that the prices the victim-investors paid for the bonds at issue "were within the range of fair value" and "did not take place at inflated prices." The fair market value of the bonds bought and sold by Litvak using misrepresentations is simply irrelevant to the charges in the Indictment and thus should be excluded under Rule 702. Litvak is charged with lying about prices—causing his victims to pay too much to buy bonds or make too little when they sold bonds—in order to generate undisclosed and unearned compensation for the benefit of Jefferies and himself. The defense's proposed expert testimony about the "fair value price" of bonds based on historical prices in the market is utterly irrelevant to that charged conduct under Rule 401. There is no safe harbor under the federal securities laws for fraudulent transactions that a defendant can prove were executed within a range of potentially "fair" prices. *See* 3 Sand, Instruction 57-21 (setting forth elements of securities fraud); Government's Proposed Jury Instructions, at 19-21 [Doc. #92, 11/15/13]. In fact, the Government anticipates that its fact witnesses will testify that it is important to them to obtain best execution on trades, which means not just paying any price within the range of some "fair value price," but obtaining the best price possible under the circumstances in order to maximize returns for their clients.

Moreover, Willner's proposed "fair market value" testimony would violate the Second Circuit's prohibition on expert witnesses attempting to substitute their judgment for the jury's. Willner's proposes to testify that the "[a]lleged [o]vercharges did not have a *significant* impact on the attractiveness of projected returns or actual net profits." Notice at 8 (emphasis added). Thus, although even the defense's "expert" must concede, as a matter of fact, that Litvak's misrepresentations not only *could*, in fact *did*, have an impact on the victim-investor's evaluation of the attractiveness of a proposed transaction, Willner would tell the jury that impact was not "significant." Just like his proposed testimony that what he considers "minor variances in price would not have mattered to sophisticated investors," *id.* at 4, this is an issue of fact for the jury to determine based on the testimony of the percipient fact witnesses, not that of a paid expert who was not involved in the trades at issue. *See Hygh*, 961 F.2d at 363.

### 3. Profitability

Finally, Litvak would have Willner testify about his "analysis of rate of return and net profits" from the trades.

In essence, the defense intends to use this expert to introduce evidence of how the bonds fared after the transactions charged in the Indictment. Since there is no allegation that the victim-investors did not get the bond they sought to purchase, the market-based ramifications of what happened to a bond after the charged conduct is entirely irrelevant to the jury's determination. Whether a victim made or lost money on a bond that Litvak sold to it is not in the least bit helpful to the jury in determining whether Litvak made material misrepresentations in connection with that sale, and should therefore be precluded under Rule 702 and Rule 401.

Moreover, this testimony would be so confusing to the jury that it should be precluded under Rule 403. Letting an expert testify about post-offense events and the profitability of later transactions would potentially confuse the jury about whether loss is an element of the charged

crimes.  The defense is not entitled to introduce irrelevant "expert" testimony that creates confusion about what the issues to be decided in the case are and are not.  *See United States v. Onumonu*, 967 F.2d 782 (2d Cir. 1992) (expert testimony is subject to an analysis of danger of jury confusion under Rule 403).

    \*    \*    \*

Accordingly, this Court can and should preclude any expert testimony by Willner on the three subject areas set forth in defendant Litvak's expert notice and summary.  Alternatively, the Government requests a *Daubert* hearing to establish that the proposed testimony of Willner should be precluded under Rule 702, Rule 401 and Rule 403.

## III.    MENCHEL'S EXPERT TESTIMONY SHOULD BE PRECLUDED

### A.    Menchel's Proposed Expert Testimony

Litvak's has noticed as an expert Marc Menchel, the former General Counsel of FINRA, the Financial Industry Regulatory Authority, from 2002 to 2012.  Notice at 9.  His proposed expert testimony concerns three subject matter areas.

Menchel's first proposed area of testimony concerns securities industry terminology and practice.  Menchel claims that various terms in the indictment are "misplaced" or not "derived from" securities industry regulation.  Notice at 14.  Rather, the terms are "jargon used by market participants as part of a price negotiation."  *Id.*  His proposed testimony provides that a number of practices that the Government's fact witnesses will testify about—for example, the common practice of paying a broker-dealer a negotiated amount "on-top" of a trade price to compensate the broker-dealer for facilitating the transaction—are "not grounded in any regulatory guidance."  *Id.* at 15-16.  Notwithstanding Litvak's representations to this Court that he will not be advancing any "blame the victim" arguments, he would have Menchel testify that "[n]othing that Mr. Litvak did prevented any buyer from checking prices at other broker-dealers."  *Id.* at 17.

Menchel's second area of testimony the "importance of broker-dealer compliance function." *Id.* at 17. Menchel proposed testimony on this subject will include that, in general, "[i]nternal compliance training is important in brokerage firms." *Id.*

Menchel's third area of testimony concerns "trade specific opinions." *Id.* at 18-20. Notwithstanding that this is a case about Litvak's alleged misrepresentations, not omissions, Menchel's proposed testimony about Count Five of the Indictment would include his opinion that "neither Jeffries nor Mr. Litvak had any duty to disclose the price at which Jeffries acquired the Wells Fargo bond," or had "any duty to offer the Wells Fargo bond to Wellington at a price that was calculated in relation to its acquisition cost." *Id.* at 18. Menchel has no opinion about "[w]hether or not Mr. Litvak's sales tactics had any impact on the price negotiations and final execution price," although he would testify that Litvak's "statements about the fictitious seller do not relate to Jeffries historical acquisition cost." *Id.* Menchel has similar opinions about Counts One and Two. *Id.* at 19-20.

**B. Applicable Law**

For the applicable law, see part II.B, above.

**C. Discussion**

This Court should preclude Menchel's testimony for a number of reasons.

As a preliminary matter, Litvak intends to present Menchel as an expert "securities regulator" based solely on his ten years of experience as General Counsel for FINRA. Yet, to the Government's knowledge, Menchel has not obtained a waiver of the attorney-client privilege from FINRA. That allows Menchel to provide purportedly expert testimony from a "regulator's" perspective on the basis of enormous amounts of privileged information about which the Government will not be able to inquire on cross-examination. This is fundamentally unfair to the Government, and essentially allows the defense to present an expert who can testify about his

"experience" (no other basis for his testimony has been provided) that is off limits to specific inquiry. This should not be allowed.

In any event, Menchel's testimony should be precluded under Rules 702 and Rules 401 and 403, as well.

### 1. Regulations

Menchel's testimony about industry regulations and whether or not market "jargon" is based on such regulations is not relevant to a prosecution for a violation of federal securities laws. FINRA regulations are not a predicate for a prosecution of the federal securities laws, just as a violation of Generally Accepted Accounting Principles is not required in an accounting fraud prosecution brought under the securities laws. *See United States v. Ebbers*, 458 F.3d 110, 125-26 (2d Cir. 2006). The matter before the Court is a criminal case accusing Litvak of violating (among other federal statutes) securities fraud laws that incorporate Rule 10b-5, not a FINRA disciplinary hearing about whether industry regulations were followed. Menchel's testimony is irrelevant under Rule 401. *See Ebbers*, 458 F.3d at 125-26 ("the [securities fraud] statute requires proof only of intentionally misleading statements that are material, *i.e.*, designed to affect the price of a security").

Indeed, this testimony would be so irrelevant that it also should be precluded under Rule 403. It would be exceedingly confusing for a jury to hear testimony about what terms and practices are and are not "grounded" in the regulations, after hearing evidence about the actual terms and practices used by the parties to the transactions at issue. To the extent that Menchel's testimony is meant to inform the jury of how bond transactions ought to be conducted, it is simply inconsistent with how everyone—including Litvak—undertook transactions, used the terms in question during those transactions and thought of the compensation being paid to Litvak and Jefferies. *See Daubert*, 509 U.S. 591 (stating that the appropriate inquiry is "whether expert

testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

Menchel's irrelevant regulations testimony is divorced from the facts underlying the events at issue and so potentially confusing that it will be completely unhelpful to the jury's determination of any disputed issue of fact, and thus in inappropriate expert testimony under Rule 702.

### 2. Importance of Compliance

It impossible to determine the point of Menchel's proposed testimony about the "importance of compliance." At the very least, there is no apparent disputed issue of fact that this testimony will assist the jury in determining, and therefore it should be precluded.

### 3. Count-Specific Testimony

Menchel's opinions about Counts One, Two and Five have nothing to do with the facts underlying those alleged instances of securities fraud, TARP fraud and false statements.

Menchel would testify that Litvak did not have a duty to disclose the price at which Jeffries acquired the bonds at issue. But this is not an omissions case. The Government's case is about affirmative misrepresentations of allegedly material facts that Litvak made in connection with the purchase or sale of securities. The absence of a duty to disclose in those transactions does not provide a factual or legal excuse for Litvak's affirmative misrepresentations, and presumably not even Menchel would say otherwise. The defense is not entitled to use "expert" testimony to create juror confusion about the nature of the Government's case.

Since Menchel's testimony about these three transactions has nothing to do with the actual facts of this case, it should be precluded.

**Conclusion**

For the foregoing reasons, this Court should preclude the so-called expert testimony of Willner and Menchel. Alternatively, the Government requests that the Court hold a *Daubert* hearing so that it can show the inadmissible nature of this proposed expert testimony.

>
> Respectfully submitted,
>
> DEIRDRE M. DALY
> UNITED STATES ATTORNEY
>
> /s/
> ERIC J. GLOVER
> ASSISTANT UNITED STATES ATTORNEY
> Federal Bar No. CT23923
> eric.glover@usdoj.gov
>
> JONATHAN N. FRANCIS
> ASSISTANT UNITED STATES ATTORNEY
> Federal Bar No. phv05083
> jonathan.francis@usdoj.gov
>
> 157 Church Street, 25th Floor
> New Haven, CT 06510
> Tel.: (203) 821-3700

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 17, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/
ERIC J. GLOVER
ASSISTANT UNITED STATES ATTORNEY