IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:13CR19 (JCH) |
| v. | |
| JESSE C. LITVAK | January 31, 2014 |

**DEFENSE OBJECTIONS TO GOVERNMENT EXHIBITS**

Pursuant to the Court's January 10, 2014, Order, Defendant Jesse C. Litvak files this memorandum to set forth the defense's objections to certain proposed government exhibits ("GX"), and to apprise the Court of various discussions held between the parties. As set forth in part below, several of the objections raised by both sides are still the subject of ongoing discussions and negotiations between the parties, and the parties are hopeful that we can resolve or at least narrow those disputes before imposing on the Court to resolve them. Throughout the process of conferring on these issues, the parties have narrowed or withdrawn certain objections, reached agreements in principle on several stipulations that should save substantial time at trial, agreed on the admissibility of certain categories of documents, and otherwise made some progress towards narrowing the evidentiary issues in dispute.

The government has proposed what it refers to as 146 "exhibits." Because of the government's practice of including multiple discrete documents within a single exhibit (sometimes as many as 20 different documents within a single exhibit), those 146 exhibits comprise in excess of 300 different documents.[1] Following fruitful discussions with the

---

[1] Subsequent to recent conversations with the government, we are in the process of removing from our exhibit list certain exhibits, after which the number of documents on the list of exhibits the defense may seek to admit in its case-in-chief (if any) will also be roughly 300.

government, the number of government exhibits (contained on the government's January 24 exhibit list) to which we currently object is just 27.[2]

### A. The Defendant Objects to Exhibits Reflecting Mr. Litvak's Compensation

As the Court will recall, we moved *in limine* to preclude evidence relating to Mr. Litvak's compensation at Jefferies & Co., Inc. ("Jefferies") as irrelevant and unfairly prejudicial. (*See* Memorandum of Law in Support of Jesse C. Litvak's Motions *In Limine* [Doc. No. 104-1] ("Def. *In Limine* Mem.") at 1-3). During the January 10 pretrial conference, the Court ruled that evidence of whatever portion of Mr. Litvak's compensation that the government can "link" to his criminal conduct, "[t]o a financial gain which equals motive," may be admissible. (Transcript of Jan. 10, 2014, Pretrial Conference ("Tr.") at 35 ("THE COURT: My understanding is the government is going to seek to lay a foundation which demonstrates . . . there's [a] fraudulent transaction, one, [and] it led to eventually more money in Litvak's pocket. That's what I mean by laying a foundation.")). The Court directed that the government seek to lay the necessary "foundation about how, if at all, Mr. Litvak is compensated without reference to the numbers of what he's compensated but to what factors affect his rate of compensation." (Tr. at 42). Given the ruling, the government then agreed not to mention specific dollar figures in its opening statement, while reserving the right to argue generally "financial motive." (Tr. at 42-43).

Several government exhibits reveal the total compensation received by Mr. Litvak for several years, the overwhelming majority of which is not alleged by the government to be linked even theoretically to any alleged fraudulent conduct. For the reasons stated in our motion *in limine* and argued at the January 10 conference (incorporated herein by reference), we object to

---

[2] Mr. Litvak respectfully reserves his right to object to the admission of any proffered evidence at trial. Because the number of uncharged transactions that the prosecution will be permitted to prove up at trial is still in flux, the objections set forth herein do not address any of the exhibits relating to these uncharged transactions at this time.

any proposed exhibits that describe Mr. Litvak's compensation, including specifically proposed GX 203 (Bates numbers JEFF SGTP 371618-27) and GX 204 (JEFF SGTP 002540-41 only).

### B. Copies of Extraneous Regulations and Statutes Should Not Be Given to the Jury as Exhibits

We also object to proposed GX 331 through GX 335 (various statutes and regulations), also for the reasons stated in our motion *in limine*. (*See* Def. *In Limine* Mem. at 9). As the Court observed at the pretrial conference:

> I don't usually admit into evidence a statute or a regulation. That's an unusual concept in my experience in the [D]istrict of Connecticut. That's a matter for the charge. I don't give the jury copies of the statute. What are they going to do with it? . . . I tell the jury what the law is. I tell them how to decide whether the crime was committed here or not.

(Tr. at 62). Courts do not generally hand lay jurors swaths of statutes or regulations for just these reasons. The inevitable result is hopeless confusion. *See generally Baines v. Maddock*, 2007 WL 2994802, at *1 (S.D. Cal. Oct. 11, 2007) (granting defendant's motion to exclude Prison Litigation Reform Act of 1995 and various regulations on the grounds that they are irrelevant and would confuse the jury).

The inadmissibility of the statutes and regulations offered by the government is underscored by the fact that those materials are (a) largely irrelevant and (b) prejudicial. The government should be precluded from offering 31 CFR Section 31.1 *et seq.* (GX 335) because it is plainly irrelevant. For example, 31 CFR Section 31.200 has a well-defined scope limitation that does not reach the Public-Private Investment Funds (the "PPIFs") at issue here. Section 31.200 states that "[t]his regulation addresses actual and potential conflicts of interest, or circumstances that give rise to the appearance of a conflict of interest, that may arise from *contracts* and *financial agency agreements* between private sector entities and the Treasury for services under the TARP" (emphasis added). 31 CFR § 31.200(b). When establishing the

3

Public-Private Investment Program, the Department of Treasury specifically determined that PPIFs "are not contractors or financial agents being paid for goods and services, and were not selected under the FAR [Federal Acquisition Regulation] authority or a financial agent process."[3] While the Department of Treasury did enter into Limited Partnership contracts with the PPIF fund managers, these were not contracts that involved the procurement of goods and services because of Treasury's determination that the Federal Acquisition Regulation ("FAR") was inapplicable.[4] Because Treasury had also determined that it was an "investment counterparty" of the PPIFs—as opposed to the recipient of goods or services under a procurement contract or financial agency agreement—the scope limitation of 31 CFR Section 31.200 means that that regulation clearly has nothing whatever to do with the Public-Private Investment Program ("PPIP"). Even if it did, it would not apply to Mr. Litvak, who was not an employee of any entity subject to any government conflict of interest regulation. The admission of GX 335 would create confusion on that issue, and it should therefore be excluded under FRE 403.

Additionally, 12 U.S.C. Section 5201 *et seq.* (GX 331) should also be excluded because it presents a strong risk of misleading the jury and unfairly prejudicing Mr. Litvak. *See* FRE 403. The statute states that the purposes of the Emergency Economic Stabilization Act ("EESA") are to "protect home values, college funds, retirement accounts, and life savings," and

---

[3] *See* Selecting Fund Managers for the Legacy Securities Public-Private Investment Program, Special Inspector General for the Troubled Asset Relief Program ("SIGTARP's Selecting Fund Managers Report"), Oct. 7, 2010, at 29, *available at* www.sigtarp.gov/Audit%20Reports/Selecting%20Fund%20Managers%20for%20the%20 Legacy%20Securities%20Public-Private%20Investment%20Program%2009_07_10.pdf (last visited Jan. 31, 2014). *See also* Congressional Oversight Panel, October Oversight Report, Examining Treasury's Use of Financial Crisis Contracting Authority, Oct. 14, 2010, at 5, n.5 ("PPIP arrangements are, strictly speaking, recipient funding under a TARP program. Agreements and contracts involve the expenditure of money in return for services, whereas recipient funding is an investment from which Treasury expects a return.").

[4] The Federal Acquisition Regulation ("FAR") defines a contract as "a mutually binding legal relationship obligating the seller to *furnish the supplies or services* (including construction) and the buyer to pay for them." 48 CFR § 2.101 (emphasis added).

"preserve[] homeownership and promote jobs and economic growth." 12 U.S.C. §§ 5201(2)(A) – (B). Mr. Litvak's allegedly false statements had nothing to do with jeopardizing college funds, home values, or homeownership, and the government has never alleged otherwise. Considering the lack of probative value of this provision, it should be excluded as unduly prejudicial.

For all of these reasons, GX 331-35 should be stricken from the government's exhibit list. To the extent any of these (or other) statutes are truly at issue in the case, the proper course is for the Court to instruct the jury on what law it needs to know about under the facts of this case, just as the Court would in any other matter.

### C. Certain Exhibits Relating to the PPIP Program Are Needlessly Cumulative and Prejudicial

The government identified a total of 29 exhibits in the GX 300 range, apparently offered to reflect Mr. Litvak's general knowledge of the PPIP that was part of the Troubled Asset Relief Program. Many of these 29 documents are replete with irrelevant discussions, salty language, and other prejudicial materials, yet have only passing reference to the PPIP (sometimes only a few words out of multi-page documents). We have a general objection to all 29 exhibits as cumulative and unduly prejudicial. In our discussions with the government, we objected in particular to 19 of these 29 under Federal Rule of Evidence ("FRE") 403, but suggested that to avoid burdening the Court with a close examination of fairly lengthy documents, we would not object to the 10 remaining exhibits if the government withdrew those 19 exhibits. The

government has indicated that they will present us with a counterproposal soon.  We hope that the parties may be able to reach a compromise resolution without troubling the Court.[5]

---

[5] As the Court will no doubt see when the government files its objections to the exhibits that the defense has identified as those it may seek to offer during its case-in-chief (if any), the government objected to a very large percentage of the defense's case-in-chief exhibits.  During our discussions with the government, the parties jointly agreed to propose to the Court, subject of course to the Court's approval, that we defer seeking rulings on those defense case-in-chief exhibits as to which the government objects on FRE 401 relevance grounds until after the trial has commenced because both parties anticipate that the relevance (or, by the government's lights, the lack thereof) of certain categories of documents will crystalize fairly early on in the government's case.  It is our intention to resolve any such objections to the exhibits on our list well in advance of the commencement of the defense's case-in-chief (if any).  A large portion of the exhibits to which the government objected to (over 250) are Bloomberg "chats" and e-mails.  The defense believes that they are admissible pursuant to FRE 803(6) as business records.  But the parties also agreed that some portion of these exhibits—and the defense believes it to be a large portion—are likely admissible for non-hearsay purposes.  Rather than go to the Court with such a large number of exhibits in dispute, the parties have agreed to try to resolve the admissibility for non-hearsay purposes of as many of these exhibits as possible on a document-by-document basis.  We have agreed to then address the subset of such exhibits the defense might seek to admit for the truth of any matter asserted.   We have agreed to use our best efforts to resolve as much as possible well in advance of the commencement of the defense's case-in-chief (if any).  The parties have jointly agreed that this is a commonsensical approach that maximizes efficiency, and will hopefully minimize the judicial resources necessary, subject as always to the Court's approval.

Respectfully Submitted,

**THE DEFENDANT,
JESSE C. LITVAK**


By:   /s/ Ross H. Garber
      Ross H. Garber
      Fed. Bar No. ct17689
      SHIPMAN & GOODWIN LLP
      1 Constitution Plaza
      Hartford, Connecticut  06103
      Tel:  (860) 251-5000
      Fax:  (860) 251-5099
      E-mail:  rgarber@goodwin.com

      Patrick J. Smith (admitted *pro hac vice*)
      John M. Hillebrecht (admitted *pro hac vice*)
      Sarah B. Zimmer (admitted *pro hac vice*)
      DLA Piper LLP (US)
      1251 Avenue of the Americas, 27th Floor
      New York, New York  10020
      Tel.:  (212) 335-4500
      Fax:  (212) 884-8509
      E-mail:  patrick.smith@dlapiper.com
             john.hillebrecht@dlapiper.com
             sarah.zimmer@dlapiper.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was filed electronically under seal and served by e-mail on all parties. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

                                            /s/ Ross H. Garber
                                                Ross H. Garber