# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:13CR19 (JCH) |
| v. | |
| JESSE C. LITVAK | September 29, 2014 |

**DEFENDANT JESSE C. LITVAK'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR ENTRY OF ORDER OF RESTITUTION**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

    I.     A Restitution Order is Not Authorized for Non-Title 18 Offenses ....................... 2

    II.    None of the Offenses Supports a Restitution Order Because the Government Has Not Proven Actual Loss ................................................................. 4

    III.   Several Additional Factors Strongly Counsel Against a Restitution Order ........... 9

        A.    In Imposing its Financial Penalty, the Court Relied on the Government's Repeated Assurances that Any Restitution Would be Paid by Jefferies ........................................................................................... 9

        B.    Restitution is Plainly Overstated Because of the Speculative Nature of the Government's Evidence .................................................................. 11

        C.    Mr. Litvak Has Limited Financial Resources From Which to Pay an Order of Restitution ................................................................................. 12

        D.    The Government Offered No Victim Impact Statements at Sentencing ................................................................................................ 13

CONCLUSION .............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*U.S. v. Helmsley*,
   941 F.2d 71 (2d Cir. 1991) ................................................................................................3

*United States v. Arutunoff*,
   1 F.3d 1112 (10th Cir. 1993) .............................................................................................8

*United States v. Bengis*,
   2006 WL 3735654 (S.D.N.Y. 2006) .................................................................................3

*United States v. Bengis*,
   2007 WL 241370 (S.D.N.Y. 2007) ...................................................................................3

*United States v. Beydoun*,
   469 F.3d 102 (5th Cir. 2006) .............................................................................................8

*United States v. Boccagna*,
   450 F.3d 107 (2d Cir. 2006) ..........................................................................................5, 7

*United States* v. *Catoggio*,
   326 F.3d 323 (2d Cir. 2003) ........................................................................................5, 12

*United States v. Chalupnik*,
   514 F.3d 748 (8th Cir. 2008) ........................................................................................5, 7

*United States v. Cummings*,
   189 F. Supp. 2d 67 (S.D.N.Y. 2002) .................................................................................2

*United States v. Cuti*,
   2011 WL 3585988 (S.D.N.Y. July 29, 2011) ...................................................................2

*United States v. Dupes*,
   513 F.3d 338 (2d Cir. 2008) ..............................................................................................3

*United States v. Finazzo*,
   2014 WL 3818628 (E.D.N.Y. 2014) .................................................................................2

*United States v. Germosen*,
   139 F.3d 120 (2d Cir. 1998) ..............................................................................................5

*United States v. Hernandez*,
   2009 WL 113267 (D. Conn. Jan. 15, 2009) .............................................................5, 8, 12

*United States v. Hsu*,
    669 F.3d 112 (2d Cir. 2012)..................................................................................................5

*United States v. Liss*,
    265 F.3d 1220 (11th Cir. 2001) .........................................................................................5, 6

*United States v. Reifler,*
    446 F.3d 65 (2d Cir. 2006)...................................................................................................5

*United States v. Silkowski*,
    32 F.3d 682 (2d Cir. 1994)...................................................................................................6

*United States v. Zangari,*
    677 F.3d 86 (2d Cir. 2012)................................................................................................2, 6

**Statutes**

15 U.S.C. § 78ff..............................................................................................................................1

15 U.S.C. § 78j(b) ..........................................................................................................................1

18 U.S.C. § 1001.........................................................................................................................1, 3

18 U.S.C. § 1031.........................................................................................................................1, 3

18 U.S.C. § 3556.............................................................................................................................2

18 U.S.C. § 3572(a) ........................................................................................................................9

18 U.S.C. § 3663...................................................................................................................*Passim*

18 U.S.C. § 3663A..........................................................................................................................2

18 U.S.C. § 3664...................................................................................................................5,6, 12

**PRELIMINARY STATEMENT**

At the July 23, 2014 sentencing hearing in this case, the government assured the Court that restitution would be a non-issue or at most a small amount. Accepting the government's representations, the Court imposed a substantial fine of $1.75 million, which Mr. Litvak promptly paid. The government now seeks a restitution order of more than $1.6 million, an amount that vastly exceeds what it told the Court in July and is nearly as much as the criminal fine. Worse, the government fails to note that the Court is not authorized to include the vast majority of the amount it seeks as part of a restitution order. This is so because in 17 of the 20 trades, the counterparties were purely private investment funds and, consequently, victims only of the Title 15 securities fraud offenses, for which a restitution order is not authorized. Further, restitution is not authorized for any of the identified trades, including the three transactions with Public-Private Investment Program ("PPIP") funds, because the government has failed to demonstrate actual loss. For the reasons outlined below, the Court should decline to issue an order of restitution.

**BACKGROUND**

On January 25, 2013, a Federal grand jury in the District of Connecticut indicted the defendant Jesse C. Litvak on eleven counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff (Counts 1 through 11); one count of major fraud against the Troubled Asset Relief Program ("TARP"), in violation of 18 U.S.C. § 1031 (Count 12); and four counts of making a false statement in a matter within the jurisdiction of the United States Department of Treasury ("Treasury"), in violation of 18 U.S.C. § 1001 (Counts 13 through 16). On February 17, 2014, the government moved to dismiss Count 7, which motion was granted by the Court the following day. Trial commenced on February 18, 2014, and on March 7, 2014, the jury returned a verdict of guilty on all counts.

1

On July 23, 2014, Mr. Litvak was sentenced to a 24-month term of imprisonment and a subsequent three-year term of supervised release. Mr. Litvak was also ordered to pay a fine of $1.75 million, which he paid in full within 30 days of sentencing. The Court ordered the government to submit a proposed restitution order within 45 days of sentencing, and on September 6, 2014, the government filed a Motion for Entry of Order of Restitution for $1,604,088.47 in connection with 20 transactions and 14 identified victims. [Doc. No. 285 ("Gov. Mem.")]. Mr. Litvak respectfully submits this memorandum of law in opposition to the government's motion.

## ARGUMENT

**I.     A Restitution Order is Not Authorized for Non-Title 18 Offenses**

The court, in imposing a sentence on a defendant who has been found guilty of an offense, may order restitution in accordance with Section 3663, and shall order restitution in accordance with Section 3663A. 18 U.S.C. § 3556. The offense for which a restitution order is being sought under either section *must* be a crime under Title 18 or some other enumerated offense. 18 U.S.C. § 3663A(c)(1)(A)(ii); 18 U.S.C. § 3663(a)(1)(A). A federal district court lacks the power to order restitution in circumstances not authorized by statute. *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012).

The securities fraud charges for which Mr. Litvak was convicted are Title 15 offenses and thus, cannot serve as the basis for a restitution order under either section. *United States v. Cuti*, 2011 WL 3585988 at *6 n.9 (S.D.N.Y. July 29, 2011) (finding that the MVRA and VWPA do not apply to a defendant only convicted of the substantive offense of Securities Fraud under Title 15); *United States v. Cummings*, 189 F. Supp. 2d 67, 73-75 (S.D.N.Y. 2002) (restitution may not be ordered for a substantive violation of the securities laws although it may be ordered for a charge of conspiracy to commit securities fraud); *United States v. Finazzo*, 2014 WL

2

3818628 at *13 (E.D.N.Y. 2014) (restitution may be awarded for a violation of the conspiracy statute even though it could not be awarded for the underlying predicates); *United States v. Bengis*, 2006 WL 3735654 at *3 (S.D.N.Y. 2006) (report and recommendation adopted by Judge Kaplan in *United States v. Bengis*, 2007 WL 241370 at *1 (S.D.N.Y. 2007), *rev'd on other grounds*, 631 F.3d 33 (2d Cir. 2011) (non-Title 18 offenses do not independently trigger the Mandatory Victim Restitution Act).[1]

The only Title 18 offenses in this case were charged in Count Twelve, the TARP Fraud charge (Title 18, U.S.C. § 1031) and in Counts Thirteen through Sixteen, the false statement charges (Title 18, U.S.C. § 1001). A purely private investment fund was not a victim of either of these Title 18 offenses, each of which by definition involved conduct directed toward the United States government, or agency thereof, as a victim. The RMBS bond sale transactions between Jefferies and these wholly private entities do not fall into "any other form of Federal assistance, including through the Troubled Asset Relief Program" as defined by 18 U.S.C. § 1031. And the false statements associated with the Section 1001 counts, which are not loss causing offenses in any event, cannot serve as the basis for restitution for any of these transactions because none of these entities is the United States purchasing a troubled asset in connection with the PPIP. Only the PPIP investment funds qualify as victims of the Title 18 offense convictions in this case.

Of the 20 transactions listed in Exhibit 1 to the government's memorandum ("Exhibit 1"), 17 transactions were with non-PPIP investment funds. Thirteen of these 17 transactions had no connection whatsoever to any PPIP manager. The remaining four were with funds that were

---

[1] *United States v. Dupes*, 513 F.3d 338 (2d Cir. 2008), is not to the contrary. In *Dupes*, the defendant pleaded guilty to a Title 18 conspiracy charge, which authorized the court to order restitution under the MVRA. *See U.S. v. Helmsley*, 941 F.2d 71, 101 (2d Cir. 1991), *cert denied*, 112 S.Ct. 1162 (1992) (while non-title 18 offenses are not covered by the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, a title 18 conspiracy to commit such an offense would allow a court to impose restitution under the VWPA).

managed by a PPIP manager, but the fund that was the actual customer was a non-PPIP fund. These include two trades with a Blackrock-managed fund, one trade with an AllianceBernstein-managed fund, and one trade with a Marathon-managed fund—none of which was for a PPIP fund.[2]  Confirmation that these trades were non-PPIP transactions may be found in both Government Exhibit 336, the Bank of New York custodian report that lists each and every PPIP RMBS trade, as well as the monthly reports to Treasury submitted by PPIP managers.  None of these trades appears in these materials, which were provided in discovery but not admitted at trial.[3]  The government-calculated restitution demand for these 17 trades totals $1,452,831.88 or more than 90% of the government's restitution calculation.  Plainly, to the extent these non-PPIP investment funds were victims, they were victims only of the Title 15 securities fraud scheme.

The Court's power to impose an order of restitution flows from statute.  In this case, that power is limited by statute to the victims of the Title 18 charges and therefore lacking as to the non-PPIP funds.  With respect to the government's application for an order of restitution, the only question before the Court is whether the Court should issue an order as to the three trades that were with PPIP funds, which would qualify as victims of a Title 18 offense.  The government tabulated restitution amount associated with these trades is $151,256.59.[4]

## II. None of the Offenses Supports a Restitution Order Because the Government Has Not Proven Actual Loss

The government has not demonstrated that any victim, including the victims of the remaining three transactions with PPIP funds, suffered an actual loss.  In moving the court to

---

[2] These four transactions include:  (1) Blackrock WMALT 2007-OC1 A1 trade on May 5, 2009 (Ex. 4 to Gov. Mem.); (2) Blackrock BSARM 2007-4 22A1 trade on March 26, 2010 (Ex. 8 to Gov. Mem.); (3) Marathon WAMU 2005-AR15 A1B2 trade on December 8, 2010 (Ex. 20 to Gov. Mem.); and (4) AllianceBernstein HVMLT 2005-7 1A1 trade on December 21, 2010 (Ex. 21 to Gov. Mem.).

[3] The Blackrock WMALT 2007-OC1 A1 trade on May 5, 2009, is not listed in a PPIP monthly report because Blackrock's PPIP fund was created in October 2009.

[4] These three trades are the following:  (1) WAMCO RALI 2006-QA1 A11 trade on May 21, 2010 (Ex. 9 to Gov. Mem.); (2) AllianceBernstein HVMLT 2007-7 2A1A trade on January 12, 2011 (Ex. 11 to Gov. Mem.); and (3) WAMCO CMLTI 2006-AR5 2A1A trade on May 19, 2010 (Ex. 16 to Gov. Mem.).

impose an order of restitution, "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the attorney for the government." *United States v. Hernandez*, 2009 WL 113267 at *2 (D. Conn. Jan. 15, 2009) (citing 18 U.S.C. § 3664(e)). And while the facts used by the court to calculate restitution need not be found by a jury beyond a reasonable doubt, mere speculation is impermissible. *Id.*; *United States v. Reifler*, 446 F.3d 65, 116 (2d Cir. 2006). The Second Circuit has noted that "[t]he analysis [under the application notes of 2B1.1] is thus appropriately distinct from that implicated in calculating an award of victim restitution." *United States v. Hsu*, 669 F.3d 112, 121 n.3 (2d Cir. 2012). While the Sentencing Guidelines permit less definite figures to be used in estimating loss for purposes of the Sentencing Guidelines, the rules governing restitution limit the court to consideration of actual, discrete and provable losses, which are absent here. *United States* v. *Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003); *see also Hernandez*, 2009 WL 113267 at *2 n.3 (to order restitution, the court must be able to accurately gauge each victim's loss while avoiding overpayment). Indeed, "[a]n award of restitution must be based on the amount of loss actually caused by the defendant's conduct," and is limited to "the victim's provable actual loss." *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001); *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008). Furthermore, as "the purpose of restitution is essentially compensatory," *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006), restitution is limited to "the full amount of each victim's loss." 18 U.S.C. § 3664(f)(1)(A). It follows that in the absence of actual loss, an order of restitution is unwarranted. Here, the government failed to prove actual loss and cannot rely on any victim's theoretical "disappointed expectations" of obtaining a better price in seeking restitution. *Boccagna*, 450 F.3d at 119; *United States v. Germosen*, 139 F.3d 120, 130 (2d Cir. 1998).

5

While the Court ultimately made a finding of loss under the Guidelines for sentencing purposes, it largely relied on *intended* not actual loss, which is not sufficient for restitution purposes. *See* Sentencing Tr. at 52:8-12. Respectfully, the Court is not authorized to make a loss finding under 18 U.S.C. §§ 3663-3664 because *actual* loss has not been established. *Zangari*, 677 F.3d at 91; *Liss*, 265 F.3d at 1231; *United States v. Silkowski*, 32 F.3d 682, 688 (2d Cir. 1994) ("Where the issue is the amount of loss to be repaid by a defendant under a restitution order, . . . the scope of conduct that a district court may consider in determining the amount of loss is governed by different considerations than those set forth in the . . . Guidelines."). When making its loss finding for sentencing purposes, the Court expressed uncertainty with respect to estimating loss:

> And so the question then reverts under either of those two prongs, how do we estimate the loss. As Attorney Smith has argued, and the government's counsel, I mean, we don't know. We don't know because that's not what happened. But the fact is we will never know in fraud situations what would happen in reality.

Sentencing Tr. at 53:20-25. The Court further acknowledged the indeterminate nature of loss by stating, "I want to put on the record that—and I actually thought about this because I will tell you, at some point in my consideration of this case, I was thinking about the loss being zero." *Id.* at 159:15-18.

The government did not prove actual or intended loss at trial or in connection with Mr. Litvak's sentencing. At trial, the government contended that Mr. Litvak's tactics operated as a fraud because investors did not have truthful information about Jefferies's profits on each trade, and that as a result, Jefferies made more in "secret profits" on each trade. Masking Jefferies's profits on the transactions at issue, however, does not create any harm or economic loss for the counterparties who exchanged cash for fairly valued assets, which the government has conceded

6

was the case here.[5] The Second Circuit has held that fair market value is the "best measure to ensure restitution in the 'full amount' of the victim's loss." *Boccagna*, 450 F.3d at 109. Because each counterparty paid or received fair market value for the bonds at issue, restitution is unwarranted. At sentencing, the government's theory was that "but for" the offense conduct, the trades would have been more profitable for the victim investors—a theory that depends upon a finding that absent the misrepresentations, the transactions would have taken place at a lower price with the "savings" passed along to the investors. While such a result is theoretically possible, it is unrealistic to conclude firmly that the negotiations would have turned out that way. And as the Court acknowledged, there simply is no way to know. Sentencing Tr. at 53:20-25. Because none of Mr. Litvak's counterparties incurred out-of-pocket loss, none can be considered a victim for restitution purposes.

While the fact that a defendant profited from the crime without causing actual loss to a victim may be an appropriate reason to increase his punishment, the plain language of the restitution statutes confirms that punishment of a criminal defendant must be imposed by means of criminal penalties such as fines and imprisonment whereas restitution must be based on the amount of loss *actually caused* by the defendant's offense. *Chalupnik*, 514 F.3d at 754-55 (vacating restitution order under the MVRA because while victim suffered a "lost opportunity" when the defendant stole its undeliverable CDs and sold them to competing retail sellers, it would be a windfall to award victim restitution for what was, in reality, a collective injury resulting from copyright infringement). The Court has adequately addressed the concern that Mr. Litvak's compensation may have been favorably affected from the offense conduct through both the term of imprisonment imposed and the substantial $1.75 million fine. In calculating the

---

[5] *See* Opp. Mem. to Gov. Mot. to Preclude Defendant's Experts at 19 [Doc. #164] (citing Transcript of Jan. 10, 2014 Hearing at 101:9-10).

fine amount, the Court observed that it was estimating "double what [it thought] the gain to [Mr. Litvak] was." Sentencing Tr. 158:23-159:4.

Furthermore, restitution is not intended to provide a victim with a windfall. *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993) (restitution is not intended to "punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole"); *Hernandez*, 2009 WL 113267 at *2 n.3 (to order restitution, the court must be able to accurately gauge each victim's loss while avoiding overpayment); *United States v. Beydoun*, 469 F.3d 102, 107–108 (5th Cir. 2006) (victim should not receive more in restitution than actual loss). The statute authorizes restitution only for the value of the property lost less the value of any property returned. 18 U.S.C. § 3663(b)(1). Aside from the tremendous profitability of the transactions at issue, which negates any tangible loss of property argument, awarding investors restitution would provide some with an even greater windfall because Jefferies has already reimbursed investors in connection with previously settled transactions. The settlement figures that correspond with those transactions included Jefferies's *entire* spread on the transactions, not just the amounts attributed to the "loss" as calculated by the government. In its proposed restitution order, the government is seeking $73,785.34 in connection with two trades between AllianceBernstein and Jefferies that have not been settled to date. The 11 transactions covered by Jefferies's settlement agreement with AllianceBernstein, which also concern Mr. Litvak, provided AllianceBernstein with $137,154.19 in excess to the entity's "loss," as calculated by the government.[6] This figure is far greater than the amount of restitution sought by the government. Under these circumstances, ordering Mr. Litvak to

---

[6] Similarly, Jefferies settled with certain non-Title 18 offense victims such as Magnetar, offering it the same deal—reimbursement for Jefferies's total profits—generating a windfall for Magnetar in the amount of $125,941. This figure dwarfs the $47,294.84 the government is seeking in restitution from Mr. Litvak.

8

overcompensate victims such as AllianceBernstein would be plainly unfair and at odds with the compensatory design of a restitution order.

### III. Several Additional Factors Strongly Counsel Against a Restitution Order

The Court should decline to issue an order of restitution for the remaining three transactions for the following reasons: (1) when imposing its fine, which Mr. Litvak promptly paid, the Court relied on the government's numerous assertions that Jefferies would pay restitution, if any; (2) the government has failed to prove loss and the evidence on which it relies for restitution purposes is largely speculative; (3) after paying the $1.75 million fine with the proceeds of the sale of his Long Island home, Mr. Litvak does not have the financial resources to pay restitution; and (4) no victims came forward at sentencing to express dissatisfaction with the transactions at issue or to dispel the notion that they would do the trades again at the very same prices. In addition, to the extent the Court has discretion to order restitution as a condition of supervised release, it should for these reasons decline to exercise that discretion here.

#### A. In Imposing its Financial Penalty, the Court Relied on the Government's Repeated Assurances that Any Restitution Would be Paid by Jefferies

One of the factors that courts shall consider when determining whether to impose a fine and the amount, time, and method of payment is whether restitution is ordered and the amount of restitution. *See* 18 U.S.C. § 3572(a); U.S.S.G. § 5E1.2. This is precisely why the Court asked the government to explain how the Court could impose a fine without knowing the proposed restitution amount. *See* Sentencing Tr. at 44:13-21 ("[I]f the restitution here—and this is hypothetical—was $20 million, I'm not going to impose a fine, right? So I need to know the restitution issue before I can decide [] a fine."). When ordering the significant financial penalty of $1.75 million, which, in the Court's estimate, represents approximately *double* the gain Mr. Litvak earned on the offense trades, Sentencing Tr. 158:23-159:4, the Court relied on the

9

government's assurances that while $2.1 million of government-calculated loss remained outstanding, "it [was] absolutely the case that restitution [was] likely to be very small, if anything, as compared to the fine [the government] advocate[ed] for." Sentencing Tr. at 45:15-46:2. Regarding the need for the Court to make findings with respect to restitution, the attorney for the government stated to the Court: "My hope is no. Jefferies will have paid such significant amounts that there will be *no restitution*." Sentencing Tr. 158:9-11 (emphasis added). Furthermore, when justifying its reason for seeking the maximum fine, the government stated, "[w]e assume that all the restitution is going to be paid by someone else." Sentencing Tr. at 123:20-22. At the time Mr. Litvak's sentence was imposed, Your Honor stated to the government:

> Attorney Francis, I think I'm sort of going to assume when I impose the sentence that the chance that Mr. Litvak will have to pay restitution or that I will order an order of restitution in the next 90 days is not probably very high. I think there's some chance he might. I think if there is, it's not going to be a very substantial amount. I don't think it's going to be a very high likelihood.

Sentencing Tr. at 152:7-13. The government made numerous assurances at the sentencing hearing that the outstanding "fraud loss" was to be minimal or nonexistent for restitution purposes and the Court considered this when imposing the substantial fine in addition to a two-year custodial sentence. Now, the government is seeking $1.6 million in restitution from Mr. Litvak, which is (1) not much lower than the $2.1 million in outstanding "fraud loss" that the government claimed would be paid by Jefferies and (2) approaching the fine Mr. Litvak has already paid. This swift tactic on the part of the government should not be accepted.

To the extent the Court is concerned that the remaining victims should be made "whole," the government should allocate a portion of the $25 million it received from Jefferies in connection with its non-prosecution agreement to compensate these victims. According to the

non-prosecution agreement as described in the U.S. Attorney's Office March 7, 2014 press release, $11 million was set aside for restitution purposes; the remaining $14 million was split between fines paid to Treasury and the SEC. To date, Jefferies has paid approximately $9.5 million to victim entities, which leaves roughly $1.5 million available for restitution. These funds should be used to compensate the entities associated with the Title 18 offense trades conducted by Mr. Litvak, who, of course, did not receive any of the proceeds from the trades. In fact, the Court recognized Jefferies's accountability to the victims when questioning the government at Mr. Litvak's sentencing:

> But aren't they [Jefferies] liable? I mean, his actions were as their employee. Isn't their pocket a little bit deeper than his? Isn't it reasonable to assume that if they don't reach an agreement, the victim is going to go against Jefferies . . . ?

Sentencing Tr. at 45:8-14. In response, the government stated, "[a]bsolutely." *Id.* at 45:15. Given the government's repeated assurances at the sentencing hearing that Jefferies would pay any restitution, and the government's concession that Jefferies was responsible for doing so, the Court should decline to order Mr. Litvak to pay any restitution in addition to the significant fine he has already satisfied.

### B. Restitution is Plainly Overstated Because of the Speculative Nature of the Government's Evidence

None of the trades identified by the government supports a finding of loss for a restitution order and the government has not met its burden of proof here. The Court "need not order restitution where the calculation of loss is so complex or opaque that it would inordinately delay the process or is likely to be grossly inaccurate. In other words, if the government does not provide a transparent method for fixing or reasonably estimating the victim's loss resulting from fraud, the court is not required to order restitution." *Hernandez*, 2009 WL 113267 at *2. The government attached to its memorandum a spreadsheet of transactions with corresponding

exhibits without identifying why a single transaction is fraudulent or why any transaction may serve as the basis for a restitution order.[7] The chart attached to its April 10, 2014 letter to probation is equally deficient and relies on speculation and incomplete information in order to piece together allegedly fraudulent transactions.

The rules governing restitution limit the court to consideration of actual, discrete and provable losses, which are absent here. *United States* v. *Catoggio,* 326 F.3d 323, 329 (2d Cir. 2003); *see also Hernandez*, 2009 WL 113267 at *2 n.3 (to order restitution, the court must be able to accurately gauge each victim's loss *while avoiding overpayment*). In addition to the absence of actual loss, the Court cannot accurately gauge each victim's purported loss based on the government's evidence and thus, a sufficient factual basis for an order of restitution has not been established.

### C. Mr. Litvak Has Limited Financial Resources From Which to Pay an Order of Restitution

In determining whether to order restitution under 18 U.S.C. § 3663, the court "shall consider" the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents**.** 18 U.S.C. § 3663(a)(1)(B); 18 U.S.C. § 3664(a). To be sure, Mr. Litvak earned substantial compensation while employed at Jefferies. He has earned no salary, however, for approximately three years and the Litvaks have relied on their savings and Dr. Litvak's salary to support themselves since Mr. Litvak's termination from Jefferies in December 2011. Mr. Litvak satisfied the $1.75 million fine imposed by the Court primarily with the proceeds from the recent sale of the family's home on Long Island. The remainder of Mr. Litvak's assets, which fall far short of the amount of restitution sought by the government, is

---

[7] In its memorandum, the government claims that the defendant "implicitly conced[ed]" that 55 of the 76 trades identified by the government were fraudulent. (Gov. Mem. at 1). This is simply not true. Instead, it remains the defendant's position that there is no loss in connection with any transaction because no actual or intended pecuniary harm has been demonstrated within the meaning of U.S.S.G. § 2B1.1 or 18 U.S.C. § 3663.

12

comprised of illiquid retirement accounts.

Mr. Litvak is scheduled to self-surrender on November 5, 2014 to begin serving a two-year term of imprisonment.  He will thus be out of work for an additional two years and unable to make a financial contribution to his wife and two young children.  Imposing any additional financial penalties on Mr. Litvak will create an immense hardship for his wife and children who will be without the physical, emotional, and financial support of their husband and father over the next two years.  After Mr. Litvak has completed his custodial sentence, he will attempt to seek employment, but being barred from the securities industry will prevent him from working in the only industry he has ever known.  Thus, it is extremely unlikely that Mr. Litvak will ever earn a salary approaching what he earned as a securities industry professional.

### D. The Government Offered No Victim Impact Statements at Sentencing

Not a single victim came forward at sentencing to express dissatisfaction with the trades or the way in which Mr. Litvak executed those trades.  Instead, one victim entity wrote a letter in support of Mr. Litvak, and two former employees from two additional victim entities wrote similar letters to show their support for Mr. Litvak and request leniency from the Court.  (*See* Sentencing Mem. at 12-13 [Doc. No. 262]).  Of course the government can point to instances in the trial transcript where subpoenaed victim witnesses testified that they did not like Mr. Litvak's tactics, but not one of those victims took the stand at sentencing or submitted a victim impact statement to express to the Court that he or she felt victimized or cheated out of money.  That is because none of the victims lost money on the transactions at issue and each one would do the trades again at the exact same prices.

### CONCLUSION

For the reasons set forth above, the government's proposed restitution order should not be adopted, and the Court should exercise its authority not to order restitution.

Respectfully submitted,

**THE DEFENDANT,
JESSE C. LITVAK**

By:   /s/ Ross H. Garber
     Ross H. Garber (ct17689)
     Michael G. Chase (ct28935)
     Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT 06103
     Telephone: 860-251-5901
     Fax: 860-251-5219
     E-mail: rgarber@goodwin.com

     Patrick J. Smith (admitted *pro hac vice*)
     John M. Hillebrecht (admitted *pro hac vice*)
     Sarah B. Zimmer (admitted *pro hac vice*)
     DLA Piper LLP (US)
     1251 Avenue of the Americas, 27th Floor
     New York, New York 10020
     Tel.: (212) 335-4500
     Fax: (212) 884-8509
     E-mail: patrick.smith@dlapiper.com
     E-mail: john.hillebrecht@dlapiper.com
     E-mail: sarah.zimmer@dlapiper.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                                                    /s/ Ross H. Garber
                                                      Ross H. Garber