**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:13-cr-19 (JCH) |
| v. | : | |
| | : | |
| JESSE LITVAK, | : | |
| Defendant. | : | |
| | : | JANUARY 22, 2015 |
| | : | |

**RULING RE: MOTION TO SEAL (Doc. No. 261)**

**I.    INTRODUCTION**

By Motion dated June 27, 2014, defendant Jesse C. Litvak sought that this court

permanently seal certain documents submitted by him in connection with his

sentencing, i.e., every mention of his children's names and all references to educational

or medical information regarding his younger child (cumulatively, "the subject

information").  See Defendant Jesse C. Litvak's Motion to Seal Sentencing

Memorandum and Certain Exhibits in Support ("Motion to Seal") (Doc. No. 261).

The court tentatively granted the Motion on the next business day.  See Order

(Doc. No. 263).  As later explained in an Order to Show Cause (Doc. No. 274), at the

sentencing hearing, "the defendant revealed some of the information filed under seal,

including his children's names and some information about his child's disability.  The

court also referred to some of the sealed information in order to indicate that the son's

condition, as revealed in the sealed documents, was a significant factor in arriving at its

sentence."  The sentencing hearing took place in open court.  All of these events

1

occurred absent objection as to the revelation of any of that part of the subject information.[1]

The court subsequently issued an Order to Show Cause (Doc. No. 274) why part or all of the subject information should not be unsealed—and noted that the court would not be inclined to unseal any information were it not for the fact that Litvak's attorney revealed some of the subject information himself.  The parties duly responded.  The Motion to Seal remains unopposed.  Nonetheless, in service of the goals of, inter alia, "promot[ing] public confidence in the judicial system," "diminish[ing] the possibilities for injustice, incompetence, perjury, and fraud," and "provid[ing] the public with a more complete understanding of the judicial system and a better perception of its fairness," United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) (internal quotation marks omitted), the court is required to inquire searchingly to ensure that, unless certain special conditions are met, information is available for public access, see Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006).  The court concludes that it is appropriate to leave permanently sealed some but not all of the subject information. Specifically, it is appropriate to redact all mentions of Litvak's children's names (except the first letter) in all public documents on this case's docket and to redact all educational and medical information about Litvak's younger child among the exhibits to the Sentencing Memorandum of Defendant Jesse C. Litvak ("Sentencing Memorandum") (Doc. No. 264) and in the Sentencing Memorandum itself.

---

[1] Litvak does not ask the court to redact any of the brief, summary references to his younger child's disability made during the sentencing hearing from the Sentencing Transcript.  As further explained infra, the court would not be inclined to do so if he did.

## II.    DISCUSSION

A.    Legal standard

The right of public access to—and against redacting, sealing, or otherwise withholding from disclosure—court proceedings and records is rooted in both the common law and the First Amendment.  See Lugosch, 435 F.3d at 120.  No matter under which of these two sources of law the right arises, it applies to records only when they are "judicial documents."  Id. at 119–20.  A "judicial document" is a court filing that is "relevant to the performance of the judicial function and useful in the judicial process." Id. at 119.

Under the common law, a judicial document may be withheld from public access only if the court concludes that the presumption of public access—whose weight depends upon the nature of the document—is outweighed by "competing considerations" such as, e.g., privacy interests, public safety, or attorney-client privileged information.  Lugosch, 435 F.3d at 120 ("competing considerations" generally); see also id. at 125 (attorney-client privilege); United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) ("the security of the Nation"), cert. denied, 556 U.S. 1107 (2009); United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("law enforcement interests," "judicial performance," and an individual's "privacy interest").

Under the First Amendment, the corrollary to the common-law presumption of public access is a judicial determination (under the "experience and logic" test) whether "documents [of the kind at issue] have historically been open to the press and general public" or "public access plays a significant positive role in the functioning of the particular process in question," or (under a second approach) of the extent to which the

judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Lugosch, 435 F.3d at 120 (internal quotation marks omitted). A judicial document may be withheld only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." In re New York Times Co., 828 F.2d 110, 117 (2d Cir.1987) (internal quotation marks omitted). In all cases, motions to seal must be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. Video Software Dealers Assoc. v. Orion Pictures, 21 F.3d 24, 27 (2d Cir. 1994).

B.    Application

All of the documents at issue here are "judicial documents." See Dorsett v. Cnty. of Nassau, 866 F. Supp. 2d 187, 193 (E.D.N.Y. 2012) (collecting cases reflecting that a transcript of court proceedings is generally a "judicial document"), rev'd on other grounds, Newsday LLC v. Cnty. of Nassau, 730 F.3d 156 (2d Cir. 2013); United States v. Sattar, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006) ("documents [that] were submitted to the Court to provide information with respect to the crucial judicial function of sentencing" are "judicial documents"). Thus, both under the common law and under the First Amendment, the court is required to engage in a deeper analysis to determine whether each piece of subject information may be withheld from disclosure.

Litvak's children's full names should not be disclosed. Federal Rule of Criminal Procedure 49.1(a)(3) (and its analogue in the civil litigation context, Fed. R. Civ. P. 5.2(a)(3)) reflect a prudential determination that, as a general matter, any public interest in identifying a minor's full name is outweighed by the privacy interest of the minor. The

4

interest is especially heavy where, as here, the minors at issue are not parties to the

litigation, other filings reflect that one of them has a disability, the court can perceive no

public interest in knowing the childen's full names, and the children's names were not

submitted for the purpose of influencing the court's determination (thus falling outside

the rationale for making "judicial documents" public).  Moreover, the court is aware of no

cases suggesting that the public has a right of access to this kind of information under

either the common law or the First Amendment.  The court finds no reason to question

the soundness of applying Rule 49.1(a)(3) under the present circumstances.

The question of whether to withhold information about Litvak's younger child's

medical and educational status (originally submitted in exhibits attached to the

Sentencing Memorandum and referred to in the Sentencing Memorandum itself)

presents a more complex question.

For purposes of determining the weight of the presumption of the right of public

access under the common law, the most critical factor here is that Litvak submitted the

relevant information for the purposes of the court's consideration in determining what

sentence would be appropriate.  See Lugosch, 435 F.3d at 123 (the common-law

"presumption [of access] is of the highest" where a document was submitted for

purpose of affecting court's ruling on summary judgment motion); Sattar, 471 F. Supp.

2d at 385–86 (applying reasoning from Lugosch to conclude that presumption of access

accorded to letters submitted in connection with sentencing is of "great weight").

Sentencing is, moreover, "perhaps the most important of judicial duties."  United States

v. Kushner, 349 F. Supp. 2d 892, 905 (D.N.J. 2005).  And, indeed, the court in fact

relied upon the subject information, and the information was important to the court's

ultimate sentencing decision.  The court wishes specifically to emphasize that it considered "what [Litvak's] absence from [his] son's life could mean to him" as a major factor in determining "how much of a sentence is long enough to accomplish the goals of sentencing without being too much."  Sentencing Transcript (Doc. No. 273) at 157; see also 18 U.S.C. § 3553(a).  The court would certainly have sentenced Litvak to a longer term of imprisonment had Litvak's situation with his son not been as he and others represented it to be.

The most obvious factor weighing against disclosure under the rubric of the common-law presumption of access is the privacy interest of Litvak's child and family in nondisclosure of the subject information.  "[T]he privacy interest of innocent third parties should weigh heavily in a court's balancing equation.  Such interests . . . are a venerable common law exception to the presumption of access."  Amodeo, 71 F.3d at 1050–51 (internal quotation marks and citations omitted).  To determine the weight of the privacy right, a court

> should first consider the degree to which the subject matter is traditionally considered private rather than public.  . . . [F]amily affairs, illnesses, . . . and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.
>
> The nature and degree of injury must also be weighed. This will entail consideration . . . of [inter alia] the sensitivity of the information and the subject . . . .

Id. at 1051.

Here, while the particular facts surrounding Litvak's son's circumstances were submitted to affect the court's sentencing decision and, moreover, actually were important to the court's ultimate decision, the court can discern no public interest in revelation of the particular details of these traditionally private matters.  Instead, it is

sufficient for the public—and for future courts, for purposes of avoiding unwarranted sentencing disparities—to know what Litvak's counsel revealed during the sentencing hearing.  At that time, Litvak's counsel argued that Litvak's son has suffered because of certain disabilities, that Litvak has mitigated the effects of these disabilities through his parental caring, and that a lengthier prison sentence would work a significantly greater harm (and, measured in absolute terms, a serious harm) on Litvak's son's development, while a shorter one would work a serious comparative benefit.  In support of these arguments, counsel summarily described the relevant disabilities.  See Sentencing Transcript at 75–78.  The court reviewed the materials submitted under seal, including formal evaluations by medical and educational professionals and informal, anecdotal information from family and friends.  The court concluded that these materials corroborated counsel's representations, substantiating what was and remains (at a higher level of generality) on the public record, and relied in part on these materials in its ultimate determination of the appropriate prison sentence for Litvak.  However, while it is necessary to understand the facts at a higher level of generality in order to comprehend the effect of this information on the sentencing, the privacy interest related to the very detailed information requires the court to leave undisturbed the original redactions of information ranging from formal medical and educational evaluations to personal anecdotes and opinions.

Thus, having fully considered the facts described in the educational and medical reports and the dozens of references to the same facts in other exhibits, in the Sentencing Memorandum, and in an open (and crowded) courtroom during the sentencing hearing; the circumstances surrounding the submission of these facts; and

the privacy interests weighing in favor of withholding this information from future public access, the court concludes that competing considerations outweigh the presumption of public access to judicial documents and that all of the redactions of information regarding Litvak's son's educational and medical status in Litvak's sentencing submissions ought to remain.

Moving from the common law to the First Amendment, a similar analysis applies, although, despite the latter's generally greater strength, see Lugosch, 435 F.3d at 124, no additional disclosure is warranted here.  The court discerns no reason to conclude that the kind of information that it would otherwise withhold "ha[s] historically been open to the press and general public," that "public access [to this information] plays a significant positive role in the [court's sentencing] function[ ]," or that the information is "derived from or a necessary corollary of the capacity to attend the relevant proceedings."  Id. at 120 (internal quotation marks omitted).  Nonetheless, assuming any such reason might apply here, the court has provided, supra, "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values [viz., privacy interests] and is narrowly tailored to serve that interest."  In re New York Times Co., 828 F.2d at 117 (internal quotation marks omitted).

## III.   CONCLUSION

The court reporter shall redact, in the Transcript of Sentencing Hearing (Doc. No. 273), all mentions of Litvak's children's names to the first initial.

The original unredacted sealed version of the Sentencing Memorandum submitted by Litvak (Doc. No. 264) will remained sealed.  Litvak is directed to submit a new redacted version of the Sentencing Memorandum that redacts any children's

names (not just his own children's names), see, e.g., Exh. A to Sentencing Memorandum at 59, 72, 167, to the first initial (not fully, as redacted in the original Sentencing Memorandum), and that does not redact the remainder of the final line of the paragraph ending at the top of page 23.

Litvak is further directed to alert the court to any other mentions of information that must, in order to comply with the substance of the court's present conclusions, be redacted or unredacted, sealed or unsealed.

Litvak is to comply with all of these directives no later than twenty-one days from this Order's entry.

**SO ORDERED**.

Signed this 22nd day of January 2015 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge