IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:13CR19 (JCH) |
| v. | |
| JESSE C. LITVAK | MARCH 11, 2016 |
| Defendant. | |
| _____/ | |

**DEFENDANT JESSE LITVAK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EARLY RETURN OF SUBPOENAS *DUCES TECUM* TO COUNTERPARTIES UNDER RULE 17(C)(1)**

The Indictment alleges that Mr. Litvak, a bond trader, committed criminal securities fraud through statements he made in negotiations with professional investment managers and hedge funds regarding the purchase and sale of certain Residential Mortgage Backed Securities (RMBS). There is no allegation that Mr. Litvak misrepresented the nature or characteristics of the bonds at issue, only that he misrepresented the manner and/or price at which he was acquiring or selling a bond.

The government bears the burden to prove, beyond a reasonable doubt, not only that these statements were untrue but that they would have been material to reasonable, sophisticated counterparties of the kind with whom Mr. Litvak was trading. The proposed subpoenas request documents directly relevant to this issue. In fact, they seek documents that are identical in kind to other documents that the Court admitted into evidence during Mr. Litvak's 2014 trial, but have not yet been produced to the defense. As discussed in more detail below, pretrial return is warranted because, among other things, Mr. Litvak anticipates that he will retain an expert who may rely on the requested materials in rendering an opinion on materiality.

**ARGUMENT**

Federal Rule of Criminal Procedure 17 governs the use of subpoenas in criminal cases. Subsection (c) provides for the issuance of subpoenas for documentary evidence and permits the District Court to order the pretrial return of subpoenaed materials: "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence." Fed. R. Crim. P. 17(c)(1). The plain language of Rule 17 establishes "a liberal policy for the production, inspection and use" of evidentiary materials in federal criminal cases. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 200 (1951). The purpose of Rule 17(c) is to enable a party to obtain and inspect evidentiary material prior to trial. *See United States v. Gel Spice Co.*, 601 F. Supp. 1214, 1224 (E.D.N.Y. 1984).

Pretrial production of documents is appropriate if the party requesting the documents demonstrates (1) relevancy, (2) potential admissibility, and (3) reasonable specificity with respect to the documents sought. *United States v. Nixon*, 418 U.S. 683, 700 (1974). The requests in Mr. Litvak's proposed subpoenas meet each of the *Nixon* requirements. Mr. Litvak has crafted two targeted requests that seek relevant, potentially admissible documents for use in defending against the government's claim that misrepresentations he allegedly made were material to the sophisticated counterparties.[1]

**Relevancy.** The relevancy element is satisfied if there is a "rational inference that at least part of the [materials] relate to the offenses charged in the indictment." *Id.* The subpoenaed documents easily clear this hurdle.

**Request 1:** First, each of the subpoenas seeks:

---

[1] Each of the subpoenas contains parallel requests for the bonds relevant to the subpoenaed party. *See* Exhibits 1-10 to this Motion.

model or analysis [the counterparty] used to assess the potential performance of [specific RMBS], the assumptions used by that model or analysis, and the output of that model or analysis as of the [trade date for the specific RMBS], including the yield tables or list of prices at which [the counterparty] thought the bond was an attractive investment.

The counterparty's model is critical evidence of materiality because, as witnesses in the 2014 trial testified, in RMBS trades, the buyer's model is of "primary importance" to the investment decision. Sarabanchong Testimony 2188:12; *see also* Canter Testimony 413:4-6 ("Q. How does the analysis play into your decision about what price to pay for an RMBS bond? A. It's – it's fundamental to it. It is key."); Norris Testimony 898:13-15 ("we were fairly dependent, almost exclusively dependent on what the output of our research team gave us"). How the model works, what information is inputted into it, and the resulting model output thus are highly probative evidence of what reasonable, sophisticated investors in this market consider to be important in making investment decisions.

The requested documents are similar in kind to evidence the Court admitted during Mr. Litvak's 2014 trial. There, each counterparty witness testified that in determining whether to purchase or sell the securities at issue in the Indictment, he or she ran or consulted internal complex analyses to determine the price at which the counterparty would purchase the bond. *See, e.g.*, Canter Testimony 411:4-414:6 (describing the models, indicating that Alliance Bernstein created its own models, and explaining that the output is "fundamental" and "key" to the price); Vlajinac Testimony 819:5-18 (Wellington has a "robust system for analyzing the valuation of securities" who "oftentimes" set the "ranges within which" Wellington was "supposed to transact"); Norris Testimony 861:6-862:3 (credit research team "analyze[s] the bond and provide[s] their analytic package," which involves "put[ting] various characteristics through their internal models"); Wollman Testimony 979:10-23 (assumptions are run through

3

Intex); Lemin Testimony 1118:13-21 (Magnetar uses "[p]roprietary models" to evaluate bond price); Corso Testimony 1204:7-1206:15 (references to "curves" are references to analytics York used); Sarabanchong Testimony 2187:9-2188:17 (describing models built in house). Mr. Litvak also elicited testimony regarding the details of the analyses or models used by certain of the counterparties. For example, Brian Norris, who worked for Invesco, the counterparty to the trade charged in Count 4, testified about the work Invesco put into the model, output of the model and the range of prices that would achieve the desired yield. Norris Testimony 861:15-18, 885:4, 989:14.

The Court also admitted documentary evidence showing the outputs of models that two investors, Invesco and MFA, consulted prior to purchasing the bonds in question. Mr. Litvak's counsel questioned Mr. Norris extensively about the output sheet generated by the Invesco model. *See* Def. Ex. 673D (attached as Exhibit 11 to this Motion). Counsel elicited similar testimony from Alvin Sarabanchong of MFA, the counterparty to Count 6, based on the output of the MFA model. Sarabanchong Testimony 2188:12, 2211:20-22, 2212:1-3, 2212:3, 2207:15-18; Def. Ex. 630 (attached as Exhibit 12 to this Motion).

To be clear, Mr. Litvak is not seeking documents that already have been produced. Although Mr. Litvak already has obtained certain documents relating to the outputs models used by Invesco (the counterparty in Count 4) and MFA (the counterparty in Count 6), he has not had access to the models themselves. And, based on undersigned counsel's preliminary review of documents obtained in discovery prior to the first trial, he appears to lack even the outputs of models used by counterparties to the trades at issue in the other Counts. It also bears emphasizing that the relevance of the requested documents has become even more clear as a result of the Court of Appeals decision, in which the Court held that evidence regarding the

4

sophisticated valuation methods used by parties in the RMBS space was relevant to materiality. *See United States v. Litvak*, No. 14-2902, at 59-60 (2d Cir. Dec. 8, 2015).

> **Request 2:** Second, each of the subpoenas seeks:
>
> the internal records of the purchase of the [specific RMBS] from Jefferies on the [particular date], including the files that were maintained and documents that were created, in connection with the purchase.

This request is distinct from the first one, in that it seeks all information that the investor maintained in connection with the purchase of the bond, not just the model and model outputs. For example, MFA's document production from the first trial included a folder that it maintained for each bond it purchased. The folder included, among other things, notes from Mr. Sarabanchong and his supervisor about the range of prices at which Mr. Sarabanchong was authorized to purchase the bond in question. The folder also contained raw data on default rates and other characteristics of the bond. *See* Def. Ex. 630 (Ex. 12), Def. Ex. 635 (attached as Exhibit 13 to this Motion). Invesco's production included an internal check list that Invesco traders filled out in connection with each purchase the firm made for its Public Private Investment Partnership (PPIP) fund.

Such documents are highly relevant to materiality. The type of information a counterparty records and tracks about a particular transaction may indicate what information the counterparty deems important or most important about the transaction.

**Potential Admissibility.** The potential admissibility prong of the *Nixon* test requires a "preliminary showing" of the "potential evidentiary uses" of the subpoenaed material. *Nixon*, 418 U.S at 700, 702. In other words, the items subpoenaed need not actually be used in evidence; the only requirement is that the moving party has a good faith basis for believing that the documents sought may be admissible. *Bowman Dairy Co.*, 341 U.S. at 219-20. All of the

documents requested in the proposed subpoenas likely would be business records of the entity admissible pursuant to Federal Rule of Evidence 803(6).

**Specificity.** While Mr. Litvak does not have access to the documents and therefore cannot comprehensively describe their contents, Mr. Litvak has described the subpoenaed documents with the requisite degree of specificity. This is not a fishing expedition. Each of the counterparty witnesses who testified at Mr. Litvak's first trial indicated that the individual or entity performed analysis on the bonds at issue based on internal models. *See, e.g.*, Canter Testimony 411:4-414:6; Vlajinac Testimony 819:5-18; Norris Testimony 861:6-862:3; Wollman Testimony 979:10-23; Lemin Testimony 1118:13-21; Corso Testimony 1204:7-1206:15; Sarabanchong 2187:9-2188:17. Because the trades affected the makeup of a counterparty's portfolio and the counterparty's books, information about the purchase or sale was reported and recorded internally at each of the counterparties pursuant to standard business practices.

**Pretrial Production.** Pretrial production is appropriate here. Although Mr. Litvak does not anticipate that the *volume* of the documents sought will be extensive, the content is likely to be highly complex. Moreover, Mr. Litvak anticipates retaining an expert who will give an opinion about the materiality of the alleged misstatements. The document sought by this subpoena may be relevant to such opinion. The need for pretrial return is particularly acute in this case given that, as the Court is aware, Mr. Litvak's proffered materiality expert in the first trial, Ram Willner, has informed counsel that, due to health reasons, he will be unable to participate in the second trial. Mr. Litvak is mindful of the Court's prior opinion (Dkt. 51) that pretrial return dates should be close to trial, but respectfully requests that, under the circumstances, the return date be set at April 18, 2016.

## CONCLUSION

For the foregoing reasons, Mr. Litvak requests the Court issue an order permitting Mr. Litvak to issue the subpoenas attached as Exs. 1-10 with pretrial return dates of April 18, 2016 to the following counterparties to trades referenced in the indictment or identified by the government as other conduct in the original trial in this matter:

Angelo, Gordon & Co.

AllianceBernstein

Invesco Ltd.

Magnetar Capital, LLC

MFA Financial, Inc.

Monarch Alternative Capital LP

QVT Financial, LP

Soros Fund Management LLC

Wellington Management Company, LLP

York Capital Management

Dated: March 11, 2016

        Respectfully Submitted,
        **THE DEFENDANT,**
        **JESSE C. LITVAK**

        By: /s/ Michael G. Chase
        Ross H. Garber (ct17689)
        Michael G. Chase (ct28935)
        SHIPMAN & GOODWIN LLP
        1 Constitution Plaza
        Hartford, Connecticut 06103
        Tel: (860) 251-5000
        Fax: (860) 251-5099
        rgarber@goodwin.com
        mchase@goodwin.com

Dane H. Butswinkas (*pro hac vice*)
Adam D. Harber (*pro hac vice*)
C.J. Mahoney (*pro hac vice*)
Williams & Connolly LLP
725 Twelfth Street, N.W.,
Washington, D.C.
Tel: (202) 434-5000
Fax: (202) 434-5029
dbutswinkas@wc.com
aharber@wc.com
cmahoney@wc.com

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                              /s/ Michael G. Chase
                                                Michael G. Chase