### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 13-CR-00019 (JCH) |
| v. | : | |
| | : | |
| JESSE C. LITVAK, | : | JUNE 28, 2016 |
| Defendant. | : | |

### RULING RE: MOTIONS IN LIMINE (DOC. NOS. 356, 357, 358, 367, 369 & 372)

## I.   INTRODUCTION

In accordance with the court's Scheduling Order, see Scheduling Order (Doc. No. 318), the parties in this case filed numerous Motions in limine on May 12, 2016. Responses to the Motions in limine were due on May 26, 2016, and Replies were filed on or before June 2, 2016.  See id.  The parties subsequently filed two Notices of Stipulation, see Notice of Stipulation (Doc. No. 389); Notice of Am. Stipulation (Doc. No. 408), which, per the request of the parties, resulted in the court terminating as moot four of the filed Motions in limine, see Order (Doc. No. 401) (terminating as moot Motions in limine docketed at Doc. Nos. 365, 368, and 373); Order (Doc. Nos. 417, 431) (terminating as moot the Motion in limine docketed at Doc. No. 370).

The court held oral argument on the remaining Motions in limine on June 16, 2016.  See Minute Entry (Doc. No. 430).  At that hearing, the court ruled from the bench on a number of the pending Motions, primarily those the parties conceded were mooted by virtue of the parties' agreement.[1]  See id.  The court will take up all of the Motions in

---

[1] For example, two of the Motions in limine were mooted by the fact that the parties agreed, but for the fact that defendant Jesse Litvak ("Litvak") wanted to reserve his right to offer evidence in rebuttal if the government "opens the door" to particular lines of argument.  Because the court believes that events at trial may make it necessary to revisit any evidentiary Ruling, the court does not believe that an explicit

limine that remain pending in this Ruling.  At the outset, the court notes that this Ruling

is based on the record currently before the court.

## II.   DISCUSSION

### A.   Litvak's Motion *in limine* to Exclude Evidence that He Acted as an "Agent" or "Broker" for Counterparties (Doc. No. 356)

Litvak has filed a Motion in limine seeking to exclude testimony by witnesses and

argument by the government that he acted as an agent of his counterparties in the

residential mortgage-backed security (RMBS) trades described in the Indictment.  See

Mem. of Law in Supp. of Def.'s Mot. in limine to Exclude Evidence that Mr. Litvak Acted

as an "Agent" or "Broker" for Counterparties at 1 ("Def.'s Agent/Broker Mem.") (Doc. No.

356-1).  In this same Motion, Litvak also seeks to exclude the government and its

witnesses from referring to Litvak as a "broker."  Id. at 8.  The government filed an

Opposition to Litvak's Motion, see Gov't's Opp. to Def.'s Mot. in limine to Exclude

Evidence that Litvak Acted as an "Agent" or "Broker" ("Gov't's Agent/Broker Opp.")

(Doc. No. 387), to which Litvak timely replied, see Jesse C. Litvak's Reply in Supp. of

the Mot. in limine to Exclude Evidence that Litvak Acted as an "Agent" or "Broker"

("Def.'s Agent/Broker Reply") (Doc. No. 412).  The parties argued their respective

positions on this Motion at length during the oral argument held on June 16, 2016.  See

Minute Entry (Doc. No. 430).  For the reasons that follow, the court now grants in part

and denies in part Litvak's Motion.

---

reservation of the right to argue that the government has opened the door to certain lines of inquiry and testimony is necessary.  Nonetheless, at oral argument on the Motions in limine, the court noted that Litvak had explicitly reserved this right and terminated these Motions as moot in light of the parties' agreement.  See Minute Entry (Doc. No. 430).

Litvak's primary argument in this Motion is that, pursuant to Rules 401, 403, and 701 of the Federal Rules of Evidence, the government should be prohibited from (1) arguing that Litvak was an agent of the counterparties to the RMBS trades at issue in this case, and (2) eliciting testimony from witnesses that they understood Litvak to be acting as their agent during these trades.  Much of Litvak's support for this Motion comes from the fact that, before the Second Circuit, the government "conceded that Litvak was acting exclusively as a principal, and not as an agent, in the transactions at issue in this case."  United States v. Litvak, 808 F.3d 160, 187 n.32 (2d Cir. 2015). Therefore, he argues that any reference to "agents" or "agency" in front of the jury would be confusing and prejudicial.  Def.'s Agent/Broker Mem. at 4 (Doc. No. 356).  He also argues that permitting witnesses called by the government to testify that they understood Litvak to be operating as their agent would be improper under Rule 701. See id. at 6.  In response, the government argues that, although "[t]here has never been any dispute that, as a legal matter, firms like Jefferies are 'dealers' engaged in 'principal' trades that have no fiduciary duties to their counter-parties," the court should not bar government witnesses from testifying as to what they "understood [their] relationship with Litvak to be, based on the facts of their interaction."  Gov't Agent/Broker Opp. at 1, 2 (Doc. No. 387).  According to the government, such testimony is factual, not legal, in nature.  Id. at 4.

Given the government's concession that, as a matter of law, Litvak was not an agent of the counterparties during the RMBS trades at issue in this case, it would be highly improper for the government to argue to the jury that Litvak was an agent of the counterparties.  The government does not dispute this point.  Thus, to the extent

Litvak's Motion seeks to preclude the government from arguing to the jury, directly or by analogy, that Litvak was <u>actually</u> an agent of the counterparties during the RMBS trades, that part of the Motion is granted absent objection.

However, the court denies the part of Litvak's Motion that seeks to preclude witnesses from testifying about their <u>perception</u> of the relationship between Litvak and themselves, even if, in the course of such testimony, they colloquially say that they understood Litvak to be their "agent."  Such testimony is both relevant and probative,[2] as it could plausibly be part of the government's efforts to "establish the materiality of the information Litvak misrepresented," and could likewise "contribute[ ] to the inference that Litvak was acting with fraudulent intent."  Gov't Agent/Broker Opp. at 9 (Doc. No. 387).  Furthermore, because these witnesses are testifying to their own point of view— <u>i.e.</u>, what they understood their relationship to Litvak to be, based on the events leading up to these trades as they experienced them—this testimony is unlikely to confuse the jury or to be unduly prejudicial to Litvak, and any confusion or prejudice that could result can be ameliorated by cross-examination of the witnesses, the testimony of an expert witness for the defense, instruction to the jury that the witness's testimony is not the law, or all three.  Because the testimony of witnesses for the government about their perceptions is (1) relevant, and (2) more probative than prejudicial, the evidence at issue is admissible under Rules 401 and 403 of the Federal Rules of Evidence.

---

[2] As the Second Circuit noted while holding that Marc Menchel should have been permitted to testify on "the agent/principal distinction" at the first trial, "[t]he nature of Litvak's relationship with the alleged victims formed the context in which the jury had to consider whether the portfolio managers and traders who testified reflected the views of a reasonable investor."  <u>Litvak</u>, 808 F.3d at 187.

Nor should the evidence at issue be excluded as improper lay opinion testimony under Rule 701, as Litvak urges.  In support of this argument, Litvak cites United States v. Garcia for the proposition that, "[i]f [a lay] opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701."  Garcia, 413 F.3d 201, 215 (2d Cir. 2005) (citation omitted).  Litvak argues that allowing lay witnesses to testify about their understanding of their relationship to Litvak runs afoul of this principal because "testifying about the legal status of the relationship between Mr. Litvak and his counterparties requires 'specialized knowledge.'"  Def.'s Agent/Broker Reply at 4 (Doc. No. 412).  In this argument, Litvak conflates evidence of what the legal status of the relationship between himself and the counterparties actually was (e.g., what that relationship was as a matter of law) with evidence about how the counterparties perceived their relationship with Litvak to be.  While the former may rely on "scientific, technical, or other specialized knowledge," Garcia, 413 F.3d at 215, the latter does not.  As noted above, no one disputes that, as a matter of law, Litvak was not the agent of his counterparties.  That fact does not mean that individual counterparty witnesses are offering impermissible lay opinion testimony when they state that, based upon their experience of events and facts relevant to this case, they understood Litvak to be working on their behalf, even if, in the course of that testimony, they use the word "agent" in its colloquial sense to describe their understanding.  Because the testimony the government seeks to offer about these witnesses' view of their relationship to Litvak is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge

within the scope of Rule 702," Fed. R. Evid. 701, this testimony is admissible under Rule 701. Litvak's Motion in limine on this point is denied.

The court also denies Litvak's Motion to preclude the government and witnesses from referring to Litvak as a "broker." As the government argues—and Litvak concedes—at the last trial the term "broker" and Litvak's preferred term of "dealer" were often used interchangeably. See Def.'s Agent/Broker Reply at 5 (Doc. No. 412). In light of this fact, Litvak concedes that he "does not ask the Court to take on the burden of policing witnesses' use of these terms[, n]or does he ask that all references to the term 'broker' be stricken from documentary evidence." Id. According to Litvak, he seeks merely to have "the government use the proper terminology in referring to Mr. Litvak's role." Id. However, the court sees little reason to police the government's use of a term that Litvak concedes would not be prejudicial in the mouths of witnesses or on the face of the government's documentary evidence, especially when the government will likely want to refer to the testimony of those witnesses and the content of those documents in their original language. To the extent Litvak wants to draw out the distinction between dealers and brokers—and the importance of that distinction for this case—he can do so through cross-examination of the witnesses or the presentation of expert testimony. Any residual prejudice that could arise from jurors importing their understanding of what a "broker" is from their experiences in their day-to-day lives can be cured, if necessary, by an instruction to the jury, either at the time of the testimony or prior to their deliberations. For these reasons, the court concludes that use of the term "broker" in this case is permissible under Rule 401 and is not excludable under Rule 403 (in particular, because use of the term is not unfairly prejudicial, confusing, or misleading to

the jury), and therefore denies Litvak's Motion in limine to exclude references to Litvak as a "broker" at trial.

In sum, this Motion in limine is granted in part and denied in part.  The government will not be permitted to argue that Litvak was the agent of his counterparties as a matter of law, but witnesses will be permitted to testify to their understanding that Litvak was working on their behalf during the trades at issue in this lawsuit even if, in the course of such testimony, they colloquially refer to Litvak as their "agent."  In addition, witnesses and the government will be permitted to refer to Litvak as a "broker" or "broker-dealer."

B.    Litvak's Motion *in limine* to Exclude Evidence about the Identity of
      Investors in Counterparty Funds (Doc. No. 357)

Litvak has filed a Motion in limine seeking to exclude "any evidence about the identity of any of the investors in the funds managed by Mr. Litvak's counterparties, including, but not limited to, the federal government."  Mem. of Law in Supp. of Def.'s Mot. in limine to Exclude Evidence about the Identity of Investors in Counterparty Funds at 2 ("Def.'s Investor Identity Mem.") (Doc. No. 357-1).  In this same Motion, Litvak also asks the court to strike "surplusage" in the Indictment "relating to the identity of investors in the counterparty funds."  Id. at 9.  The government filed an Opposition to Litvak's Motion, see Gov't's Opp. to Def.'s Mot. in limine to Exclude Evidence of Alleged Victims' Investors ("Gov't's Investor Identity Opp.") (Doc. No. 386), to which Litvak timely replied, see Jesse C. Litvak's Reply in Supp. of the Mot. in limine to Exclude Evidence about the Identity of Investors in Counterparty Funds ("Def.'s Investor Identity Reply") (Doc. No. 409).  The parties argued their respective positions on this Motion during the oral

7

argument held on June 16, 2016.  See Minute Entry (Doc. No. 430).  For the reasons that follow, the court now grants in part and denies in part Litvak's Motion.

Much of Litvak's Motion to exclude references to the identity of investors in counterparty funds focuses on his concern that it would be unduly prejudicial for the government to refer to the money at issue as "taxpayer funds."  Def.'s Investor Identity Mem. at 1 (Doc. No. 357-1).  In its Opposition to Litvak's Motion, and again at oral argument, the government conceded that it would be prejudicial to refer to the funds at issue as being comprised of "taxpayer money," and therefore stipulated[3] that it "will not refer to 'taxpayers' in its opening or closing statements, and will instruct its witnesses not to use that term."  Gov't Investor Identity Opp. at 2 (Doc. No. 386).  Thus, the portion of Litvak's Motion that seeks to preclude the government from employing the word "taxpayer" (or related concepts, such as arguing to the jury about "your money") in its argument and evidence is granted absent objection.

The remaining portions of this Motion in limine seek two different kinds of relief: (1) to prevent the government from presenting any evidence about the identity of investors in counterparty funds and, in particular, any references to the money at issue as government money, and (2) to strike "surplusage" in the Indictment related to the identity of investors in counterparty funds.  See Def.'s Investor Identity Mem. at 8-9 (Doc. No. 357-1).

---

[3] Even if the government had not stipulated that it would be improper to use the phrase "taxpayer funds" in argument or in evidence, the court would have granted Litvak's Motion and excluded the use of this term pursuant to Rule 403 on the grounds that its probative value is substantially outweighed by its prejudicial effect.

With respect to the first kind of relief sought, Litvak argues that, because the Second Circuit reversed on insufficiency of evidence grounds his conviction on the counts related to alleged fraud against the United States, see Litvak, 808 F.3d at 169, references to the identity of investors in counterparty funds lack any probative value and carry a significant risk of unfair prejudice.  See Def.'s Investor Identity Mem. at 5-6 (Doc. No. 357-1).  Thus, Litvak argues that any references to the identity of investors should be excluded under Rules 401 and 403 of the Federal Rules of Evidence.  In support of his argument, Litvak cites a string of cases that he says stand for the proposition that "appeals to the jurors' interests as taxpayers are improper per se."  Id. at 8.  Although Litvak may be correct on that point, the government has already conceded that use of the word "taxpayer" and references to "taxpayer funds" would be unfairly prejudicial in this case.  What Litvak is really asking this court to find is that the cases he cites stand for the proposition that all references to government money are improper per se—which they do not.  Notably, each of the cases Litvak cites involve an attorney making an effort to personalize the alleged harm caused by a party to jurors (in their role as taxpayers) in a very concrete way.  See United States v. Lotsch, 102 F.2d 35, 37 (2d Cir. 1939) (noting that the prosecutor said that, "since the United States guaranteed bank deposits, the money lent to these borrowers came out of the jurors' pockets"); see also Moore ex rel. Estate of Grady v. Tuelja, 546 F.3d 423, 429 (7th Cir. 2008) (noting that, during closing argument, an attorney said, "[t]he city is not a random amorphous entity.  It's you.  We're talking about tax dollars here."); United States v. Palma, 473 F.3d 899, 901 (8th Cir. 2007) (stating that the prosecutor improperly invoked the pecuniary interests of jurors as taxpayers when, in closing, he said that the defendant "got money from you

and you and you and you and these folks back here that he did not disclose"); United States v. Blecker, 657 F.2d 629, 635-36 (4th Cir. 1981) (stating that prosecutor told the jury that, "while [the defendant] paid his employees at one rate, 'we had to pay more,'" which was arguably "an appeal to the pecuniary interests of the jurors as taxpayers"); United States v. Smyth, 556 F.2d 1179, 1185 (5th Cir. 1977) (noting that, in his closing argument, the prosecutor said "that's your tax money, that's your tax money being kicked in here").  At oral argument, Litvak admitted that he was aware of no cases that stand for the proposition that any reference to government money or Treasury money, without further efforts to personalize the harm to the jurors as taxpayers, violate the "golden rule" that parties may not "ask[ ] the jurors to place themselves in the position of a party."  Palma, 473 F.3d at 902.

In response to Litvak's Motion, the government argues that some evidence related to the identity of investors in counterparty funds is "relevant because [it] tend[s] to establish the context and certain elements of the scheme to defraud."  Gov't's Investor Identity Opp. at 3 (Doc. No. 386).  The government offers the testimony at the first trial of counterparty Michael Canter as an example.  See id.  Canter was a Public-Private Investment Fund ("PPIF") Manager who "applied to invest that money for Treasury, and accepted special obligations to Treasury which [he] took seriously."  Id. at 2.  At the first trial, Canter recounted his reaction to finding out that Litvak had made misrepresentations in trades with him; according to Canter, he called Litvak and said "[A]re you freaking crazy doing this to the United States Treasury Department.  Because of this, I'm going to have to report this."  Id. at 3 (quoting Trial Tr. at 390:15-391:1).  The government contends that testimony of this kind is necessary to understand the context

in which Litvak's alleged misrepresentations were made and received, and that this evidence tends to prove the materiality of the misrepresentations.  The government argues this evidence "poses little risk of actual—rather than hypothetical—prejudice to Litvak."  Id. at 4.

As the Second Circuit noted, Rule 401 establishes a very low bar for relevance. See Litvak, 808 F.3d at 179-80.  To be relevant, evidence need only (a) have "any tendency to make a fact more or less probable than it would be without the evidence," and (b) support a fact that "is of consequence in determining the action."  Fed. R. Evid. 401.  The government's proposed evidence concerning the identity of investors in counterparty funds easily passes this bar.  The court agrees with the government that testimony such as Canter's at the first trial provides relevant context for the government's theory of Litvak's "scheme to defraud," Gov't's Investor Identity Opp. at 2 (Doc. No. 386), and, in particular, that this context has a tendency to make it more probable that the alleged misstatements were material to counterparties like Canter.[4]

Furthermore, evidence such as Canter's testimony at the first trial that he was working with government money is more probative than prejudicial, and is thus admissible under Rule 403.  In making this determination, the court notes that it views the possible prejudice to Litvak from the government using turns of phrase like "government money" to be exceedingly slight.  As the government points out, "jurors are

_____

[4] In reaching this conclusion, the court acknowledges that "materiality is an objective question." United States v. Isola, 548 F. App'x 723, 725 (2d Cir. 2013) (summary order).  However, the government appears to be attempting to prove this element by casting Canter and other counterparties as paradigmatic reasonable investors.  To the extent that Litvak believes that the fact that counterparties like Canter were working with government funds undermines the view that they were reasonable investors (or, more precisely, that their reactions to, and view of, Litvak's alleged misrepresentations were thus not the reactions and views of reasonable investors), he can draw out that fact in cross-examination or through the introduction of expert testimony.

just as likely to have a low opinion or negative views of the federal government as they are to identify with it simply because they are citizens or possibly taxpayers."  Gov't's Investor Identity Opp. at 4 (Doc. No. 386).  More importantly, numerous inferential steps are required for a juror to connect "government money" to "taxpayer money," and "taxpayer money" to "my money," and thus to personalize the harm alleged by the government in a way that is prejudicial to Litvak.  It is perhaps for this reason that Litvak has been unable to produce a single case in which a court found that use of a phrase like "government money" or "Treasury money" violated the golden rule.  Any prejudice to Litvak from introduction of testimony like that of Canter is outweighed by the probative value of the evidence as discussed above.  Thus, this evidence is admissible under Rule 403.  The court denies Litvak's Motion to exclude all references to the identity of investors in counterparty funds.

The second form of relief sought by Litvak in this Motion is the striking of "surplusage in the Indictment relating to the identity of investors in the counterparty funds."  Def.'s Investor Identity Mem. at 9 (Doc. No. 357-1).  The government concedes that, given the dismissal of some of the counts in the original Indictment, several paragraphs should be removed from the beginning of that document.  See Gov't's Investor Identity Opp. at 6 (Doc. No. 386).  Litvak contends that the government's proposed deletions are incomplete, and asks the court to strike an additional three paragraphs defining and explaining PPIFs and PPIF Managers at the beginning of the Indictment, every subsequent reference to the identity of investors in counterparty funds, and the text of the counts involving alleged fraud on the United States that were

dismissed due to insufficiency of evidence by the Second Circuit.  See Def.'s Investor Identity Reply at 5 (Doc. No. 409).

The standard for assessing Motions to strike surplusage from Indictments is well-settled in the Second Circuit.  "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial."  United States v. Mulder, 273 F.3d 91, 99 (2d Cir. 2001) (quoting United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990)).  "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."  Scarpa, 913 F.2d at 1013 (internal quotations, alterations, and citation omitted).  In this case, it is clear that the text related to the dismissed counts should be stricken, because the parties agree that the dismissed counts are not relevant to the retrial.  In fact, the government filed a Motion in limine seeking to preclude Litvak from referring to the dismissed counts, see Gov't's Mot. in limine to Preclude Reference to Dismissed Counts (Doc. No. 366), which was terminated as moot at oral argument on the pending Motions in light of the parties' agreement that reference to the dismissed counts is not appropriate, see Minute Entry (Doc. No. 430).  Furthermore, leaving the dismissed counts in the Indictment would be "inflammatory and prejudicial," Scarpa, 913 F.2d at 1013, in light of the fact that Litvak will not have the opportunity to explain to the jury that these counts were dismissed due to insufficiency of evidence.  For these reasons, the court grants Litvak's request to strike the text of the dismissed counts from the Indictment.

In contrast to the text of the dismissed counts, the other text that Litvak wishes to strike from the Indictment is relevant, and therefore should remain in that document.  As

noted above, the other text is introductory definitional material about PPIF and PPIF Managers and occasional references to the identity of investors in counterparty funds. The court has already determined that this material is relevant to the government's theory of materiality and therefore admissible under Rule 401, and that the prejudice to Litvak from the introduction of this evidence, if it exists at all, is slight. See supra at 10-11. Because "the challenged allegations" are "relevant to the crime charged," and are also not unduly "inflammatory and prejudicial," they should not be struck from the Indictment. Scarpa, 913 F.2d at 1013 (internal quotations and citation omitted). This part of Litvak's request to strike is denied.

In sum, Litvak's Motion to preclude references to the identity of investors in counterparty funds and to strike surplusage from the Indictment is granted in part and denied in part. The court grants, absent objection, Litvak's request that the government be barred from referring to any of the money at issue as "taxpayer money." The court denies Litvak's request that all other references to the identity of investors in counterparty funds be excluded. The court also grants Litvak's request that portions of the Indictment be stricken: in particular, the sections of the Indictment the parties agree should be stricken, as well as the text of the dismissed counts, must be removed because that text is not relevant and is unduly prejudicial. The court denies Litvak's request to strike three of the Indictment's introductory paragraphs related to PPIF and PPIF Managers (¶¶ 5, 7, and 8), as well as the Indictment's subsequent references (in ¶¶ 11-12, 37, 39-46, and 49-54) to the identities of investors in counterparty funds. The parties are directed to prepare a new Indictment that conforms to the above specifications and docket it within fourteen (14) days of the date of this Ruling.

C.    Litvak's Motion *in limine* to Exclude Evidence and Argument about his
Compensation (Doc. No. 358)

Litvak has filed a Motion *in limine* seeking to exclude evidence and argument
related to his compensation.  See Mem. of Law in Supp. of Def.'s Mot. *in limine* to
Exclude Evidence and Argument Regarding Mr. Litvak's Compensation ("Def.'s
Compensation Mem.") (Doc. No. 358-1).  The government filed an Opposition to Litvak's
Motion, see Gov't Opp. to Def.'s Mot. *in limine* to Exclude Litvak's Compensation
("Gov't Compensation Opp.") (Doc. No. 388), to which Litvak timely replied, see Jesse
C. Litvak's Reply in Supp. of the Mot. *in limine* to Exclude Evidence and Argument
Regarding Mr. Litvak's Compensation ("Def.'s Compensation Reply") (Doc. No. 410).
The parties argued their respective positions on this Motion during the oral argument
held on June 16, 2016.  See Minute Entry (Doc. No. 430).  For the reasons that follow,
the court now grants in part and denies in part Litvak's Motion.

Litvak's Reply makes clear that this Motion *in limine* requests two narrow forms
of relief:  "to preclude the government from (1) making misleading statements conflating
the revenue of his former employer, Jefferies & Co., with his own compensation; and (2)
introducing evidence about his total compensation in any of the years he worked at
Jefferies."  Def.'s Compensation Reply at 1 (Doc. No. 410).  Litvak also states that he is
not seeking to preclude the government from presenting "evidence of a 'profit motive,'"
i.e., evidence that would tend to show that Litvak benefitted financially from his alleged
misrepresentations.  Id. at 3.  Litvak contends he is entitled to the Ruling he seeks
under Rules 401 and 403 of the Federal Rules of Evidence, as well as under the Due
Process Clause of the Fifth Amendment.  See Jesse Litvak's Mot. *in limine* to Exclude

Evidence and Argument Regarding Mr. Litvak's Compensation (Doc. No. 358).  The court will consider each of Litvak's requests in turn.

The first form of relief sought by Litvak specifically asks that the government and its witnesses be barred from referring to the profits on trades conducted by Litvak as "his profits," because Litvak contends that "[a]ny suggestion that proceeds from the trades at issue went directly into Mr. Litvak's pocket . . . has no basis in fact and can only confuse the jury."  Def.'s Compensation Mem. at 4 (Doc. No. 358-1).  In its Opposition and again at oral argument, the government contended that referring to profits on trades as the profits of an individual trader is industry shorthand; everyone understands that the profits on a given trade do not go directly into the trader's pocket, which means that referring to the profits on a trade as the trader's profits, while technically inaccurate, is "innocuous."  Gov't Compensation Opp. at 4-5 (Doc. No. 388).  The government also conceded that it could not, and would not, argue as a matter of fact that Litvak retained every dollar of profit on every trade he completed. Given the government's concession that it will not argue that profits on the trades at issue in this case were <u>actually</u> Litvak's profits, the court grants absent objection from the government Litvak's request that the government be barred from so arguing, but denies Litvak's request that the court preclude witnesses from using the phrase "his profits" in their testimony.  Like Litvak's Motion <u>in limine</u> that sought to preclude witnesses from stating that they understood Litvak to be working on their behalf, <u>see supra</u> at 4, this request is, in essence, an attempt to limit the ability of lay witnesses to testify, in their own words, to their own experiences and perceptions.  The court declines to police the language of the witnesses in this manner.

More specifically, the court finds that these statements may properly be part of the government developing a "profit motive" for Litvak's alleged crimes, and thus are relevant under Rule 401.  In this regard, the court notes—as the government points out—that, at the first trial, Litvak's supervisor at Jefferies, Johan Eveland ("Eveland"), testified that the size of a Jefferies trader's discretionary bonus was dependent, in part, on the profitability of that trader's trades.  See Gov't's Compensation Opp. at 1-2 (Doc. No. 388) (quoting Trial Tr. at 1932:2-1934:22).[5]  This testimony provided part of the basis for the government's argument that Litvak had a motive to increase the profitability of his trades by making material misrepresentations to counterparties.  In other words, the government's theory of Litvak's profit motive was not that Litvak personally pocketed every dollar of profit from his trades, but rather that, because the aggregation of the total profits on all his trades was one factor[6] in determining the size of Litvak's discretionary bonus, Litvak had an incentive to increase the profitability of any trade he could.  If the government pursues this same line of argument at this trial, evidence about "Litvak's profits"—i.e., the profitability of his trades—is relevant and therefore admissible under Rule 401.  Furthermore, in light of the government's concession that it will not argue that Litvak actually pocketed all of the profits from his trades, the prejudice to Litvak from

---

[5] Litvak also quotes Eveland's testimony in his briefing on this Motion, noting that Eveland testified that "it is impossible to link Mr. Litvak's end-of-year compensation with any particular trade."  Def.'s Compensation Mem. at 4 (Doc. No. 358-1) (emphasis added).  Both Litvak's representation of Eveland's testimony and the government's representation of that same witness's testimony are true:  Eveland testified both that it was impossible to link the size of a trader's discretionary bonus to a particular trade, and also that the size of a trader's discretionary bonus was dependent, in part, on the overall profitability of the trader's trades.  See Trial Tr. at 1951:6-1952:1.  Clearly, Litvak's conduct at issue in this case increased the profitability of the trades to Jefferies, and thus to Litvak.

[6] In fact, Eveland testified that "[p]rofitability was probably one of the more important factors, but they were all important."  Trial Tr. at 1951:22-23.

allowing witnesses to testify in the language they would normally use, even if that language is technically inaccurate, is slight, if prejudice exists at all. Relatedly, any possibility that the jury would be confused or misled by references to "Litvak's profits" can easily be remedied by cross-examination. For these reasons, the court concludes that the probative value of the evidence outweighs the evidence's potential to unfairly prejudice Litvak, confuse the issues, or mislead the jury, and therefore deems the evidence admissible pursuant to Rule 403.

Finally, the court rejects Litvak's contention that these statements should be excluded under the Due Process Clause of the Fifth Amendment. Litvak's Fifth Amendment argument is tied to a single citation from a 1993 district court case in the Southern District of New York in which the court noted that "the prosecutor may not refer to evidence which will be inadmissible or unsupported at trial" during opening arguments. Def.'s Compensation Mem. at 4 (Doc. No. 358-1). As the foregoing analysis makes clear, the court's view is that the evidence at issue, i.e., colloquial references by witnesses to profits on trades as the trader's profits, is admissible. On this ground alone, Litvak's due process argument fails.

The second form of relief sought by Litvak in this Motion in limine is to "exclude evidence about Mr. Litvak's total compensation." Def.'s Compensation Mem. at 6 (Doc. No. 358-1). The court agrees with Litvak that the government has, to date, failed to establish the relevance of the total amount of his compensation. The court also agrees with Litvak that the admission of this evidence could be highly prejudicial to Litvak, as it could "inflame the jury by appealing to class prejudice," id., which is highly improper, see United States v. Stahl, 616 F.2d 30, 32-33 (2d Cir. 1980). Thus, the court grants

Litvak's Motion in limine and excludes evidence of his total compensation under Rules 401 and 403 of the Federal Rules of Evidence.  The court notes, however, that this Ruling is without prejudice to the government renewing its attempt to introduce this evidence, if the government can establish relevance and lay a proper foundation for the evidence's admission.

### D.   Government's Motion *in limine* to Preclude Argument that the Government Failed to Use Certain Investigative Techniques (Doc. No. 367)

The government has filed a Motion in limine seeking "an order precluding the defendant . . . from introducing any evidence or argument concerning the Government's investigative techniques, including the timing of victim interviews."  Gov't Mot. in limine to Preclude Argument that the Gov't Failed to Use Certain Investigative Techniques ("Gov't Investigative Techniques Mot.") (Doc. No. 367).  Litvak filed an Opposition to the government's Motion, see Jesse C. Litvak's Opp. to Gov't Mot. in limine to Preclude Argument that the Gov't Failed to Use Certain "Investigative Techniques" ("Def.'s Investigative Techniques Opp.") (Doc. No. 394), to which the government timely replied, see Gov't Reply Mem. in Supp. of its Mot. in limine to Preclude Argument that the Gov't Failed to Use Certain Investigative Techniques ("Gov't Investigative Techniques Reply") (Doc. No. 415).  The parties argued their respective positions on this Motion during the oral argument held on June 16, 2016.  See Minute Entry (Doc. No. 430).  For the reasons that follow, the court now grants in part and denies in part the government's Motion.

As a starting point for deciding this Motion, the court will set forth two principles of law.  The first such principle is that the techniques the government uses to investigate an alleged crime—or "the failure to utilize some particular technique or techniques"—

19

"do[ ] not tend to show that a defendant is not guilty of the crime with which he has been charged," and therefore are generally not relevant in a criminal trial.  United States v. Saldarriaga, 204 F.3d 50, 53 (2d Cir. 2000).  The second principle is that "[p]roof of [witness] bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  United States v. Abel, 469 U.S. 45, 52 (1984).  The parties do not dispute these principles.  Instead, the parties' briefing on this Motion exposes a disagreement about whether certain categories of questions Litvak wishes to ask are reasonably related to probing the possible bias of a witness, or whether those questions are instead intended to cast aspersions on the investigative techniques employed by the government in this case.  While the former is clearly permissible, the latter generally is not.

Although ultimately the court will need to hear a specific question to ascertain whether it is of the former or latter kind, the court will endeavor to provide some guidance for the parties.  At this time, the court believes that cross-examination questions directed at government witnesses about the timing of their interviews with government investigators and, in particular, questions directed at ascertaining whether particular witnesses were interviewed by the government after the Indictment in this case was returned, could be relevant to exploring possible witness bias.  Such relevance could be established by follow-up questions that, among other things, probe the content of those interviews, including whether the witnesses were given information or asked leading questions by the investigators, or questions that inquire whether the witnesses had read or heard about Litvak's case prior to their interviews.  Relatedly,

questions directed at the government's investigators that seek to establish whether the kinds of questions asked by the investigators tainted the perceptions and memories of government witnesses are permissible because such questions are also directed at exposing possible bias, not improperly commenting on the government's investigative techniques.[7]  These kinds of questions were permitted by the court, over the government's objection, at the last trial.  See Trial Tr. at 1435:18-1441:2.  The court continues to believe, as explained above, that such questions are relevant, and therefore admissible pursuant to Rule 401; to the extent such questions are misleading or prejudicial, that effect is outweighed by the questions' probative value, which means they should not be excluded pursuant to Rule 403.

For the foregoing reasons, the court grants in part and denies in part the government's Motion in limine regarding commentary on the government's investigative techniques.  The government's Motion is granted to the extent this Motion sought to preclude Litvak from commenting on the sufficiency of the government's investigation or the specific techniques used.  The government's Motion is denied to the extent the government sought to preclude Litvak from exploring the possibility that witnesses were tainted by the government's investigation—by lines of questioning in interviews that occurred after the Indictment—because such questions ultimately go to the potential biases of witnesses, not to the competence of the government's investigation.

---

[7] Of course, while the testimony of the agent as to what he said or did is admissible, the testimony of an agent about what a witness said is likely hearsay.

E.     Government's Motion *in limine* to Preclude Evidence or Argument Blaming
       Victims (Doc. No. 369)

The government has filed a Motion in limine seeking "an order precluding the

defendant . . . from introducing evidence or arguing that victims defrauded in this case

were gullible or negligent in entering into fraudulent securities transactions with Litvak,

that any lack of reasonableness or due diligence by the victims provides a defense to

Litvak's conduct, or that a reasonable investor would have detected Litvak's fraud."

Gov't's Mot. in limine to Preclude Evidence or Argument Blaming Victims ("Gov't's

Blaming Victims Mot.") (Doc. No. 369).  Litvak filed an Opposition to the government's

Motion, see Jesse C. Litvak's Opp. to the Gov't's Mot. in limine to Preclude Evidence or

Argument "Blaming Victims" ("Def.'s Blaming Victims Opp.") (Doc. No. 397), to which

the government timely replied, see Gov't's Reply in Supp. of its Mot. in limine to

Preclude Evidence or Argument Blaming Victims ("Gov't's Blaming Victims Reply")

(Doc. No. 406).  The parties argued their respective positions on this Motion during the

oral argument held on June 16, 2016.  See Minute Entry (Doc. No. 430).  After the oral

argument, Litvak submitted a statement of supplemental authority, as requested by the

court.  See Jesse C. Litvak's Statement of Suppl. Authority in Supp. of his Opp. to the

Gov't's Mot. in limine to Preclude Evidence or Argument "Blaming Victims" ("Def.'s

Suppl. Authority re Blaming Victims") (Doc. No. 428).  For the reasons that follow, the

court now grants in part and denies in part the government's Motion.

As with the court's analysis of the last Motion in limine, the court's discussion of

this Motion will begin with the recitation of two principles of law about which the parties

are in agreement.  The first is that a criminal defendant may not generally use as a

defense the foolishness or negligence of his chosen victim.  See, e.g., United States v.

Thomas, 377 F.3d 232, 243 (2d Cir. 2004) ("We refuse to accept the notion that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim." (internal quotations and citation omitted)).  The second is that whether a misrepresentation was material for purposes of the securities laws must be judged by an objective standard, from the perspective of a "reasonable investor."  Litvak, 808 F.3d at 175, 184; Isola, 548 F. App'x at 725 (noting that "materiality is an objective question").  Given that the government has represented that it will again seek to cast counterparty victims as paradigmatic reasonable investors, these principles create a conundrum: how can Litvak question whether the government's witnesses are really "reasonable investors" in the objective sense without suggesting that these witnesses are themselves to blame for the fact that they were misled by Litvak's alleged misrepresentations?

        This Motion in limine was the subject of a long discussion at oral argument.  At the end of that discussion, it appeared that the parties were largely in agreement that the answer to the question posed above is as follows:  while Litvak may put on expert testimony about what reasonable investors do, as well as cross-examine government witnesses about what they actually did, he may not ask questions or make arguments that suggest there are things the government witnesses should have done.  While the former line of argument may reasonably be part of Litvak's efforts to demonstrate that the government's witnesses are not "reasonable investors," and that their testimony that Litvak's alleged misrepresentations were important to them therefore fails to establish materiality for purposes of the securities laws, the latter line of argument impermissibly suggests that the government's witnesses could have avoided the harm that purportedly

befell them by taking additional actions.  The court agrees with the parties that this is the line that must be drawn pursuant to the principles of law outlined above, as well as Rules 401 and 403 of the Federal Rules of Evidence.  In light of the foregoing, the court grants the government's Motion to the extent that Motion sought to preclude Litvak from offering evidence or making argument about what government witnesses should have done, and denies the Motion to the extent it sought to preclude Litvak from offering evidence or making argument about what government witnesses did and reasonable investors do.

F.    Government's Motion *in limine* to Preclude Evidence Regarding Other Broker-Dealers (Doc. No. 372)

The government has filed a Motion in limine seeking "an order precluding the defendant . . . from introducing evidence or argument regarding events or practices at broker-dealer firms other than Jefferies, absent some factual link to Litvak."  Gov't's Mot. in limine to Preclude Evidence Regarding Other Broker-Dealers ("Gov't's Other Broker-Dealers Mot.") (Doc. No. 372).  Litvak filed an Opposition to the government's Motion, see Jesse C. Litvak's Opp. to Gov't Mot. in limine to Preclude Evidence Regarding Other Broker-Dealers ("Def.'s Other Broker-Dealers Opp.") (Doc. No. 392), to which the government timely replied, see Gov't's Reply Mem. in Supp. of its Mot. in limine to Preclude Evidence Regarding Other Broker-Dealers ("Gov't's Other Broker-Dealers Reply") (Doc. No. 405).  The parties argued their respective positions on this Motion during the oral argument held on June 16, 2016.  See Minute Entry (Doc. No. 430).  For the reasons that follow, the court now grants in part and denies in part the government's Motion.

In their briefing and again at oral argument, the parties represented that the evidence that is the subject of this Motion in limine falls into three categories:  (1)

24

evidence that counterparties knew they were being lied to by traders like Litvak, or that counterparties "switched hats" from being investors to being broker-dealers and themselves engaged in the kinds of misrepresentations Litvak allegedly made; (2) evidence related to an "industry practice" of making misrepresentations of the kind Litvak is alleged to have made to counterparties; and (3) evidence related to changes companies in the industry made to their training and compliance programs after Litvak was indicted.  See Def.'s Other Broker-Dealers Opp. at 1-2 (Doc. No. 392); Gov't's Other Broker-Dealers Reply at 2 (Doc. No. 405).  Although the government has stated that Litvak believes the aforementioned categories of evidence "somehow bear on materiality or intent," Gov't's Other Broker-Dealers Mot. at 1 (Doc. No. 372), Litvak himself suggests that the evidence at issue is most relevant to the element of materiality, see Def.'s Other Broker-Dealers Opp. at 3 (Doc. No. 392).  The court will consider each of these categories separately and in turn.

The first category of evidence primarily relates to statements by government witnesses that tend to suggest they were aware of, and did not care about, misrepresentations of the kind allegedly made by Litvak.[8]  This evidence is highly relevant to the question of whether Litvak's alleged misrepresentations would have been material to a reasonable investor, and is therefore admissible under Rule 401. This evidence is also significantly more probative than prejudicial, confusing, or misleading, and therefore should not be excluded under Rule 403.  At oral argument,

---

[8]  It bears emphasizing that this analysis is predicated on the assumption that the evidence at issue will show that the government witnesses knew or suspected they were being lied to, and indicated in some manner that that fact was not important or significant to them.  Evidence that shows simply that Litvak or other traders lied to the counterparties or similarly situated individuals on other occasions does not fall within the scope of this analysis; such evidence falls within "category two," discussed infra at 26.

the parties appeared largely to agree that this evidence should be admitted for the reasons described above.

The second category of evidence relates to the "industry practice of making misrepresentations to customers about price."  Def.'s Other Broker-Dealers Opp. at 2 (Doc. No. 392) (quoting the government).  In his briefing, Litvak appears to suggest that this evidence is comprised of "[f]act testimony from some of the investors interviewed by the government" that "they were aware of the 'industry practice'" of making misrepresentations of the kind charged in Litvak's Indictment.  Id.  If this is, in fact, all the evidence that Litvak wishes to offer of an industry practice, the court would admit this evidence for the reasons described in the analysis with respect to the first category of evidence at issue in this Motion:  the court concurs with Litvak that evidence that investors similarly situated to the counterparties in this case were aware that traders similarly situated to Litvak made misrepresentations of the kind Litvak is alleged to have made and were indifferent to that fact (or discounted the information provided by traders on that basis) is relevant to the materiality of the misrepresentations charged in the Indictment.  This is because, as noted at multiple points above, materiality is judged by an objective standard, from the perspective of a reasonable investor.  See Litvak, 808 F.3d at 175, 184.  Fact testimony from other investors that they were aware of, and did not care about, misrepresentations like the ones charged in the Indictment could tend to show that an objective, reasonable investor would not view such misrepresentations as material.  Any possibility that information about investors other than the counterparties in this case could confuse the issues or mislead the jury is outweighed by the probative

value of the information discussed.  For these reasons, this evidence is admissible

under Rule 401 and is not amenable to exclusion under Rule 403.

However, the government appears to think that, notwithstanding Litvak's

representations in his briefing, the evidence Litvak seeks to introduce under the

auspices of "category two" is not limited to evidence that other investors were aware of,

and were indifferent to, misrepresentations of the kind charged in the Indictment.  In its

briefing, the government suggests that Litvak will seek to introduce evidence about

actions and events at firms other than Jefferies.  See Gov't's Other Broker-Dealers Mot.

at 2 (Doc. No. 372).  In other words, the government appears to think that Litvak may

attempt to introduce evidence that other broker-dealers similarly situated to Litvak at

companies other than Jefferies made the same kinds of misrepresentations Litvak is

alleged to have made.  To the extent Litvak made any argument about the relevance of

such evidence in his briefing or at oral argument on this Motion, his response would

appear to be that evidence of an "industry practice" as established by testimony

regarding the actions of other broker-dealers is relevant because the fact that the whole

industry engaged in these kinds of misrepresentations makes it less likely that

reasonable investors would rely on this information.

The problem with Litvak's argument is that he skips a necessary, logical step:

the fact that many (or all) RMBS broker-dealers engaged in the kinds of

misrepresentations charged in the Indictment does not affect the likelihood of a

reasonable investor viewing those misrepresentations as material[9] (or immaterial)

---

[9] This section discusses the question of whether evidence of the kind described above is relevant to materiality, because Litvak has represented that materiality is the element of securities fraud to which this evidence relates.  However, some of this evidence could also, at least arguably, be relevant to the

unless investors were aware that traders made these kinds of misrepresentations.  Put another way, the fact that people in Litvak's position regularly lied does not tend to make it more likely that objective, reasonable investors viewed those lies as immaterial unless there is also reason to believe those same reasonable investors were aware the lies were happening.  For this reason, the court will exclude as irrelevant under Rule 401 evidence that broker-dealers at firms other than Jefferies regularly engaged in misrepresentations of the kind charged in the Indictment unless the defense can connect those misrepresentations to knowledge by investors.

Even if statements by other broker-dealers that they regularly engaged in the kinds of misrepresentations charged in the Indictment were relevant within the meaning of Rule 401, however, the court would exclude that evidence as confusing, misleading, and prejudicial under Rule 403.  At the end of the day, this case is about Jesse Litvak. It is not a trial of the entire RMBS industry, and while some evidence about the RMBS industry is relevant and not outweighed by Rule 403 factors, not all evidence about the RMBS market is such.  There is little probative value to evidence that tends to show that the whole RMBS industry engaged in the kind of conduct for which Litvak has been indicted (again, absent some showing that investors were aware of the fact that broker-dealers regularly engaged in this conduct), and the presentation of this evidence bears

---

element of intent.  See Litvak, 808 F.3d at 188-190 (stating that evidence that Litvak's supervisors were aware other broker-dealers at Jefferies engaged in the kind of conduct charged in the Indictment could support an argument that Litvak lacked intent to defraud).  To the extent that Litvak will seek to introduce evidence of the conduct of broker-dealers at companies other than Jefferies to support an argument that he lacked an intent to defraud, the court would likely find that evidence to be marginally relevant within the meaning of Rule 401.  However, given that the probative value of evidence of the conduct of broker-dealers at firms other than Jefferies—if there is no evidence that Litvak was actually aware of this conduct—appears exceedingly slight, and the risk that the introduction of this evidence will cause undue delay, confuse the issues, mislead the jury, and prejudice the government is high, see discussion infra at 29-30, the court would exclude this evidence under Rule 403.

an enormous risk of confusing and misleading the jury with respect to the task before them.  The introduction of such evidence would also prejudice the government and cause undue delay because, as the government notes, it will be forced to litigate "a 'trial within a trial' with regard to other traders' fraudulent conduct."  Gov't's Other Broker-Dealers Reply at 4 (Doc. No. 405).  For all of these reasons, the court concludes that the probative value of evidence that there was an "industry practice"[10] of making the kinds of misrepresentations charged in the Indictment is "substantially outweighed" by the risk that evidence will cause "unfair prejudice, confus[e] the issues, mislead[ ] the jury, [cause] undue delay, [and] wast[e] time," Fed. R. Evid. 403, and therefore will exclude that evidence.

The third category of evidence relates to "changes that dealers have made to training and compliance programs in recent years in response to the charges the government filed in this case."  Def.'s Other Broker-Dealers Opp. at 2 (Doc. No. 392). Litvak has represented that two of his experts "may opine about these changes," including "changes in compliance programs that have been reported about in connection with the Nomura case."  Id.  At oral argument, Litvak contended that this evidence is relevant because it tends to show that the kinds of misrepresentations charged in the Indictment weren't viewed as being significant by people in the industry until Litvak was indicted.  According to Litvak, the fact that these kinds of training and

---

[10] At oral argument, Litvak expressly disavowed any intention to raise an "everybody did it" defense, which means that this Ruling should have little bearing on Litvak's trial strategy.  As the text of this section should make clear, the court has endeavored to draw a line between evidence that could be relevant to materiality or intent (e.g., evidence that Jefferies had a standard operating procedure of condoning conduct like Litvak's, or evidence that investors were aware that broker-dealers regularly engaged in such conduct) with evidence that is only relevant to a defense based on the alleged fact that many other broker-dealers engaged in this conduct, too (i.e., evidence that other broker-dealers regularly lied to investors).

compliance programs were established <u>after</u> Litvak's Indictment is relevant to the question of whether misrepresentations like the ones charged in the Indictment were viewed by people in the industry as being material <u>before</u> Litvak's Indictment.  For substantially the same reasons articulated in connection with the court's analysis of "category two" evidence, the court disagrees.

As noted in the preceding section, the court does not view the actions and beliefs of other broker-dealers similarly situated to Litvak to be relevant within the meaning of Rule 401 on the element of materiality, because that element does not ask what kinds of statements an objective, reasonable <u>broker-dealer</u> would view as being material, but rather what an objective, reasonable <u>investor</u> would view as being material.  Thus, evidence that tends to show that other broker-dealers also engaged in the kind of conduct alleged in Litvak's Indictment—whether that evidence takes the form of direct testimony from other broker-dealers or the more attenuated form of evidence about compliance programs instituted by these companies after Litvak was indicted—is simply not relevant unless accompanied by evidence that investors were aware of these misrepresentations.  Thus, the court will exclude this evidence under Rule 401.

Even if this evidence was marginally relevant, however, the court would exclude it under Rule 403.  Evidence about compliance programs instituted after Litvak was indicted at firms other than Jefferies is disconnected both factually and temporally from the conduct at issue in this lawsuit.  Its probative value, if any, is marginal.  But this same evidence carries a high risk of confusing the issues, misleading the jury, and causing delay, for the reasons explained above with respect to "category two" evidence.

Because the probative value of the evidence is substantially outweighed by these other factors, the court will also exclude the evidence pursuant to Rule 403.

In sum, the government's Motion in limine is granted in part and denied in part. The Motion is denied to the extent the government sought to preclude evidence related to whether counterparty witnesses or investors similarly situated to counterparty witnesses viewed misrepresentations like the ones charged in the Indictment as material. Some of this evidence may bear on whether there was an "industry practice" of broker-dealers making the kinds of misrepresentations charged in the Indictment, but again, such evidence must come from the perspective of investors, given that the element of materiality is assessed from the perspective of an objective, reasonable investor. The Motion is granted to the extent the government sought to preclude evidence related to misrepresentations by other broker-dealers at companies other than Jefferies, so long as this evidence is not either (1) factually connected to Litvak (i.e., that he was aware of these misrepresentations in a way that could bear on the element of intent), or (2) supported by evidence that specific investors were aware of these misrepresentations (which could be relevant to the element of materiality).

## III.   CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the pending Motions in limine as follows:

Litvak's Agent/Broker Motion (Doc. No. 356) is **GRANTED IN PART** and **DENIED IN PART**. The government will not be permitted to offer evidence or argument intended to show that, as a matter of fact and law, Litvak was actually the agent of his counterparties, but the government's witnesses are permitted to testify, on the basis of

their experiences and perceptions, that they understood Litvak to be working on their behalf, even if they use the word "agent" in a colloquial sense as part of that testimony. Similarly, and consistent with industry practice, the government's witnesses will be permitted to refer to Litvak as a "broker."

Litvak's Investor Identity Motion (Doc. No. 357) is **GRANTED IN PART** and **DENIED IN PART**. The government will not be permitted to refer to "taxpayer money" or "taxpayer funds," but the court will not exclude all evidence about the identity of investors in counterparty funds. Relatedly, the court directs that those portions of the Indictment the parties agree should be stricken, as well as the text of the dismissed counts, be removed from the Indictment. The parties are directed to docket a revised Indictment that reflects the changes mandated by this Ruling within **fourteen (14) days**.

Litvak's Compensation Motion (Doc. No. 358) is **GRANTED IN PART** and **DENIED IN PART**. The government will not be permitted to argue that the profits on trades Litvak made went directly into his pockets, but government witnesses will not be precluded from referring to profits on trades as "Litvak's profits," if that is the way in which people in the industry speak. In addition, the government will not be permitted to offer evidence of Litvak's total compensation unless the government can establish the relevance of that evidence, which, to date, it has failed to do.

The government's Investigative Techniques Motion (Doc. No. 367) is **GRANTED IN PART** and **DENIED IN PART**. Litvak will not be precluded from asking government witnesses about the government's investigation so long as those questions are related to efforts to expose potential bias. Litvak will not be permitted to ask questions that

directly bear on the adequacy of the government's investigation or the specific techniques used.

The government's Blaming Victims Motion (Doc. No. 369) is **GRANTED IN PART** and **DENIED IN PART**.  Litvak will be permitted to present expert testimony about what reasonable investors do, as well as cross-examine government witnesses about what they did.  Litvak will be precluded from offering any evidence or making any argument that there was more that counterparties should have done, or otherwise suggesting that any harm caused by Litvak's alleged actions is attributable to the negligence or foolishness of his purported victims.

The government's Other Broker-Dealers Motion (Doc. No. 372) is **GRANTED IN PART** and **DENIED IN PART**.  Litvak will be permitted to introduce evidence related to the understandings and beliefs of investors, whether those investors were actually counterparties to Litvak's trades or merely similarly situated to those parties.  Litvak will be precluded from introducing evidence that other broker-dealers regularly engaged in the kind of conduct charged in the Indictment, both in the form of direct testimony from such broker-dealers and in the form of reports on compliance measures instituted by broker-dealer companies other than Jefferies after Litvak's Indictment in this case.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 28th day of June, 2016.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge